**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50.<br><br>    Defendants. | Civil Action No.<br><br><br>**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |

Plaintiff James Michael Allman, on behalf of himself and all others similarly situated, by and through his attorneys alleges as follows:

**INTRODUCTION**

1.      This is an action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of a class of current and former pilots of American Airlines, Inc. (the "American Pilots") who did not receive full pension contributions allocated to their individual accounts as mandated by USERRA and as required by the terms of the American Airlines, Inc. Pilot Retirement Benefit Program (the "American Program") for the periods in which the American Pilots took leave from American Airlines to honorably serve in the United States Armed Forces.  In this action, Plaintiff alleges

that the fiduciaries responsible for the administration of the Variable Income Plan portion of the American Program (the "Plan") and the management of the Variable Income Plan's assets violated their fiduciary duties by failing to collect the proper amount of contributions required under USERRA and the terms of the Plan that were required to be made for the periods of the American Pilots' military service.

2.      Since 1997, both USERRA and the terms of the Plan, which incorporate the corresponding provisions of the Internal Revenue Code ("IRC"), mandated that American Pilots who perform qualified military service and are reemployed with American would receive pension contributions for those periods of qualified military service.  Because the American Pilots' compensation is based on flight hours, their compensation can vary significantly and was therefore "not reasonably certain."  As a result, contributions for the American Pilots' periods of qualified military service must be calculated using a formula that measures each pilot's *own* average rate of compensation during the 12-month period immediately prior to the qualified military service.  At some point after 1997 and at least by 2011, fiduciaries of the American Plan breached their fiduciary duties under ERISA by adopting and/or applying a policy for making pension contributions for periods of qualified military service that did not comply with USERRA, was contrary to, and was not a good faith interpretation of the terms of the Plan.

3.      Under the policy adopted and implemented by the American Plan fiduciaries, pension contributions for one group of American Pilots were based on earnings associated with the monthly *minimum* flight hours guaranteed under the American Pilots' collective bargaining agreement (*i.e.*, the "reserve guarantee") and for another group of American Pilots, pension contributions were based on the average earnings of three other American Pilots who were actively employed during the pilot's period of qualified military service.  In neither case was the

pension contributions for periods of qualified military service calculated based on *each individual pilot's own average rate of compensation* or flight hours during the 12-month period immediately prior to the commencement of the pilot's qualified military service.  As a result, the Plan failed to receive the full amount of contributions to which the Plan was entitled under USERRA and the terms of the Plan and the American Pilots, who are members of the Class correspondingly, did not receive the full amount of pension contributions to which they were entitled to have allocated to their accounts for periods of qualified military service.

4.     Additionally, the fiduciaries of the Plan responsible for overseeing and managing the assets of the American Plan failed to properly manage the assets of the Plan and hold all of the assets of the Plan in trust, including a "chose in action" to collect the pension contributions contractually-owed by American Airlines.

5.     This action seeks a determination regarding the rights of Plaintiff and the Class under USERRA and seeks recovery of the losses incurred by the Plan as a result of the breaches of fiduciary duty under ERISA by certain fiduciaries of the American Plan who had a responsibility to ensure that pension contributions were made consistent with the terms of the Plan Document and USERRA, the Plan and its assets were properly administered, managed and held in trust, and who failed to take any action to prevent or remedy such violations.  Among the relief sought for these breaches, Plaintiff requests the breaching fiduciaries be ordered to pay the losses to the Plan, to disgorge any profits, to have a surcharge imposed against them, and that any monies recovered for the Plan be allocated to the Plan accounts of Plaintiff and the Class.

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction**

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under the laws of the United States, USERRA and ERISA.  This Court has subject matter over the USERRA claim pursuant to 38 U.S.C. § 4323(b)(3), which provides the district courts of the United States with  jurisdiction over any USERRA action brought against a private employer, and because 38 U.S.C. § 4303(4)(C) deems an "employee pension benefit plan described in [ERISA §] 3(2) . . . to be an employer" regarding the pension obligations in 38 U.S.C. § 4318.  This Court has subject matter jurisdiction over the ERISA claims pursuant to 29 U.S.C. § 1132(e)(1), which provides for jurisdiction of actions brought under Title I of ERISA in the district courts of the United States.

**Venue**

7.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) at least one Defendant may be found in this District, and in fact, is headquartered in this District, (b) the breaches of fiduciary duty alleged herein took place in this district, and (c) ERISA provides for nationwide service of process.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims in this action occurred in this district.

9.      Venue is proper in this District under 38 U.S.C. § 4323(c)(2), because American Airlines, "the private employer of the person" who has filed this lawsuit, "maintains a place of business" in this District at Logan International Airport.

## THE PARTIES

10.     Plaintiff James Michael Allman is and has been employed as an American Airlines pilot since 1999.  Plaintiff Allman took leave from his employment at American Airlines to engage in qualified military service from March 2003 to February 2004, from August 2006 to October 2006, from December 2006 to January 2007, from January 2007 to March 2007, from March 2007 to July 2009, and from September 2009 to February 2011.  After each qualified long term military leave of absence and upon return to employment as an American Airlines pilot, Plaintiff Allman took several shorter term military leaves of absence of 4 to 16 days, until his retirement from military service in 2011.  Plaintiff Allman is currently based out of the American Airlines hub at John F. Kennedy Airport in Brooklyn, New York, but expects to be transferred to the American Airlines hub at Chicago O'Hare International Airport effective January 31, 2013.

11.     Defendant American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan ("the Plan," "the American Plan" or the "Variable Income Plan") is an employee benefit plan within the meaning of ERISA § 3(2) sponsored by American Airlines.  The Variable Income Plan is a money purchase plan and a defined contribution plan within the meaning of ERISA § 3(34).  The Variable Income Plan is an employee pension benefit plan within the meaning of 38 U.S.C. § 4318(a)(1)(A).  The Plan is also an employer within the meaning of USERRA § 4303(4)(C) for the purpose of the American Plan's "obligation to provide [the pension] benefits described in section 4318."

12.     Defendant State Street Bank & Trust Company ("State Street") is and has been since at least 1998 a trust company organized under the laws of the Commonwealth of Massachusetts with its headquarters and principle place of business in Boston, Massachusetts.

Defendant State Street is a subsidiary and one of the principal operating companies of State Street Corporation.  Pursuant to the American Airlines, Inc. Pilot Retirement Program Variable Income Plan Trust Agreement, Defendant State Street was appointed and served as Trustee of the Plan from at least January 1, 1998 to the present.  As a result of its position as Trustee, Defendant State Street was a fiduciary of the Plan within the meaning of ERISA § 3(21). Pursuant to the 2012 Summary Plan Description ("SPD"), State Street, in addition to the Plan Administrator, is authorized to accept legal service on behalf of the Plan.

13.     Defendant Laura Eispanier is, and has been since May 2012, the Vice President of Employee Relations for American Airlines.  Defendant Eispainer is currently a member of the Pension Benefits Administration Committee ("PBAC").  Defendant Eispainer is also a current member of the Pension Asset Administration Committee ("PAAC").

14.     Defendant Carolyn E. Wright is, and has been since May 2012, the Vice President of Customer Planning for American Airlines.  Prior to this, Defendant Wright was the Vice President of Human Resources for American Airlines, a position in which she was responsible for compensation, benefits, retirement, and workers compensation.  Defendant Wright is currently a member of the Pension Benefits Administration Committee.

15.     Defendant Bryan J. McMenamy is, and has been since March 2006, the Vice President of Finance and Controller for American Airlines.  Defendant McMenamy is currently a member of the Pension Benefits Administration Committee.  Defendant McMenamy is also a member of the Pension Asset Administration Committee.

16.     Defendant Peter Warlick is, and has been since March 2013, Vice President and Treasurer for American Airlines.  Defendant Warlick is currently a member of the Pension

Benefits Administration Committee.  Defendant Warlick is also a member of the Pension Asset Administration Committee.

17.     Defendant Beverly K. Goulet is, and has been since March 2013, Senior Vice President and Chief Integration Officer for American Airlines.  Defendant Goulet was a member of the PBAC from at least 2009 to 2012.

18.     Defendant Mark Burdette is, and has been since July 2004, Vice President, Employee Relations for American Airlines.  Defendant Burdette was a member of the PBAC from at least 2009 to 2011.

19.     Defendants John and Jane Does 1-50 are the other persons who served as members of the PBAC or the PAAC whose identities and time of service are unknown to Plaintiff at this time.  Plaintiff Allman requested the names of all fiduciaries of the American Plan since 1997, but the American Plan failed to provide him with that information and provided him only with the names of the current fiduciaries of the American Plan.

20.     Defendants Laura Eispanier, Carolyn E. Wright, Bryan J. McMenamy, Peter Warlick, Beverly K. Goulet, Mark Burdette, and the unknown members of the Pension Benefit Administration Committee during the times relevant to this Complaint are hereby referred to as the "PBAC Defendants."  As a result of their positions on the PBAC, each of the PBAC Defendants was a fiduciary of the Plan within the meaning of ERISA § 3(21).

21.     Defendants Peter Warlick, Laura Einspanier, Brian McMenamy and the unknown members of the Pension Asset Administration Committee during the times relevant to this Complaint are hereby referred to as the "PAAC Defendants."  As a result of their positions on the PAAC, each of the PAAC Defendants was a fiduciary of the Plan within the meaning of ERISA § 3(21).

22.     Defendant State Street, the PBAC Defendants and the PAAC Defendants are collectively referred to as the fiduciaries or the "Fiduciary Defendants."

## RELEVANT NON-PARTY

23.     American Airlines, Inc. ("American Airlines") is a major U.S. airline previously owned by AMR Corporation.  AMR Corporation filed for Chapter 11 bankruptcy in late 2011, and exited bankruptcy in early December 2013.  Under the plan of reorganization, American Airlines' previous holding company, AMR Corporation dissolved, and American Airlines has merged with US Airways to form a new entity American Airlines Group, Inc. ("AAL").  AAL is now the holding company for American Airlines and US Airways.  American Airlines operates extensive international and domestic networks with scheduled flights throughout North America, the Caribbean, South America, Europe, and Asia/Pacific.  Upon information and belief, between 2002 and 2008, Logan International Airport in Boston was a hub for American Airlines.  After 2008 and until sometime after American Airlines filed bankruptcy, Boston was designated a "focus city" for American Airlines.  As recently as 2009, American Airlines was the biggest airline operating at Logan Airport in terms of passengers.  With the merger between U.S. Airways and American Airlines, Logan Airport is anticipated to once again become a major airport operation for American Airlines (*i.e.*, the merged airline).  Throughout the time period of this Complaint, Boston Logan Airport has remained an American Airlines Pilot Domicile Base.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

(A)     All current and former American Pilots who are or were participants in the American Airlines, Inc. Pilot Retirement Benefit Program and:

(1)    who, after becoming an American Airlines, Inc. employee, completed a period of qualified military service that lasted 30 days or more and ended on or after January 1, 1997;

(2)    who did not receive a pension contribution into the Variable Income Plan based on the pilot's own average rate of compensation during the 12 months prior to the commencement of the pilot's period of qualified military service (or if shorter, the period of employment immediately preceding such period of qualified military service); and

(3)    whose average rate of compensation during the 12 months prior to any period of qualified military service that lasted 30 days or more (or, if shorter, the period of employment immediately preceding such period of military leave) exceeded the monthly rate of compensation that was actually used to determine the pension contribution for the pilot's period of qualified military service; and

(4)    who received a pension contribution for a period of qualified military service of 30 days or more that ended on or after January 1, 1997.

(B)    The beneficiaries of all such participants.

25.    Excluded from the Class are the following persons: (a) all former or current pilots who previously reached settlements with or judgments against American resolving or releasing any claims arising during the Class Period under USERRA and/or ERISA related to inadequate pension contributions for periods of military leave; and (b) any person who served as a fiduciary of the Plan and their beneficiaries under the Plan and any member of the immediate family of and any heirs, successors or assigns of any such person.

**Impracticability of Joinder**

26.     The class is so numerous that joinder of all members is impracticable.  According to the most recent Form 5500 for the year 2012, the number of active participants in the Plan as of December 31, 2012 was 9,365.  Upon information and belief, thousands of former and current American Pilots are members of the proposed class.

27.     American Airlines currently has domestic and international "hubs" in Queens, New York, Brooklyn, New York, Los Angeles, California, Miami, Florida, Chicago, Illinois, and Dallas/Fort Worth, Texas.  American Airlines pilots report for flying duty at pilot domicile bases located in all the "hubs," and also the focus cities of Boston, Massachusetts, St. Louis, Missouri, and, until 2011, San Francisco, California.  Upon information and belief, the members of the Class are geographically dispersed.

**Commonality**

28.     The central questions in this case concern whether the American Pilots' federal statutory rights under USERRA were violated by Defendants, and whether the Fiduciary Defendants of the Plan breached their fiduciary duties in interpreting the Plan by applying a policy that violated the requirements of USERRA and the terms of the Plan which, in turn, adopted the requirements of USERRA (as set forth in the IRC), by failing to ensure that the Plan received contributions that properly accounted for the American Pilots who took military leave and by failing to take any action to collect such contributions.  As a uniform policy was adopted and applied to the contributions owed under USERRA and the terms of the Plan with respect to the military leave of American Pilots, differing only as to their specific rank or category (reserve versus line holder), the answer to these questions will produce common answers.

29.     Plaintiff's claims raise subsidiary common questions that will also have common answers for each Class Member, including, but not limited to, the following:

(a)     Whether the rate of compensation or earnings that the American Pilots would have received but for their qualified military service was "not reasonably certain" within the meaning of USERRA, 38 U.S.C. § 4318;

(b)     Whether the Plan Document provided that all contributions to American Pilots for periods of qualified military service be made consistent with the IRC § 414(u) and thereby USERRA, 38 U.S.C. § 4318;

(c)     Whether the policy that was implemented for collecting and paying pension contributions for periods of qualified military service was contrary to IRC § 414(u), USERRA, 38 U.S.C. § 4318, and/or the terms of the Plan;

(d)     Whether the members of the PBAC breached their fiduciary duties by adopting a policy that was inconsistent with USERRA and thus the terms of the Plan;

(e)     Whether State Street breached its fiduciary duties by failing to take any action, including as necessary to institute a lawsuit to ensure that the correct contributions were made under the Plan, and by failing to properly manage the assets of the Plan;

(f)     Whether the members of the PAAC breached their fiduciaries duties in appointing, monitoring and failing to remove State Street or in overseeing the management of the assets of the Plan;

(g)     Whether the Plan incurred losses and the proper measures of such losses; and

(h)     What, if any, other relief should be granted?

30.     Because the pension contributions for periods of the American Pilots' qualified military service were based on a uniform policy and any recovery will be on behalf of and paid into the Plan, all issues regarding relief are common.  Even if the ultimate allocation of recovery into the American Pilots' individual accounts is considered, the unifying issue concerning the policy is the failure to consider each pilot's average rate of compensation during the 12 months prior to the period of military leave.  As the Fiduciary Defendants acted in a systematic manner with respect to the Plan and the Class, all members of the Class suffered the same type of injury based on a single policy, and resolving the claims of the Class will be based on common legal and factual questions.

**Typicality**

31.     Plaintiff's claims are typical of the other members of the proposed Class.  Plaintiff challenges a single policy by which the Plan received pension contributions for periods of the American Pilots' qualified military service without regard to each pilot's average rate of compensation during the 12 months prior to the period of qualified military service.

32.     The relief sought consists primarily of: (1) a declaration establishing that (a) the American Plan violated USERRA, (b) State Street breached its fiduciary duties by failing to take actions to ensure that correct contributions were made to the Plan, (c) the PBAC Defendants breached their fiduciary duties by interpreting the Plan and applying a policy allowing contributions to be made in violation of the Plan Document (and USERRA), and (d) the PAAC Defendants breached their fiduciary duties with respect to the appointment of State Street and the management of the Plan assets; (2) an order requiring the American Plan to recalculate the pension benefits owed to members of the Class; (3) an order requiring the Fiduciary Defendants

to restore the losses to the Plan as a result of their breaches of fiduciary duty; and (4) an order that the restored losses be allocated into the accounts of the members of the Class.

**Adequacy**

33.     Plaintiff will fairly and adequately protect the interests of other members of the Class.  Plaintiff is aware of no conflict with any other member of the Class.  Plaintiff understands his obligations as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill his duties as class representative.

34.     Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

35.     Plaintiff's counsel are experienced in federal court class action litigation, including pension and civil rights litigation, and have considerable experience and expertise in the areas of both ERISA and USERRA.

**Rule 23(b)(1)**

36.     This action is properly maintainable as a class action under Rule 23(b)(1) of the Federal Rules of Civil Procedure, because the central questions in this litigation are whether the American Plan violated USERRA and whether the Fiduciary Defendants of the Plan breached their duties in connection with calculating the contributions owed to the Plan based on the American Pilots' periods of qualified military service and the Fiduciary Defendants' failure to take any action to prevent, cease or remedy such improper contributions.

37.     Administration of a pension plan requires that all similarly situated participants be treated consistently.  As a practical matter, resolution of whether the appropriate amount of contributions were made to the Plan or any participant's account using the policy applied here would be dispositive of that matter for other members of the Class.  Likewise, conflicting

interpretations as to the manner by which the amount should have been calculated and contributed to the Plan and to the individual accounts of similarly situated participants would create the risk of establishing inconsistent standards of conduct for the Plan, its administrator, and any subsequently-appointed independent fiduciary.

**Rule 23(b)(2)**

38.     This action is also properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

39.     Defendant Plan is alleged to have violated USERRA in a manner as to all members of the Class.  The Fiduciary Defendants are alleged to have breached their fiduciary duties in a manner that applied to all members of the Class either by interpreting the Plan in a manner as to all members of the Class or by failing to properly manage the assets of the Plan.  As such, Defendants have acted or refused to act on grounds that apply generally to the Class.  As a result, final declaratory relief is appropriate respecting the Class as a whole.

40.     The monetary relief that Plaintiff seeks either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.  Specifically, the losses to the Plan can be calculated by (1) comparing, for each full month and/or partial month of qualified military service, (a) the amount of pension contributions that should have been made under USERRA and the terms of the Plan Document based on the pilot's average rate of compensation during the 12 months prior to the period of qualified military service, with (b) the amount of pension contributions that the pilot received in his or her B Fund account for that full month and/or partial month of qualified military service, and (2) adding an amount to compensate the Plan for lost earnings on those unmade contributions.

**Rule 23(b)(3)**

41.     This action is also properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

42.     The questions of law and fact common to the members of the Class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether the American Plan violated USERRA and whether the Fiduciary Defendants of the Plan breached their fiduciary duties, and will receive the remedy that should be provided under USERRA and ERISA.

43.     Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations involving this Plan.

44.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, one of the Defendants is located in this District, and, as a result of American Airlines' significant operations in this District, a substantial part of the Class likely earned their pension benefits in this District, and at least a portion of the Class likely resides in this District.

45.     There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**Background on the American Pilots' Defined Contribution Pension Plan**

46.     ERISA § 402(a)(1) provides that every employee benefit plan shall be established and maintained pursuant to a written instrument.  The American Pilot Retirement Program Plan Document as Amended and Restated Effective January 1, 1997 (the "1997 Plan Document") was

the written instrument setting forth the terms of the Plan from its effective date until it was

succeeded by the American Pilot Retirement Program Plan Document as Amended and Restated

Effective January 1, 2009 (the "2009 Plan Document"), which then became and has been the

written instrument setting forth the terms of the Plan since 2009.

47.     As set forth in the preambles of the 2009 Plan Document and the 1997 Plan

Document, the American Program consists of two separate Plans: (1) the Fixed Income Plan (or

"A Fund"), which is a defined benefit plan within the meaning of ERISA § 3(35) that provides a

retirement annuity to each American pilot based on the pilot's credited service, compensation,

and the plan formula; and (2) the Variable Income Plan (or "B Fund"), which is a money

purchase plan and a defined contribution plan within the meaning of ERISA § 3(34).

48.     According to the preamble of the 1997 and 2009 Plan Documents, benefits under

the Variable Income Plan or B Fund are based on the amount credited to an individual account

established for each participant.

49.     Between 1997 and 2012, American Airlines contributed 22 percent of each pilot's

annual "compensation" to the B Fund and these contributions were allocated to each individual

pilot's account.  The  2009 Plan Document defines "compensation" as "fifty percent (50%) of the

total gross remuneration, including base pay, flying pay, minimum pay and pay for periods of

vacation and sick leaves, variable compensation as provided under the Agreement between the

Company and the Association (effective February 26, 1991), and compensation paid by the

Association to a Member (effective January 1, 1996), but excluding expense allowances and

reimbursement for expenses actually paid to such Member for such period by the Employer (or,

for the period of an Association Leave such expenses paid or reimbursed by the Association) and

any disability benefit payments paid in accordance with the Pilot Long Term Disability Plan."  In

other words, each American Pilot who is a participant in the Plan has been entitled to receive a defined pension contribution to the "B Fund" of 11 percent of his or her compensation.

50.     Section 12.12 of both the 1997 and 2009 Plan Documents provide that "neither the interpretation or the Plan nor its administration shall as such be within the jurisdiction of" of collective bargaining agreement(s) between American Airlines and the Allied Pilots Association.

**The Plan's Obligations Under USERRA**

51.     As an employee pension benefit plan, the American Plan was required to comply with USERRA, 38 U.S.C. § 4318.  Pursuant to 38 U.S.C. § 4318(a)(1)(A), the American Plan was required to comply with USERRA § 4318(a)(2), which provides as follows:

> (A) A person reemployed under this chapter shall be treated as not having incurred a break in service with the employer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services.

> (B) Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan.

52.     For each period of military service, USERRA § 4318(b)(1) provides that the employer is "liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits described in subsection (a)(2) [of § 4318] and shall allocate the amount of any employer contribution for the person in the same manner and to the same extent the allocation occurs for other employees during the period of service."

53.     As the American Plan is "an employee pension benefit plan described in Section 3(2) of [ERISA]," the American Plan is an employer under USERRA with respect to its "obligation to provide [the pension] benefits described in section 4318" within the meaning of, 38 U.S.C. § 4303(4)(C).

54.     To "comput[e] an employer's liability" to make pension contributions under §
4318(b)(1), USERRA § 4318(b)(3) provides that "the employee's compensation during the
period of service described in subsection (a)(2)(B) shall be computed—

> (A) at the rate the employee would have received but for the period of service
> described in subsection (a)(2)(B), or

> (B) in the case that the determination of such rate is not reasonably certain, on the
> basis of the employee's average rate of compensation during the 12-month period
> immediately preceding such period (or, if shorter, the period of employment
> immediately preceding such period).

Therefore, under USERRA, when the amount of compensation that a *specific* employee would
have earned during the period of military service (had he or she continued actively working for
the employer) is "not reasonably certain," then the amount of the pension contribution for the
period of military service must reflect the employee's *own* "average rate of compensation during
the 12-month period immediately preceding such period (or, if shorter, the period of employment
immediately preceding such period)."

**The Terms of the American Plan Regarding Military Service**

55.     Since at least 1997, the Plan Document (Section 2.1(ad)(ii)(D)(8) of the 1997 Plan
Document and Section 2.1(af)(iii)(B)(8) of the 2009 Plan Document) has defined "Credited
Service" to include "[a]n authorized Leave of Absence for service in the military."

56.     Section 2.1(af)(iv) of the 2009 Plan Document and Section 2.1(ad)(iii) in the 1997
Plan Document have provided that "Notwithstanding any provision of this Plan to the contrary,
effective December 12, 1994, contributions, benefits and Service with respect to qualified
military service will be provided in accordance with section 414(u) of the [Internal Revenue]
Code."  Upon information and belief, this language was consistently set forth in the Plan

Document since at least 1997.  By referencing IRC § 414(u) in the Plan Document, the Plan has, at least since 1997, incorporated all portions of IRC § 414(u) as part of the terms of the Plan.

57.     IRC § 414(u) is contained in the Subchapter of the Internal Revenue Code governing pension and other retirement plans and is entitled, in relevant part, "Special Rules Relating to Veterans' Reemployment Rights Under USERRA."  The Small Business Job Protection Act, 110 Stat. 1755 (Aug. 20, 1996) added Section 414(u) to the Code in order to accommodate compliance and make the IRC consistent with USERRA.  In essence, IRC § 414(u) required and the Plan Document, by incorporation, provided that all pension contributions to American Pilots would be made consistent with USERRA, including 38 U.S.C. § 4318, which requires a pension plan to include pension contributions for service members who take leave from their employers and are subsequently reemployed.

58.     IRC § 414(u)(5) specifically provides that "the term 'qualified military service' means any service in the uniformed services (as defined in chapter 43 of title 38, United States Code) by any individual if such individual is entitled to reemployment rights under such chapter with respect to such service."

59.     Similar to USERRA, IRC § 414(u)(7) specifically provides that for plans governed by IRC § 415(c)(3), which includes defined contribution plans such as the Variable Income Plan,  "an employee who is in qualified military service shall be treated as receiving compensation from the employer during such period of qualified military service equal to—

> (A) the compensation the employee would have received during such period if the employee were not in qualified military service, determined based on the rate of pay the employee would have received from the employer but for absence during the period of qualified military service, or

> (B) if the compensation the employee would have received during such period was not reasonably certain, the employee's average compensation from the employer during the 12-month period immediately preceding the qualified

military service (or, if shorter, the period of employment immediately preceding the qualified military service)."

60.     As IRC § 414(u) incorporates the same substantive requirements as USERRA, particularly with respect to the terms "qualified military service" and "compensation," IRC § 414(u) imposes the same requirements on an employer and an employee benefit plan to make pension contributions to an employee who has taken a break in service with the employer to engage in military service and is later reemployed.  By explicitly stating that the pension contributions for periods of qualified military service would be consistent with § 414(u) of the Internal Revenue Code, the terms of the American Plan Documents from 1997 to the present effectively incorporated the requirements of USERRA as a term of the Plan.  Accordingly, the terms of the American Plan from at least 1997 provided that for any employee for whom the "rate the employee would have received but for" the periods of military leave "was not reasonably certain," the employer would be liable to the Plan to make pension contributions and the Plan would allocate to the employee's account in a defined contribution such as the Variable Income Plan "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)."

61.     In an October 8, 2013 letter to Plaintiff Allman, the Fiduciaries of the American Plan acknowledged that the Plan Document incorporates the requirements of USERRA § 4318 through its reference to IRC § 414(u).  As such, the question of what pension contributions were owed to Plaintiff and the Class for periods of qualified military service under the Plan Document depends on whether the American Plan's policies or practices complied with USERRA § 4318.

**The Military Leave Policy Adopted, Implemented & Applied for the American Plan**

62.     Since at least 1997, American pilots have not and do not earn fixed compensation each month.  American Pilots' compensation was and is highly variable and fluctuates from month to month as a result of a number of factors that influence their "compensation" and that vary from month to month.  The largest factor that influences pilots' compensation is the number of flight hours that a particular pilot works and is compensated for each month.  Because an American Pilot's compensation varies each month, the amount of compensation used to determine each pilot's "B Fund" contribution varies significantly and fluctuates significantly from month to month (as well as year to year).

63.     The Appendixes to the SPD in 2011 and 2012 expressly recognize, "pilots are not paid straight salaries."  As such, the American Plan and its Fiduciaries responsible for drafting the SPD appear to acknowledge that American Pilots earned compensation that was variable and fluctuated from month to month.

64.     Instead of adopting a policy that used the "average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)," as set forth in USERRA § 4318(b)(3) (the "12-Month Average Compensation"), the fiduciaries of the American Plan adopted, implemented and applied a policy for calculating make-up defined pension contributions that relied on a formula for determining compensation unrelated to each pilot's own 12-Month Average Compensation. A copy of the policy as of September 2012 is attached to this Complaint as Exhibit A.

65.     Under the formula adopted by the Fiduciary Defendants for the American Plan, an American Pilot who was classified as a "Reserve" pilot and engaged in qualified military service for an entire calendar month would receive pension contributions to his or her B Fund account

based on compensation associated with the "Reserve Guarantee," which is the minimum compensation that each "Reserve" pilot is guaranteed to receive for a full contractual month of service.  From May 1, 2003 to present, the Reserve Guarantee has provided the minimum compensation for a full contractual month of service based on 73 hours at rates that apply to the type of plane that the pilot is assigned to fly.

66.     Under the formula adopted by the Fiduciary Defendants for the American Plan, an American Pilot who was classified as a "Line Holder" and engaged in qualified military service for an entire calendar month would receive pension contributions to his or her B Fund account based on either (1) 80 hours of pay, if the pilot's bid status did not change upon return, or (2) the average pay of the next three more senior pilots who were actively employed during the entire time of the pilot's period of military leave, if the pilot's bid status changed upon return.

67.     At some point after 1997 and no later than 2012, all American Pilots who engaged in qualified military service for an entire calendar month began receiving B Fund contributions for periods of qualified military leave based on the average pay of the next three more senior pilots who were actively employed during the entire time of the pilot's period of military leave, regardless of whether the pilots were classified as Reserve pilots or Line Holders.  For example, in late 2012, in conjunction with the freezing of the B Fund, the B Fund pension contributions for American Pilots who remained on military leave were based on the average pay of the next three more senior pilots who were actively employed during the entire time of the pilot's period of military leave.

68.     In addition, under the formula adopted by the Fiduciary Defendants for the American Plan, all American Pilots who engaged in a "Partial Month" of qualified military service, *i.e.*, less than a full calendar month, would receive pension contributions to his or her B

Fund account based on compensation associated with the "Reserve Guarantee," (*i.e.*, the minimum compensation for a full contractual month of service).

69. As a result of the adoption and implementation of this policy, the contributions made to the B Fund of the Plan were smaller than the contributions that should have been made if the B Fund contributions for those pilots who had periods of qualified military leave had been based on the 12-Month Average Compensation of those same pilots, as required by USERRA and the terms of the Plan.

70. For example, the average rate of compensation during the 12-month period immediately preceding Plaintiff Allman's period of leave from March 2003 to February 2004 was higher than the compensation that the American Plan and the Fiduciary Defendants used to calculate the pension contribution made to Plaintiff's B Fund account.  The American Plan and the Fiduciary Defendants calculated his estimated compensation based on the average pay of the next three more senior pilots who were actively employed during the entire time of Plaintiff's period of military leave.  Upon information and belief, the contributions calculated for other members of the Class were smaller than what they would have been had the amount of their contributions been calculated as required under USERRA and/or the terms of the Plan.

**The American Plan's Fiduciaries Breached Their Fiduciary Duties**

71. Pursuant to ERISA § 402, the written instrument governing the plan (a.k.a. the Plan Document) must describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan.

72. Under the terms of the Plan Document (including Section 11 of both the 2009 Plan and the 1997 Plan), the Plan allocated fiduciary responsibilities among various fiduciaries.

*The Pension Benefit Administration Committee*

73.     Under the terms of the Plan Document(s), the Pension Benefit Administration

Committee had the following fiduciary responsibilities, among others:

a.      To decide questions concerning the application or interpretation of the

Plan Document and the Prior Plan Document, including but not limited to

determinations of eligibility benefits (§ 11.3(c)(iii) of 2009 Plan, § 11.2(d)(ii)-(iii)

of 1997 Plan);

b.      To review and render decisions respecting a claim for a benefit under the

Plan in accordance with the Plan's claims procedure and to administer the claims

appeal procedures of the Plan (§ 11.3(c)(v) of 2009 Plan, § 11.2(d)(vi) of 1997

Plan);

c.      To construe the terms of the Plan Document or the prior Plan Document (§

13.3 of 2009 Plan, § 11.7 of 1997 Plan);

d.      To adopt such rules, forms, and procedures as necessary for the

administration of the Plan Document or the prior Plan Document in accordance

with their terms and the terms of any applicable law (§ 11.3(c)(iv) of 2009 Plan, §

11.3(d)(v) of 1997 Plan); and

e.      To exercise any and all functions of the "administrator" of the Plan for

purposes of Section 3(16) of ERISA, which have not otherwise been expressly

delegated to another party, including any reporting or disclosure obligations

regarding the Plan (§ 11.3(c)(vi) of 2009 Plan, § 11.2(d)(ix) of 1997 Plan).

74.     As fiduciaries of the American Plan, the members of the PBAC had a duty to adopt and implement policies and otherwise interpret the Plan in a manner consistent with the terms of the Plan (so long as those terms were not contrary to ERISA).

75.     Pursuant to the terms of the Plan, the adoption and implementation of any policy regarding the pension contributions for American Pilots' periods of qualified military service was one of the responsibilities of the PBAC.  In its fulfillment of those responsibilities, the PBAC had a duty to ensure that any such policies were consistent with the terms of the Plan.

76.     The policy actually adopted and implemented by the American Plan is contrary to the requirements set forth in USERRA, which the Plan incorporates by reference (through its reference to the parallel provisions of the IRC), and as a result, do not constitute a good faith interpretation of the terms of the Plan.  Additionally, upon information and belief, the members of the PBAC, by virtue of their positions at and compensation from American Airlines, had a conflict of interest that affected their decision-making regarding the adoption and implementation of this policy.

77.     By adopting and implementing this policy, the PBAC Defendants breached their fiduciary duties and further breached their fiduciary duties by failing to take any action to remedy any prior violation or prevent such continuing violations of the terms of the Plan Document and USERRA.

### *The Pension Asset Administration Committee*

78.     Under the terms of the Plan Document(s), the Pension Asset Administration Committee ("PAAC") had the following fiduciary responsibilities, among others:

a.    "Periodically review . . . the assignment of assets to each Trustee, each Variable Annuity Trustee, insurance company, and Investment Manager" (§ 11.4(c)(i) of 2009 Plan, § 11.3(d)(iv) of 1997 Plan);

b.    In accordance with Sections 15.2 and 15.4, appoint, monitor and terminate the Trustee(s) and the Variable Annuity Trustee of the Plan, consulting with the Pension Benefits Administration Committee as necessary and, as required, to execute and amend any agreement to implement such appointment and termination  (§ 11.4(c)(iii) of 2009 Plan, § 11.3(d)(i) of 1997 Plan); and

c.    Oversee an audit of the total assets of the Plan for each Plan year and review each Trustee's and each Variable Annuity Trustee's annual accounting (§ 11.4(c)(iv) of 2009 Plan, § 11.3(d)(v) of 1997 Plan).

79.    As a result of the above-listed responsibilities, the members of the PAAC had a fiduciary duty to oversee the management of the assets of the Plan and the Trustees responsible for managing those assets, to monitor and as necessary remove the Trustee(s), and/or change any agreement with the Trustee(s) to ensure the proper management of the assets of the Plan.

80.    Among the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – to collect contractually-owed contributions from an employer.  As such, a proper audit of the Plan, which the PAAC had the responsibility to oversee, would have treated the contractual right to collect such contributions as an asset of the Plan.

81.    As such, the PAAC had a duty to ensure that the Trustee of the Plan was properly managing all assets of the Plan, including any "chose in action," and if the Trustee was not properly managing an asset, the PAAC, in conjunction with the PBAC, had the power and

responsibility to take some action, including, as necessary, removal of the Trustee.  In the event

that the PAAC concluded that the Trustee did not have the responsibility or obligation under the

terms of the Trust Agreement to manage the "chose in action," the PAAC had the duty to either

amend the terms of the agreement with the Trustee or to appoint a new or additional Trustee who

had such authority and obligation.

82.     Upon information and belief, as the B Fund is in the process of terminating and

distributing its assets to participants, the PAAC failed to take any action prior to or during the

bankruptcy of American Airlines or prior to distributing the assets of the B Fund to its

participants to pursue this "chose in action" with respect to the additional contributions owed for

military service performed by the members of the Class.

### The Trustee of the Variable Annuity Trust – State Street

83.     Pursuant to Section 15.4 of the 2009 Plan, the Variable Annuity Trustee(s) of the

Plan was appointed by the PAAC.  Pursuant to Section 15.4, the Variable Annuity Trustee had

"exclusive responsibility for the management and control of . . . the Variable Annuity Trust held

by it except to the extent that American Beacon has appointed and delegated such authority to an

unaffiliated Investment Manager, or the Company has reserved in the applicable Variable

Annuity Trust Agreement, and has exercised, thereunder, the authority to delegate such

responsibility to itself or one or more Investment Managers."

84.     Based on the written instruments under which the Plan is governed as provided by

the Plan Administrator in response to Plaintiff's request for such documents pursuant to ERISA §

104(b), American Beacon did not appoint or delegate such authority over any "chose in action"

to collect employer contributions to an unaffiliated Investment Manager nor did American

Airlines (defined under the Plan Document as the Company) either reserve in the applicable

Variable Trust Agreement or exercise the authority to delegate the responsibility to itself or one of its investment Managers to manage any "chose in action" to collect employer contributions.

85.     The Variable Income Plan Trust Agreement, along with the Plan Document and ERISA, governed State Street's responsibilities under the Variable Income Plan.

86.     Pursuant to Section 2.1 of the Variable Income Trust Agreement, State Street accepted the Trust and agreed to hold the Trust Fund in trust and receive and accept all sums of money and property and to hold, invest, reinvest, manage, administer, and distribute such monies and property for the exclusive benefit of the Plan's participants and beneficiaries.

87.     Pursuant to Section 4.5(d) of the Variable Income Trust Agreement, State Street as Trustee had the power and responsibility, among other things, "[t]o settle, compromise, contest or submit to arbitration any claims, debts or damages due or owing to or from the Trust Fund, to commence or defend suits or legal proceedings, and to represent the Trust Fund in suits or legal proceedings."

88.     Based on the written instruments under which the Plan is governed as provided by the Plan Administrator in response to Plaintiff's request for such documents pursuant to ERISA § 104(b), no other fiduciary under the Plan was provided the power or responsibility "[t]o settle, compromise, contest or submit to arbitration any claims, debts or damages due or owing to or from the Variable Income Plan, to commence or defend suits or legal proceedings and to represent the Variable Income Plan in suits or legal proceedings."

89.     One of the assets of an employee benefit plan under ERISA is a "chose in action" – the right to bring an action to recover a debt, money or a thing – to collect contractually-owed contributions from an employer.  As such, one of the assets of the Plan and one of the debts on which an action could be brought on behalf of the Variable Income Trust or the B Fund was an

action to collect the debt of contractually-owed contributions from American Airlines, including the contractually-owed debt of contributions owed to members of the Class related to their rights to receive contributions as provided under USERRA and the terms of the Plan for their military service.

90.     Upon information and belief, State Street failed to do any of the following: (a) demand that American Airlines (the plan sponsor) make contributions to the Plan based on the American Pilots' qualified military service consistent with the terms of the Plan Document and USERRA; (b) investigate or consider taking legal action to prevent or remedy the ongoing violation of the terms of the American Plan Document and USERRA with respect to American Airlines' pension contributions for the American Pilots' qualified military service; (c) file a claim in a federal district court before American Airlines filed for bankruptcy in late 2011 or file a claim in the bankruptcy court after American Airlines went into bankruptcy in late 2011 for the unpaid contributions to the Plan for the American Pilots' qualified military service consistent with the terms of the Plan Document and USERRA; (d) ensure that all assets of the Plan, including any "chose in action" for contractually-owed contribution obligations, were held in trust and prudently and properly managed; or (e) take any action to remedy the breaches by any other fiduciary, including instituting a legal action against the other fiduciaries for their breaches.

## COUNT I
### (Violation of USERRA, 38 U.S.C. § 4318, Against the American Plan)

91.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

92.     USERRA, 38 U.S.C. § 4318(a)(2)(B), provides that an employee's service in the uniformed service will be deemed to constitute service with the employer for purposes of determining the accrual of benefits under the pension plan.

93.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(1), an employer reemploying a person after a period of service in the uniformed services is liable to the employee benefit pension plan for funding any obligation of the plan to provide benefits, including those accrued under USERRA § 4318(a)(2)(B).

94.     Pursuant to USERRA, 38 U.S.C. § 4318(b)(3)(B), for purposes of computing an employer's liability under § 4318(b)(1), the employee's compensation during the period of uniformed service must be computed "in the case that the determination of [the employee's rate of compensation] is not reasonably certain, on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)."

95.     From 1997 to the present, the compensation of the American Pilots was not and has not been "reasonably certain" during the periods in which they engaged in qualified military service.

96.     During all or a portion of the time from 1997 to the present, the policy applied for making pension contributions to the American Pilots for periods of qualified military service was not made based on the employee's own average rate of compensation during the 12-month period immediately preceding his or her period of military leave.

97.     By applying a policy for making pension contributions to pilots, whose rate of compensation was not "reasonably certain" for periods of qualified military service, that did not take into account each pilot's prior 12-Month Average Compensation, the American Plan violated and continues to violate USERRA.

98.     Because the American Plan applied its policy in violation of USERRA, Plaintiff and the Class received pension contributions in their B Fund accounts that were smaller than what they would have received had the American Plan had complied with USERRA.

## COUNT II
**(Violation of ERISA §§ 404(a)(1)(A), (B) and (D) Against the PBAC Defendants)**

99.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

100.    As fiduciaries of the Plan, the PBAC Defendants were required under ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), to discharge their duties with respect to the American Plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to the participants and beneficiaries of the Plan; (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use; and (D) in accordance with the documents and instruments governing the American Plan in so far as those documents are consistent with ERISA.

101.    Pursuant to Sections 11.3(c)(iii) and (iv) of the Plan, respectively, the PBAC had the authority and responsibility (1) to decide questions concerning the application or interpretation of the Plan and (2) to adopt such rules, forms and procedures as necessary for the administration of the Plan.

102.    Pursuant to Section 2.1(af)(iv) of the Plan, which sets forth the definition of "Credited Service" under the Plan: "Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and Service with respect to qualified military service will be provided in accordance with section 414(u) of the [Internal Revenue] Code."  IRC § 414(u), in turn, effectively incorporates the requirements of USERRA with

respect to military leave and pension contributions, including the procedure to calculate the amount of such contributions when an employee's compensation is not reasonably certain during a period of qualified military service.

103.    Contrary to the provisions of the Plan, the PBAC adopted and/or applied a policy regarding the amount of contributions to the accounts of the B Fund for American Pilots for periods of qualified military service that did not comply with IRC § 414(u)(7) or USERRA and, as a result, also did not comply with the terms of the Plan.

104.    Because the American Pilots' compensation was "not reasonably certain," the terms of the Plan (which adopted the requirements of the IRC and thereby USERRA, 38 U.S.C. § 4318) required the PBAC Defendants to interpret the Plan and apply a policy for providing pension contributions for periods of qualified military service based on each employee's prior 12-Month Average Compensation.  As a result, the PBAC Defendants breached their fiduciary duties by adopting, applying or implementing a policy regarding pension contributions for periods of qualified military service that did not take into account each pilot's prior 12-Month Average Compensation, violated the terms of the Plan, was not in the best interests of the participants and beneficiaries, and was inconsistent with the actions of a prudent fiduciary.

105.    By adopting, applying or implementing this policy regarding contributions for military service, the PBAC Defendants breached their fiduciary obligations under ERISA by failing to discharge their duties with respect to the Plan solely in the interests of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, and (C) in accordance with the

documents and instruments governing the Plan, all in violation of ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

106.    As a result of the breaches by the PBAC Defendants, the Plan suffered a loss and the participants who are members of the Class correspondingly suffered losses to their particular accounts.

### COUNT III
**(Violation of ERISA §§ 404(a)(1)(A), (B) and (D) Against Defendant State Street)**

107.    Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.    Pursuant to Section 4.5(d) of the Trust Agreement, Defendant State Street had the authority, power and responsibility to "settle, compromise, contest or submit to arbitration any claims, debts or damages due or owing to or from the Trust Fund, to commence or defend suits or legal proceedings and to represent the Trust Fund in suits or legal proceedings."

109.    In exercising its fiduciary duties under the Trust Agreement, Defendant State Street was required to discharge its duties with respect to the Plan solely in the interests of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and their beneficiaries, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims, and (C) in accordance with the documents and instruments governing the plan, pursuant to ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

110.    Upon information and belief, at no time did Defendant State Street take any action, including any legal action, or exercise another authority that it could have exercised under the Trust Agreement, the Plan Document, or ERISA to require American Airlines to make

pension contributions for American Pilots' qualified military service in a manner that was consistent with the Plan Document and, by incorporation, the IRC and USERRA.

111.    By failing to take action to require American Airlines to make pension contributions for American Pilots' qualified military service consistent with the American Plan Document and/or the IRC and/or USERRA, including by failing to take any legal action to recover for the Plan the pension contributions that American Airlines failed to make in violation of the American Plan Document and USERRA, Defendant State Street violated ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

112.    As a result of the breaches by Defendant State Street, the Plan suffered a loss and the participants who are members of the Class correspondingly suffered losses to their particular accounts.

## COUNT IV
### (Violation of ERISA § 403(a) & ERISA § 404(a)(1)(A), (B) & (D) Against the the PAAC Defendants & Defendant State Street)

113.    Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

114.    ERISA § 403(a) provides in relevant part (with exceptions not relevant here) that "all assets of an employee benefit plan shall be held in trust by one or more trustees" and that such trustee(s) shall be either named in the trust agreement or in the plan instrument described in [ERISA §] 402(a) or appointed by a person who is a named fiduciary and upon acceptance of being named or appointed, the trustee shall have exclusive authority and discretion to manage and control the assets of the plan.

115.    ERISA § 404(a)(1)(D) requires fiduciaries to act in accordance with the terms of the Plan only "insofar as such documents and instruments are consistent with the provisions of

[ERISA Title I and Title IV],″ which includes ERISA § 403(a).  As such, notwithstanding anything in the Variable Trust Agreement, Defendants State Street and the PAAC Defendants had an obligation to ensure that the assets of the Variable Income Plan, including any chose in action, were held in trust.

116.    From January 1, 2008 to the present, the only Trustee of the Variable Income Plan was Defendant State Street.  As such, from January 1, 2008 to the present, Defendant State Street had the exclusive authority and discretion to manage and control the assets of the Variable Income Plan, including any "chose in action."

117.    The Plan did not expressly provide that Defendant State Street was subject to the direction of a named fiduciary who was not the Trustee, in particular with the ability to bring any action on behalf of the Plan.

118.    The authority to manage the "chose in action" to collect the unpaid employer contributions from American Airlines was not delegated to any investment manager.

119.    Section § 2.4 of the Variable Trust Agreement purports to disclaim any "duty [by Defendant State Street as Trustee] to require payment of any contributions to the Trust Fund or to see that any payment made to it is computed in accordance with the provisions of the Plan, or otherwise be responsible for the adequacy of the Trust Fund to meet and discharge and [sic] liabilities under the Plan."

120.    As a result of this provision and the lack of any other Trustee appointed under the Plan to hold and manage the assets in Trust, any "chose in action," including any action to collect unpaid employer contributions, was not held in trust in violation of ERISA.

121. By failing to hold all of the assets of the Plan in Trust, Defendant State Street violated ERISA § 403(a) and breached its fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

122. By failing to ensure that Defendant State Street or another trustee held all of the assets of the Plan in Trust, the PAAC Defendants caused the Plan to violate ERISA § 403(a) and breached their fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

123. As a result of the breaches by Defendant State Street and the PAAC Defendants, the Plan suffered a loss and the members of the Class correspondingly also suffered losses to their particular accounts.

## COUNT V
### (Violation of ERISA § 410 & ERISA § 404(a)(1)(A), (B) & (D) Against the PAAC Defendants & Defendant State Street)

124. Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

125. ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy." As ERISA § 403(a) and ERISA § 404(a) are both under Part IV of ERISA, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA 410(a) unless there is an exception or exemption. No such exemption or exception is applicable here.

126. Section 2.4 of the Variable Trust Agreement purports to disclaim any "duty [by Defendant State Street as Trustee] to require payment of any contributions to the Trust Fund or

to see that any payment made to it is computed in accordance with the provisions of the Plan, or otherwise be responsible for the adequacy of the Trust Fund to meet and discharge and [sic] liabilities under the Plan."

127.    To the extent that Section 2.4 of the Variable Trust Agreement attempts to relieve Defendant State Street from its responsibility or liability to hold assets in trust or discharge its fiduciary duties of the assets of the Variable Income Plan and Trust, Section 2.4 is void as against public policy.

128.    By agreeing to include a provision in the Variable Income Trust Agreement that is void against public policy under ERISA § 410, the PAAC Defendants and Defendant State Street breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

129.    As a result of the foregoing, Section 2.4 should be declared void *ab initio* and the terms of the Variable Income Trust Agreement should be reformed to strike Section 2.4.


## COUNT VI
### (Violation of ERISA § 404(a) Against the PBAC Defendants & the PAAC Defendants)

130.    Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

131.     Pursuant to the terms of the Plan (§ 11.3(c)(ii) of the 2009 Plan), the PBAC Defendants had the duty to "monitor the provision of services by the Trustee(s) and Variable Annuity Trustee(s) of the Plan [*i.e.*, State Street]."

132.     Pursuant to the terms of the Plan (§ 11.4(c)(iii) of the 2009 Plan), the PAAC Defendants had the duty to "appoint, monitor, and terminate the Trustee(s) and the Variable Annuity Trustee(s) of the Plan [*i.e.*, State Street], consulting with the [PBAC] as necessary."

133.     Pursuant to this authority, the PBAC Defendants and the PAAC Defendants had a duty to monitor Defendant State Street's conduct and to take appropriate action if Defendant State Street was not adequately protecting the interests of the American Plan participants.

134.     Upon information and belief, the PBAC Defendants and the PAAC Defendants knew or, in the exercise of reasonable diligence, should have known that Defendant State Street had not taken action to settle any claims or commence any proceedings to collect the debts owed to the Variable Annuity Trust Fund and was not holding the "chose in action" to collect the contractually-owed contributions in Trust.

135.     By failing to properly monitor and/or take appropriate action against, including the removal of, Defendant State Street, the PBAC Defendants and the PAAC Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

136.    As a result of the breaches by the PBAC Defendants and the PAAC Defendants, the Plan suffered a loss and the participants who are members of the Class correspondingly also suffered losses to their particular accounts.

**COUNT VII**
**(Violation of ERISA § 405(a) Against the PBAC Defendants,**
**the PAAC Defendants & Defendant State Street)**

137.    Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

138.    As fiduciaries, the Fiduciary Defendants (*i.e.*, Defendants other than the American Plan) are liable, in addition to any other liability, for their own personal acts and for the breach of fiduciary responsibility of another fiduciary with respect to the American Plan pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

139.    By virtue of their positions on the Committee and the actions that they took as a Committee, each of the PBAC Defendants in his or her individual capacity also knew or should have known that the other members of his or her own Committee were engaging in each of the breaches described above.  By failing to take steps to protect the American Plan and its participants and beneficiaries who are members of the Class, the individual PBAC Defendants breached their fiduciary duties under ERISA:

(a)    by knowingly participating in an act or omission of such other fiduciaries, the other PBAC Defendants, knowing that such act or omission was a breach;

(b)    by failing to comply with the duties imposed on them by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific

responsibilities which gave rise to their status as fiduciaries, enabling the other PBAC Defendants to commit a breach; and

(c)     by knowing of the breach by the other PBAC Defendants and failing to make reasonable efforts under the circumstances to remedy the breach.

As such, each is liable for the breaches of fiduciary responsibility of the other PBAC Defendants pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

140.    By virtue of their positions on the Committee and the actions that they took as a Committee, each of the PAAC Defendants in his or her individual capacity also knew or should have known that the other PAAC Defendants were engaging in each of the breaches described above.  By failing to take steps to protect the American Plan and its participants and beneficiaries who are members of the Class, the individual PAAC Defendants breached their fiduciary duties under ERISA:

(a)     by knowingly participating in an act or omission of such other fiduciaries, the other PAAC Defendants, knowing that such act or omission was a breach;

(b)     by failing to comply with the duties imposed on them by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific responsibilities which gave rise to their status as fiduciaries, enabling the other PAAC Defendants to commit a breach; and

(c)     by knowing of the breach by the other PAAC Defendants and failing to make reasonable efforts under the circumstances to remedy the breach.

As such, each is liable for the breaches of fiduciary responsibility of the other PAAC Defendants pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

141.     By virtue of their positions on the Committee and the fact that they had the specific responsibility, set forth in the Plan Document, to "monitor the provision of services by the Trustee(s) and the Variable Annuity Trustee(s) of the Plan [State Street]," each of the PBAC Defendants, in their individual capacity, and each of the PAAC Defendants, in their individual capacity, also knew or should have known that Defendant State Street was engaging in the breaches described above.  By failing to take steps to protect the American Plan and its participants and beneficiaries who are members of the Class, the individual PBAC Defendants and individual PAAC Defendants breached their fiduciary duties under ERISA:

(a)     by knowingly participating in an act or omission of such other fiduciaries, Defendant State Street, knowing that such act or omission was a breach;

(b)     by failing to comply with the duties imposed on them by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific responsibilities which gave rise to their status as fiduciaries, enabling Defendant State Street to commit a breach; and

(c)     by knowing of the breach by Defendant State Street and failing to make reasonable efforts under the circumstances to remedy the breach.

As such, each is liable for the breaches of fiduciary responsibility by Defendant State Street pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

142.     As Trustee of the Plan, Defendant State Street knew of or should have been provided with the terms of the Plan (*i.e.*, those set forth in the Plan Document) and the Summary Plan Description and, as a result, would have known either the manner by which the PBAC Defendants were interpreting the Plan or, at a minimum, the manner in which contributions for military service were being made to the Plan and therefore that the PBAC Defendants and the

PAAC Defendants were engaging the breaches described above.  By failing to take steps to protect the American Plan and its participants and beneficiaries who are members of the Class, Defendant State Street breached its fiduciary duties under ERISA:

> (a)    by knowingly participating in an act or omission of such other fiduciaries, the PBAC Defendants and the PAAC Defendants, knowing that such an act or omission was a breach;

> (b)    by failing to comply with the duties imposed on them by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of the specific responsibilities which gave rise to their status as fiduciaries, enabling the PBAC Defendants and the PAAC Defendants  to commit a breach or at least to continue committing a breach; and

> (c)    by knowing of the breach by the PBAC Defendants and the PAAC Defendants and failing to make reasonable efforts under the circumstances to remedy the breach.

As such, Defendant State Street is liable for the breaches of fiduciary responsibility of the PBAC Defendants and the PAAC Defendants pursuant to ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

## ENTITLEMENT TO RELIEF

143.    By virtue of the violation of USERRA described in the preceding paragraphs, Plaintiff and the Class are entitled to a declaration that the Plan did not comply with USERRA, 38 U.S.C. § 4318(b)(3)(B), relief against the Plan, and in the event that any losses are recovered for the Plan, an order that contributions be allocated to the Class Members' individual accounts in accordance with USERRA.

144.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the court may deem appropriate.

145.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the American Plan, and to obtain other appropriate equitable relief to redress such violations and/or to enforce the provisions of ERISA and the terms of the American Plan.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and respectfully requests that this Court award the following relief:

A.   Declare that Defendants' policy with respect to the formula by which the pension contributions related to American Pilots' qualified military service were calculated violated the rights of Plaintiff and the Class under USERRA and the terms of the Plan, and order that the Plan re-calculate pension benefits consistent with USERRA;

B.   Declare that Plaintiff and the Class were and are entitled under USERRA and the terms of the Plan to receive contributions to their "B Fund" pension accounts in an amount that is based on their average rate of compensation and/or flight hours during the 12-month period that immediately preceded a period of military leave (or, if shorter, the period of employment

immediately preceding such period of military leave) if such average rate exceeded the rate of compensation that the American Plan used to calculate the American Pilots' pension contributions;

C.      Declare that the PBAC Defendants breached their fiduciary duties by adopting, applying or implementing a policy that allowed American Airlines to make contributions for periods of qualified military service in violation of the Plan Document and by failing to take any other action to prevent, cease, or remedy the violations of the Plan Document;

D.      Declare that Defendant State Street and the PAAC Defendants breached their respective fiduciary duties by failing to properly manage the assets of the Plan, by failing to hold all of the assets in Trust, by entering into an agreement that included a provision that was void under ERISA, and by failing to take any action, including instituting a lawsuit to seek additional contributions based on the terms of the Plan or to take any other action to prevent, cease, or remedy the violations of the Plan Document and USERRA;

E.      Reform the terms of the Variable Trust Agreement and/or the terms of the Plan, as necessary, to require the Trustee to hold all assets of the Plan in trust and to manage those assets consistent with the obligations under ERISA § 403(a);

F.      Remove each fiduciary that is determined to have breached his, her, or its fiduciary duties to the Plan from his, her, or its role as a fiduciary of the American Plan and enjoining any of the breaching fiduciaries from acting as fiduciaries for any ERISA-covered plan sponsored by American Airlines;

G.      Order the Defendant Plan to pay all members of the Class liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C), to the extent that such amounts are included as a loss to the Plan against the fiduciaries of the Plan;

H.     Require each fiduciary that is determined to have breached his, her, or its fiduciary duties to the Plan to jointly and severally restore to the Plan such amount as is necessary to make the Plan whole for any losses that resulted from any breaches of fiduciary duty, including any additional remedies imposed against the Plan in this litigation, including any liquidated damages, pre-judgment or post-judgment interest awarded against the Plan, any fees or expenses awarded against the Plan, to disgorge any profits made by those fiduciaries with the assets of the Plan or as a result of those breaches, and as necessary to satisfy the award to order the account balances of the breaching fiduciaries to be transferred to the Plan accounts of Plaintiff and the Class;

I.     Award an amount to be paid to the Plan and then to the individual accounts of Plaintiff and the Class, whether by calculation of losses or by imposing a surcharge on the breaching fiduciaries, that fully accounts for the failure to make these contributions when originally due, such as lost earnings on the unmade contributions and/or awarding pre-judgment interest on the amount of contributions that were required to be made under USERRA and the terms of the Plan but which were not made, whichever amount is greater, plus awarding post-judgment interest;

J.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan and USERRA;

K.     Require the Defendant Plan to pay attorneys' fees and costs pursuant to 38 U.S.C. § 4323(h), requiring the Fiduciary Defendants to pay attorneys' fees and costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and/or this Court's inherent equitable

authority and powers, and ordering the payment of reasonable attorneys' fees and expenses of

this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund

doctrine (or other applicable law) out of any money or benefit recovered for the Class or the Plan

in this Action; and

L.      Grant such other and further relief as the Court deems proper, appropriate, just

and/or equitable.

## JURY DEMAND

Plaintiff demands a jury on all claims for which there is a right to a jury.

Dated: January 17, 2014                    Respectfully submitted,

R. Joseph Barton                           /s/  Jason M. Leviton
Peter Romer-Friedman                       Jason M. Leviton
COHEN MILSTEIN SELLERS &                   Joel A. Fleming
  TOLL, PLLC                               Leigh E. O'Neil
1100 New York Avenue, NW,                  BLOCK & LEVITON LLP
Suite 500                                  155 Federal Street, Suite 1303
Washington, D.C. 20005                     Boston, Massachusetts 02110
Tel: (202) 408-4600                        Tel:  (617) 398-5600
Fax: (202) 408-4699                        Fax:  (617) 507-6020
jbarton@cohenmilstein.com                  jason@blockesq.com
promerfriedman@cohenmilstein.com           joel@blockesq.com
                                           leigh@blockesq.com


Thomas G. Jarrard                          Matthew Z. Crotty
Law Office of Thomas G. Jarrard PLLC       CROTTY & SON, PLLC
1020 N. Washington Street                  WSBA #39284, ISB #8653
Spokane, WA 99201                          Crotty & Son, PLLC
Tel: (425) 239-7290                        421 W. Riverside Ave. Ste. 1005
Fax: (509) 326-2932                        Spokane, WA 99201
tjarrard@att.net                           Tel: (509) 850-7011
                                           matt@crottyandson.com
Robert W. Mitchell
Attorney at Law, PLLC
1020 N. Washington Street
Spokane, WA 99201
Tel: (509) 327-2224
Fax: (509) 327-3374

*Attorneys for Plaintiff*