**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50.** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>**Defendants.** ) | **Docket No. 14-cv-10138** |

**DECLARATION OF MATTHEW Z. CROTTY**

I, Matthew Z. Crotty, declare under penalty of perjury of the laws of the United States:

1.     I am competent to testify and have personal knowledge about what is written in this declaration.

2.     I am co-counsel of record in the above captioned matter.

3.     Attached hereto as Exhibit A is a true and correct copy of AMR Corporation's Motion for Entry of Order Pursuant to Fed. R. Bankr. 9019(a) Approving Settlement Agreement Resolving Certain Pending ERISA/USERRA litigation (hereinafter "Approval Motion").

4.     Attached hereto as Exhibit B is a true and correct copy of the United States Bankruptcy Court for the Southern District of New York's November 15, 2016, Order granting the above-referenced Approval Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Spokane, Washington this 9th day of January 2017.


*/ s / Matthew Z. Crotty*
MATTHEW Z. CROTTY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2017, I electronically filed the foregoing using the

CM/ECF system, which will send notification of such filing to counsel at the email address(es)

registered with the system.

*/ s / Matthew Z. Crotty*
Matthew Z. Crotty (pro hac vice)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave, Suite 409
Spokane, WA 99201
Tel:  (509) 850-7011
matt@crottyandson.com

# EXHIBIT A

**HEARING DATE AND TIME: October 20, 2016 at 2:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE: October 13, 2016 at 4:00 p.m. (Eastern Time)**

Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11 Case No.**
                                          :
**AMR CORPORATION**                       :        **11-15463 (SHL)**
                                          :
                    **Debtors.**          :        **(Jointly Administered)**
                                          :
-------------------------------------------------------------x

## NOTICE OF HEARING
## ON MOTION OF DEBTORS
## FOR ENTRY OF ORDER PURSUANT TO
## FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT
## <u>AGREEMENT RESOLVING CERTAIN PENDING ERISA/USERRA LITIGATION</u>

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated

September 6, 2016 (the "**Motion**"), of AMR Corporation and its related debtors, as debtors and

reorganized debtors (collectively, the "**Debtors**"), will be held before the Honorable Sean H.

Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for

the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York,

New York 10004, on **October 20, 2016 at 2:00 p.m. (Eastern Time)**, or as soon thereafter as

counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion (the "**Objections**") must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov) and (b) by all other parties in interest, on a 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Stephen Karotkin, Esq.) and (ii) the Debtors, c/o AMR Corporation, 4333 Amon Carter Boulevard, MD 5675, Fort Worth, Texas 76155 (Attn:  D. Douglas Cotton, Esq.), so as to be received no later than **October 13, 2016 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard.


Dated: New York, New York
         September 6, 2016

                                    /s/ Stephen A. Youngman
                                    Stephen Karotkin
                                    Alfredo R. Pérez
                                    Stephen A. Youngman

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007

                                    Attorneys for Debtors
                                    and Reorganized Debtors

Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | : | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **AMR CORPORATION** | : | **11-15463 (SHL)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**MOTION OF DEBTORS**
**FOR ENTRY OF ORDER PURSUANT TO**
**FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT**
**AGREEMENT RESOLVING CERTAIN PENDING ERISA/USERRA LITIGATION**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

AMR Corporation and its related debtors, as debtors and reorganized debtors

(collectively, the "**Debtors**"), respectfully represent:

**Background**

**A.    General Background**

1.    On November 29, 2011 (the "**Commencement Date**"), each of the

Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**").

2.     On October 21, 2013, the Court entered the Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Fourth Amended Joint Chapter 11 Plan (the "**Confirmation Order**") (ECF Nos. 10361, 10367), which, among other things, confirmed the Debtors' Second Amended Joint Chapter 11 Plan, dated June 5, 2013 (ECF No. 8590) (as amended and modified, the "**Plan**").  The effective date of the Plan was December 9, 2013 (the "**Effective Date**").

**B.     Pending Litigation**

3.     On January 17, 2014, a putative class action lawsuit styled as *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, et al.*, No. 14-cv-10138 in the United States District Court for the District of Massachusetts ("**Massachusetts District Court**") was filed by James Michael Allman on behalf of certain putative class members ("**Plaintiffs**" ) asserting claims against the Pension Benefits Administration Committee for the American Airlines, Inc. Pilot Retirement Benefit Program ("**PBAC**"), State Street Bank & Trust Company, Laura A. Einspanier, Carolyn E. Wright, Brian J. McMenamy, Peter Warlick, Beverly K. Goulet, and Mark Burdette (the "**Defendants**," and together with the Plaintiffs, the "**Parties**") for relief under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("**USERRA**"), 38 U.S.C. § 4301 *et seq.* and ERISA, 29 U.S.C. § 1001 *et seq.* (the "**Putative Class Claims**") for alleged violations in connection with the calculation of employer contributions for American Airlines pilots' periods of qualified military service, including, but not limited to, the period prior to the Commencement Date through the Effective Date (the "**Pending Litigation**").  Among other things, the Pending Litigation asserted that the fiduciaries of the American Airlines, Inc. Pilot Retirement Benefit Program (the "**Pilot Pension Plan**") did not collect certain minimum required contributions from American Airlines, Inc. ("**American**

WEIL:\95836334\8\14013.0139

**Airlines**"), and, thus, the Pilot Pension Plan did not allocate sufficient employer contributions to the Plaintiffs' retirement accounts necessary to comply with USERRA.

**C.      Proof of Claim No. 12092**

4.      On July 16, 2012, the PBAC filed proofs of claim against each Debtor entity, including Proof of Claim No. 12092 (the "**Proof of Claim**") in the priority amount of $129,700,000 against American Airlines, a copy of which is annexed hereto as **Exhibit "B."** The Proof of Claim was asserted on account of the Debtors' employee pension benefit plan obligations, including American Airlines' obligation to make minimum required contributions to the Pilot Pension Plan (the "**Retirement Plan Claims**").  On February 14, 2014, the PBAC consensually withdrew their proofs of claim that were filed against each Debtor entity on account of the Retirement Plan Claims, including the Proof of Claim.

**D.      Settlement Agreement**

5.      On July 21, 2016, the Parties and American Airlines entered into that certain Settlement Agreement (the "**Settlement Agreement**") which, among other things, provided the Plaintiffs with settlement consideration in the form of an Allowed Claim of $4.45 million (the "**Allowed Claim**").

6.      On August 5, 2016, the Massachusetts District Court entered its Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "**Preliminary Approval Order**") which approved, among other things, the proposed notice procedures to class members, objection deadlines, and scheduled a fairness hearing for January 27, 2017.[1]

---

[1] A copy of the Preliminary Approval Order is annexed hereto as **Exhibit "C."**

WEIL:\95836334\8\14013.0139

**Jurisdiction**

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Relief Requested**

8.      The Debtors request entry of an order, substantially in the form annexed hereto as **Exhibit "A**," pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving that certain Settlement Agreement, dated July 16, 2016 by and among the Parties and American Airlines, a copy of which is annexed hereto as **Exhibit "D."**

**The Settlement Agreement**

9.      After extensive arm's-length negotiations, the Parties and American Airlines have agreed, subject to this Court's approval, to enter into the Settlement Agreement to consensually resolve the Pending Litigation.

10.      The following briefly summarizes some of the major terms of the Settlement Agreement:[2]

a)      <u>Allowed Claim</u>.  Upon entry of an order from the Massachusetts District Court approving the Settlement Agreement, an American Class 5 Claim (American Other General Unsecured Claims) shall be Allowed on behalf of the Plaintiffs in the amount of $4.45 million and shall be satisfied in accordance with the Plan.

b)      <u>Dismissal of Pending Litigation</u>.  The Parties will jointly agree to seek an order and final judgment dismissing the Pending Litigation with prejudice consistent with Rules 41(a)(2) and 23(e) of the Federal Rules of Civil Procedure, subject to the terms of the Settlement Agreement.

---

[2] This summary is qualified in its entirety by the terms of the Settlement Agreement.  To the extent of any inconsistency between the summary and the Settlement Agreement, the terms of the Settlement Agreement will control.

4

c)    <u>Release of Claims</u>.  In consideration for the distributions set forth in the Settlement Agreement, the Plaintiffs will provide a release and waiver of certain claims or causes of action that are pled in or related to claims pled in the Pending Litigation.

d)    <u>Bankruptcy Court Approval</u>.  Within thirty (30) days after receiving the Preliminary Approval Order from the Massachusetts District Court (as defined in the Settlement Agreement), the Debtors shall request Bankruptcy Court approval of the Settlement Agreement.

e)    <u>Massachusetts District Court Final Approval</u>.  Provided that the Bankruptcy Court grants approval of the Settlement Agreement, Plaintiffs are required to file a motion in the Massachusetts District Court for final approval by January 9, 2017.  The Massachusetts District Court has tentatively scheduled the fairness hearing for the Settlement Agreement on January 27, 2017.

**Ample Cause Exists to Approve the
<u>Settlement Agreement Pursuant to Bankruptcy Rule 9019(a)</u>**

11.    Bankruptcy Rule 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of a controversy, providing, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Pursuant to Bankruptcy Rule 9019, bankruptcy courts can approve a compromise or settlement if it is in the best interest of the estate.  *See Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  *Id.*; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

12.    Settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  Compromises "are favored in bankruptcy because they minimize the costs of

5

litigation and further the parties' interest in expediting the administration of a bankruptcy estate."

*In re Hilsen*, 404 B.R. 58, 69 (Bankr. E.D.N.Y. 2009) (citations omitted).

13.     The applicable authorities direct a court to determine whether the settlement is "fair and equitable" and "in the best interests of the estate."  *TMT Trailer Ferry*, 390 U.S. at 424; *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (a court need only find that the settlement is fair and equitable, reasonable and in the best interests of the debtors' estate).  The court may exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

14.     In determining whether to approve a settlement, an independent determination that the settlement is fair and reasonable is required.  *Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994).  The following factors are generally considered in determining whether to approve a settlement:  (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (iv) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; (v) the competence and experience of attorneys and other professionals who support the settlement; (vi) the relative benefits to be received by affected parties; (vii) the extent to which the settlement is the product of arm's-length bargaining and not the product of fraud or collusion; and (viii) the debtor's informed judgment that the settlement is fair and reasonable.  *See TMT Trailer Ferry*, 390 U.S. at 424; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *Ionosphere*, 156 B.R. at 428 (citations omitted).

WEIL:\95836334\8\14013.0139

15.     While a court must evaluate "all . . . factors relevant to a full and fair assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, there is no requirement for the court to conduct a "mini-trial" of the claims being settled or a full independent investigation.  *See In re W.T. Grant Co.*, 699 F.2d at 608; *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505.  Rather, a court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d at 608 (internal citations omitted); *accord Drexel Burnham*, 134 B.R. at 505.

16.     The Settlement Agreement readily satisfies the standards for approval. The Debtors, in consultation with their attorneys, have carefully and comprehensively analyzed the Pending Litigation and have concluded that the Settlement Agreement is in the best interests of their estates.  The Pending Litigation has been pending for over two years.  The Parties have engaged in extensive discussions and conducted informal discovery on the underlying issues, including American Airlines' potential obligation to indemnify PBAC and its officers and directors for any claims arising from the Pending Litigation.  Moreover, the Debtors submit that the partial settlement of an Allowed Claim to the Plaintiffs is appropriate because the Pending Litigation included certain prepetition claims arising from American Airlines' obligation to make minimum required contributions to the Pilot Pension Plan, and such obligation constituted the underlying basis for the PBAC's Proof of Claim.  Based upon these considerations, the Parties determined that it was mutually beneficial to enter into the Settlement Agreement to avoid the substantial cost and uncertainty of further litigation.

17.     Accordingly, the Settlement Agreement should be approved under Bankruptcy Rule 9019(a) as a valid exercise of the Debtors' reasonable business judgment and as being in the best interests of the Debtors' estates and all parties in interest.

7

**<u>Notice</u>**

18.     Notice of this Motion has been provided to counsel for Plaintiffs and parties in interest in accordance with the Amended Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures, dated August 8, 2012 (ECF No. 3952).  In view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

19.     No previous request for the relief sought in this Motion has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       September 6, 2016

/s/ Stephen A. Youngman
Stephen Karotkin
Alfredo R. Pérez
Stephen A. Youngman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Reorganized Debtors

9

**Exhibit "A"**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                        :
In re                                   :          **Chapter 11 Case No.**
                                        :
**AMR CORPORATION**, *et al.*,          :          **11-15463 (SHL)**
                                        :
                     Debtors.           :          **(Jointly Administered)**
                                        :
-----------------------------------------------------------x

### ORDER PURSUANT TO
### FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT
### <u>AGREEMENT RESOLVING CERTAIN PENDING ERISA/USERRA LITIGATION</u>

Upon the motion, dated September 6, 2016 (the "**Motion**"),[1] of AMR Corporation

and its related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), pursuant

to Rule 9019(a) of the Federal Rules of Bankruptcy (the "**Bankruptcy Rules**") for entry of an

order approving the Settlement Agreement, all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and

upon the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement

is approved in its entirety; and it is further

ORDERED that, in accordance with, and pursuant to, the terms of the Settlement

Agreement, Plaintiffs shall hold an Allowed American Class 5- American Other General

Unsecured Claim in the amount set forth in the Settlement Agreement; and it is further

ORDERED that the claims agent is authorized to update the claims register in

accordance with this Order and the Settlement Agreement; and it is further

ORDERED that the Debtors are authorized to take any actions as are necessary or

appropriate to implement and effectuate the terms of this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
       _____, 2016


                      _____
                      United States Bankruptcy Judge

2

**Exhibit "B"**

**Copy of Proof of Claim**



GCG Number: 07451087

Modifed B 10 (GCG) (12-11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One):**

| | Case No. | | |
|---|---|---|---|
| ☐ American Airlines, Inc | (11-15464) | ☐ Eagle Aviation Services, Inc | (11-15472) |
| ☐ AMR Corporation | (11-15463) | ☐ Admirals Club, Inc. | (11-15473) |
| ☐ AMR Eagle Holding Corporation | (11-15465) | ☐ Business Express Airlines, Inc. | (11-15474) |
| ☐ American Airlines Realty (NYC) Holdings, Inc | (11-15462) | ☐ Reno Air, Inc. | (11-15475) |
| ☐ Americas Ground Services, Inc. | (11-15466) | ☐ AA Real Estate Holding GP LLC | (11-15476) |
| ☐ PMA Investment Subsidiary, Inc. | (11-15467) | ☐ AA Real Estate Holding L.P | (11-15477) |
| ☐ SC Investment, Inc | (11-15468) | ☐ American Airlines Marketing Services LLC | (11-15478) |
| ☐ American Eagle Airlines, Inc | (11-15469) | ☐ American Airlines Vacations LLC | (11-15479) |
| ☐ Executive Airlines, Inc | (11-15470) | ■ American Aviation Supply LLC | (11-15480) |
| ☐ Executive Ground Services, Inc. | (11-15471) | ☐ American Airlines IP Licensing Holding, LLC | (11-15481) |

**Your Claim is Scheduled As Follows:**

FILED
U.S. BANKRUPTCY COURT
2012 JUL 16  A 10: 49
S D N Y

(stamp) THE GARDEN CITY GROUP, INC.  JUL 16 2012

NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503 (other than a claim under 11 U.S.C. § 503(b)(9) which is subject to a separate bar date of February 13, 2012).

Name of Creditor (the person or other entity to whom the Debtor owes money or property). Pilot Retirement Benefit Program  EIN 13-1502798 PN 001

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:

Pension Benefits Administration Committee for the
American Airlines, Inc. Pilot Retirement Benefit Program
c/o AMR Corporation and American Airlines, Inc.
Attn: Vicki D. Blanton, Esq.
4330 Amon Carter Blvd. MD 5675
Fort Worth, TX 76155

Proskauer Rose LLP
Attn: Michael P. Kessler
Ira M. Golub
Eleven Times Square
New York, NY 10036-8299

Court Claim Number:
_____
(If known)

Telephone number: (817) 967-1035
E-mail: Vicki.Blanton@aa.com

(212) 969-3000
mkessler@proskauer.com
igolub@proskauer.com

Filed on: _____

Name and address where payment should be sent (if different from above):

American Airlines Inc., Master Fixed Benefit Pension Trust
c/o State Street Bank & Trust
Institutional Investor/Master Trust Services
One Enterprise Drive
Quincy, Massachusetts 02171

Telephone number: (817) 967-1035
E-mail: Vicki.Blanton@aa.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

07-16-12  P04:46 IN

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

1. Amount of Claim as of Date Case Filed (November 29, 2011): $ 129,700,000 (see Addendum)
(See instruction #1)

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

FILED - 12092
USBC - SDNY
AMR CORPORATION, ET AL.
11-15463 (SHL)

2. Basis for Claim: Employee pension benefit plan contributions; see attached Addendum.
(See instruction #2)

3. Last four digits of any number by which creditor identifes Debtor:
(See instruction #3)
0  0  0  1

3a. Debtor may have scheduled account as:
(See instruction #3a)

3b. Uniform Claim Identifer (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information

Nature of property or right of setoff:   ☐ Real Estate   ☐ Equipment
☐ Other

Describe:

Value of Property: $ _____

Annual Interest Rate _____%  ☐ Fixed  or  ☐ Variable
(when case was fled)

Amount of arrearage and other charges, as of the time case was fled, included in secured claim, if any:
$ _____

Basis for perfection:

Amount of Secured Claim:  $ _____

Amount Unsecured:  $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount. (See instruction #5)

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the Debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

■ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5)

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7)

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$ 129,700,000

Control Number: 1947890977

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

CRT

7.  **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: See attached Addendum

---

8.  **Signature:** (See instruction #8)
    Check the appropriate box.

☐ I am the creditor    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the Debtor, or their    ☐ I am a guarantor, surety, indorser, or other
                          (Attach copy of power of attorney, if any.)    authorized agent. (See Bankruptcy Rule 3004.)    codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:    Laura Einspanier

Title:    Chair

Company:    Pension Benefits Administration Committee

(Signature) *Lau Einspanier 7/12/12* (Date)

Address and telephone number (if different from notice address above):
c/o AMR Corporation and American Airlines, Inc.

4333 Amon Carter Blvd. MD 5235

Fort Worth, TX  76155-2605

Telephone number: (817) 967-1284    e-mail: Laura.Einspanier@aa.com

---

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the Debtor, exceptions to these general rules may apply. The attorneys for the Debtors and their Court-appointed claims agent, GCG, Inc. ("GCG"), are not authorized to provide, and are not providing, you with any legal advice.*

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: **IF BY FIRST CLASS MAIL:** AMR Corporation, *et al.*, c/o GCG, P.O. Box 9852, Dublin, Ohio 43017-5752. **IF BY HAND DELIVERY OR OVERNIGHT MAIL:** AMR Corporation, *et al.*, c/o GCG, 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017. **ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.**

**THE GENERAL AND GOVERNMENTAL BAR DATES IS JULY 16, 2012 AT 5:00 P.M. (PREVAILING EASTERN TIME)**

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on November 29, 2011 (the "Commencement Date"). You should select the Debtor against which you are asserting your claim.

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR.**

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid e-mail address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the Court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing (using the exchange rate, if applicable, as of the Commencement Date.) Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the Debtor's account or other number used by the creditor to identify the Debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the Debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a):**
If any portion of the claim falls into one or more of the categories shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes Courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Modifed B 10 (GCG) (12-11)

## DEFINITIONS

**Debtor**
A Debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity to whom the Debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C § 101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the Debtor on the date of the bankruptcy filing See 11 U.S.C. § 101 (5) A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the Debtor on the date of the bankruptcy filing. The creditor must file the form with GCG as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the Debtor The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a Debtor or may be obtained through a Court proceeding In some states, a Court judgment is a lien. A claim also may be secured if the creditor owes the Debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social security, individual's tax identification, or financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

## INFORMATION

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from GCG, please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to GCG.

**Offers to Purchase a Claim**
Certain entites are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official Court documentation or communications from the Debtor. These entities do not represent the Bankruptcy Court or the Debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the Bankruptcy Court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                             :

**In re**                                   :         **Chapter 11 Case No.**

                                             :

**AMR CORPORATION,** *et al.,*        :         **11-15463 (SHL)**

                                           :

                       **Debtors.**        :         **(Jointly Administered)**

                                             :

-----------------------------------------------------------------x

### ADDENDUM TO PROOF OF CLAIM

The **Pension Benefits Administration Committee** (the "Committee") for the **American Airlines, Inc. Pilot Retirement Benefit Program**, Employer Identification Number **13-1502798**, Plan Number **001** (the "Plan"), files this Proof of Claim on behalf of the Plan in the amount of **$129,700,000.00** plus interest from the date payment of each quarterly installment was due until paid, against each of the following companies that commenced a case on November 29, 2011 (the "Commencement Date") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"):

| Company | Case No |
|---|---|
| AMR Corporation | 11-15463 |
| American Airlines, Inc. | 11-15464 |
| AMR Eagle Holding Corporation | 11-15465 |
| American Airlines Realty (NYC) Holdings, Inc. | 11-15462 |
| Americas Ground Services, Inc. | 11-15466 |
| PMA Investment Subsidiary, Inc. | 11-15467 |
| SC Investment, Inc. | 11-15468 |
| American Eagle Airlines, Inc. | 11-15469 |
| Executive Airlines, Inc. | 11-15470 |
| Executive Ground Services, Inc. | 11-15471 |

1

| | |
|---|---|
| Eagle Aviation Services, Inc. | 11-15472 |
| Admirals Club, Inc. | 11-15473 |
| Business Express Airlines, Inc. | 11-15474 |
| Reno Air, Inc. | 11-15475 |
| AA Real Estate Holding GP LLC | 11-15476 |
| AA Real Estate Holding L.P. | 11-15477 |
| American Airlines Marketing Services LLC | 11-15478 |
| American Airlines Vacations LLC | 11-15479 |
| American Aviation Supply LLC | 11-15480 |
| American Airlines IP Licensing Holding, LLC | 11-15481 |

(collectively the "Debtors" and each a "Debtor").

This Addendum to Proof of Claim (the "Addendum") is an addendum to, made a part of, and incorporated by reference in the Committee's Proof of Claim. In support of its Proof of Claim, the Committee states as follows:

**Status of Parties**

1.     The Committee is the "administrator," within the meaning of section 3(16)(A) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1002(16)(A), of the Plan and the fiduciary named in the Plan, within the meaning of ERISA section 402(a), 29 U.S.C. § 1102, for purposes of collecting contributions due and owing to the Plan under Article XI of the Plan.

2.     The Plan is an "employee pension benefit plan" within the meaning of ERISA section 3(2), 29 U.S.C. § 1002(2), and an "employee benefit plan" within the meaning of Bankruptcy Code § 507(a)(5). The Plan is intended to meet the qualification requirements of section 401(a) of Title 26 of the United States Code, as amended (the "Internal Revenue Code" or "IRC"), and is funded by The American Airlines Inc., Master Fixed Benefit Pension Trust (the

2

"Trust"). The Trust is intended to meet the requirements for exemption under IRC section 501(a). The Plan is maintained pursuant to a collective bargaining agreement that is a "bona fide agreement," within the meaning of IRC section 7701(a)(46), between Debtor AAI and the Allied Pilots Association (the "Agreement"). The Allied Pilots Association is an "employee representative" within the meaning of IRC section 7701(a)(46) and an "employee organization" within the meaning of ERISA section 3(4), 29 U.S.C. § 1002(4).

3.      As a qualified employee pension benefit plan and trust, the Plan is required to satisfy the minimum funding standards set forth in ERISA section 302, 29 U.S.C. § 1082, IRC sections 412 and 430, and other related provisions of ERISA and the IRC. The Plan is a separate legal entity from the Debtors. The Plan's assets are held in trust, in accordance with ERISA section 403, 29 U.S.C. § 1103 and the terms of the Trust, by one or more trustees for the exclusive purpose of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan.

4.      Debtor American Airlines, Inc. ("AAI") is the "plan sponsor," within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B), of the Plan, and one or more of the Debtors are "employers," within the meaning of ERISA section 3(5), 29 U.S.C. § 1002(5), participating in the Plan. Each Debtor, regardless of its status as an employer participating in the Plan, is a member of a "controlled group" within the meaning of ERISA section 302(d)(3), 29 U.S.C. § 1082(d)(3) and IRC section 412(d)(3) with each other Debtor. As members of the same controlled group, each Debtor is jointly and severally liable for satisfying the full "minimum funding standard" within the meaning of ERISA section 302(a), 29 U.S.C. § 1082(a), and IRC section 412(a).

5.     Upon information and belief, each Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

**Contributions Due and Owing to the Plan**

6.     Debtor is obligated by the terms of the Plan, the Trust, the Agreement, ERISA, and the IRC to make minimum required contributions to the Plan's trust to fund the benefits the Plan provides to its participants and beneficiaries and satisfy the minimum funding standard. Under IRC section 430(j), Debtors are obligated to pay the minimum required contribution for each plan year in quarterly installments, the first installment by April 15, the second installment by July 15, the third installment by October 15, and the fourth installment by January 15 of the following year. 26 U.S.C. § 430(j)(3)(C)(ii).

7.     Debtors have failed to pay portions attributable to the amortization of the unfunded funding target and the pre-petition target normal cost for the fourth payment for the 2011 plan year, due January 15, 2012, and the amortization of the unfunded funding target for the first payment for the 2012 plan year, due April 15, 2012, and the second payment for the 2012 plan year due July 15, 2012.  Additional quarterly installments for the 2012 plan year will become due October 15, 2012, and January 15, 2013.

8.     Section 4.1(a) of the Plan and ERISA section 302(b), 29 U.S.C. § 1082(b), require the Debtors to make contributions to the Trust as required by the IRC and in accordance with the funding policy and method at the time in effect for the Plan to fund on a sound basis the obligations of the Plan.  Upon information and belief, Debtors established the quarterly installments owed to the Plan by Debtors were as follows, if paid on the date indicated:

| | Minimum Required Contribution ("MRC")* | Amount of MRC Installment Attributable to Amortization of Unfunded Funding Target (Pre-petition)* | Amount of MRC Installment Attributable to Post-petition Normal Cost* |
|---|---|---|---|
| Fourth Installment for 2011 Plan Year, if Paid on January 13, 2012 | $24,200,000 | $22,300,000** | *$1,900,000* |
| First Installment for 2012 Plan Year, if paid on April 13, 2012 | $34,300,000 | $4,500,000 | *$29,800,000* |
| Second Installment for 2012 Plan Year, if paid on July 13, 2012 | $34,300,000 | $4,500,000 | $29,800,000 |
| Third Installment for 2012, if paid on October 13, 2012 | $34,300,000 | $4,500,000 | $29,800,000 |
| Fourth Installment for 2012, if paid on January 13, 2013 | $34,300,000 | $4,500,000 | $29,800,000 |
| TOTALS | $161,400,000 | $40,300,000 | $121,100,000 |

\*   Amounts reflect 25% of the applicable plan years' minimum required contribution, rounded up to the next $100,000. These amounts were determined using interest rates in effect prior to the enactment of the highway reauthorization legislation known as the Moving Ahead for Progress in the 21st Century Act ("MAP-21"), which was signed into law by President Obama on July 6, 2012. Among other things, MAP-21 includes provisions designed to stabilize interest rates for employee pension benefit plans. It is expected that applying these new interest rates will change, and potentially reduce, the quarterly minimum required contribution payment for the remainder of the 2012 plan year, but the exact extent of which cannot be determined at this time.

\*\*   Includes pre-petition target normal cost for 2011 plan year.

9.     Upon information and belief, Debtors have paid the amount of the above-referenced minimum required contribution installments attributable to post-petition normal costs for the fourth installment for the 2011 plan year and the first installment for the 2012 plan year (shown in italic type in the chart above), and as a result this Proof of Claim only seeks the unpaid amount of the minimum required contributions attributable to the amortization of the unfunded funding target and the target normal cost for those installments ($161,400,000 less $1,900,000 less $29,800,000 is $129,700,000, the amount stated on the Proof of Claim). Upon information

5

and belief, out of the total $129,700,000 stated on the Proof of Claim, an amount equal to $89,400,000 ($121,100,000 less $1,900,000 less $29,800,000) represents the minimum required contribution installments attributable to post-petition normal cost. This amount has been included in the total amount stated on the Proof of Claim for convenience, but, upon information and belief, this amount is entitled to administrative expense priority according to 11 U.S.C. § 503. The Committee may file any such administrative expense claim as appropriate. To the extent Debtors pay to the Trust these or other amounts of the quarterly required minimum contributions, or all or any portion of those amounts are paid to the Trust as an administrative expense according to 11 U.S.C. § 503, the paid amounts are excluded from this Proof of Claim.

10.     Quarterly installment payments of the required minimum contributions will continue to become due and owing to the Plan after the General Bar Date established by the Bankruptcy Court. To the extent any portion of any quarterly installment of the minimum required contribution have not been or are not timely paid to the Trust, the Committee reserves the right to amend or supplement this Proof of Claim to include any unpaid amounts, including applicable interest on any unpaid amounts until paid. Any amounts asserted in this Proof of Claim not entitled to priority under the Bankruptcy Code are asserted as general unsecured claims.

11.     Pursuant to IRC section 430(j)(3)(A), because the Debtors failed to pay the full amount of minimum funding contribution installments, the amount of the underpayment due must be adjusted by the interest rate for the plan for the plan year plus five percentage points for the period of the underpayment until each installment is paid in full. Upon information and belief, the applicable interest rates are as follows:

6

| Plan Year | Plan Interest Rate | Applicable IRC § 430(j)(3)(A) Rate |
|-----------|-------------------|-------------------------------------|
| 2011 | 6.4% | 11.4% |

Upon information and belief, the plan interest rate for the 2012 plan year has not yet been determined.

12.     The Committee includes in this Proof of Claim all interest amounts due to the Trust for failure to timely pay any minimum required contribution installment or payment from the due date for that installment until each installment paid in full at the applicable interest rate.

**Reservation of Rights**

13.     The Plan reserves:

(a)     Any and all setoff and/or recoupment rights to which the Plan or the Participants are entitled under 11 U.S.C. § 553 or otherwise; and

(b)     All other rights, interests, priorities, protections, claims, counterclaims, defenses, and legal or equitable remedies to which the Plan may be entitled.

14.     The Committee reserves the right to amend, modify or supplement this Proof of Claim for any reason, including:

(a)     To fix, update, or supplement the amounts or classifications of the claims asserted herein;

(b)     To incorporate or file any additional claims for amounts that may be or later become due including, without limitation, any secured, priority and administrative expense or general unsecured claims under the Bankruptcy Code; and

(c)     To file a request for administrative expense priority under 11 U.S.C. § 503(b) for any part or all of the minimum required contributions set forth in this Proof of Claim or which are due and payable after the bankruptcy petition date.

7

15.     To the extent additional claims on behalf of the Plan exist, the amount of those

claims are currently unliquidated.  Nothing in this Proof of Claim is intended to be, or should be

construed for any purpose as, an admission that any claim lacks administrative priority.

16.     The filing of this Claim is not and shall not be deemed or construed as:

(a)     A waiver or release of the Plan's rights against any person, entity or

property;

(b)     A consent by the Plan to the jurisdiction of the Bankruptcy Court or any

other court with respect to proceedings, if any, commenced in any case against or otherwise

involving the Plan;

(c)     A waiver or release of the Plan's right to trial by jury in the Bankruptcy

Court or any other court in any proceeding as to any and all matters so triable, whether or not the

same be designated legal or private rights, or in any case, controversy or proceeding related

hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to

28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States

Constitution;

(d)     A consent by the Plan to a jury trial in the Bankruptcy Court or any other

court in any proceeding as to any and all matters so triable herein or in any case, controversy or

proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise;

(e)     A waiver or release of the Plan's right to have any and all final orders in

any and all non-core matters or proceedings entered only after de novo review by a United States

District Court Judge;

(f)     A waiver of the Plan's right to move to withdraw the reference, or

otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject

8

matter of this Claim, any objection thereto, or any other proceeding which may be commenced in this case relating to this Claim or otherwise involving the Plan, or to assert that the reference has already been withdrawn with respect to the subject matter of this claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in this case against or otherwise involving the Plan;

      (g)   An election of remedies;

      (h)   A waiver of any past, present, or future defaults or events of default.  The Plan specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against the Plan by the Debtors or by any trustee for the Debtors' estates;

      (i)   A waiver or limitation of any right, interest, or cause of action held by the Plan.  The Plan further reserves any and all rights against parties other than the Debtors based on the foregoing facts and circumstances; and

      (j)   An acknowledgment that the Plan received adequate notice of any bar date fixed in this case.

17.    Nothing contained in this Proof of Claim shall be construed as limiting the rights, remedies, and interests of the Plan or the Committee.  To the extent that there is a conflict between anything contained in this Proof of Claim and the Plan, the terms and conditions of the Plan shall govern.

18.    The Committee understands that other entities and individuals, including the Pension Benefit Guaranty Corporation, may file claims relating to the Plan and amounts due thereunder.

19.    No judgment has been rendered on any of the amounts asserted in this Claim.

9

20.     Because the Plan, Trust, Agreement, and other related documents are voluminous and are already in the possession of Debtors, the Committee has not attached a copy of the supporting documents (or summaries thereof), to this Proof of Claim, with the agreement of the Debtors' counsel, but the Committee will make copies of such documents available to the Debtors, upon request of the Debtors, no later than ten (10) days from the date of such request.

21.     All notices concerning this Proof of Claim may be sent to:

**Pension Benefits Administration Committee**
c/o AMR Corporation and American Airlines, Inc.
4333 Amon Carter Blvd. MD 5675
Fort Worth, TX  76155-2605

Attn: Vicki D. Blanton, Esq.
Senior Benefits Counsel – Legal Department
American Airlines, Inc., as Counsel to the
Pension Benefits Administration Committee

Telephone:  (817) 967-1035
Email:  Vicki.Blanton@aa.com

-and-

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036-8299
Attn:   Michael P. Kessler
           Ira M. Golub
Telephone Number: (212) 969-3000
Facsimile Number: (212) 969-2900
Email:  mkessler@proskauer.com
           igolub@proskauer.com

30918469v1

From: (631) 470-5000
Dawn Russo
The Garden City Group, Inc.
1985 Marcus Ave

LAKE SUCCESS, NY 11042

Origin ID: TKLA



Ship Date: 17JUL12
ActWgt: 10.0 LB
CAD: 100098347/INET3300

Delivery Address Bar Code



SHIP TO: (631) 470-5000          BILL SENDER

**AMR Corporation, et al.**
**c/o GCG**
**5151 Blazer Parkway, Suite A**

**DUBLIN, OH 43017**

Ref #        AAM
Invoice #
PO #
Dept #



1 of 3

TRK# **7986 2722 6360**
0201

## MASTER ##

WED - 18 JUL  A2
PRIORITY OVERNIGHT

**XX CMHA**

**43017**
OH-US

**LCK**



515G1/E052/AA44

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning.** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide

https://www.fedex.com/shipping/html/en//PrintIFrame.html                    7/17/2012

**Exhibit "C"**

**Preliminary Approval Order**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Docket No. 14-cv-10138 |
| AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50. | ) ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

# ORDER
## GRANTING PLAINTIFF'S UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Settlement Agreement and Class Notice in the above-captioned action ("the Motion"). The Court, having reviewed the Motion and the relevant portions of the record, ORDERS that the Motion is GRANTED, and further ORDERS as follows:

1. The Court does hereby preliminarily approve the Settlement Agreement, subject to further consideration and final approval under Federal Rules of Civil Procedure 23(e) at the Final Approval Hearing described below. Specifically, the Court preliminary finds that

    a. the Settlement Agreement is the product of extensive arm's length negotiations;

1

b.       Plaintiff's counsel engaged in sufficient discovery before settlement to make an informed judgment about settlement;

c.       Plaintiff's counsel are experienced in the prosecution of class actions generally and employment, USERRA, and ERISA litigation in particular; and

d.       There are no obvious deficiencies in the settlement and upon review of the Settlement Agreement, the Court preliminarily finds the settlement to be fair, reasonable and adequate.

2.       The proposed Plan of Allocation is preliminarily approved.

3.       The proposed Process for Challenging Defendants' Personnel Data is preliminarily approved.

4.       The proposed Notice is approved, and the Parties' proposed plan for disseminating notice of the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e)(1) is approved.  The court finds that the Notice and the plan for distribution and publication of the Notice are the best practicable and comply with the requirements of Rule 23 and meets the requirements of due process.

5.       Specifically, the Notice describes the terms of the Settlement, instructs Class Members about their rights and options under the Settlement, and adequately informs Class Members of Class Counsel's intentions with respect to requesting attorneys' fees and expenses and a service award for the Class Representative.

6.       A.B. Data is appointed as the Settlement Administrator and shall execute the duties set forth in the Settlement Agreement

7.       Defendants shall provide the Notices and Materials to the Appropriate State and Federal Officials required by the Class Action Fairness Act, 28 U.S.C. § 1715, by **July 29, 2016**,

and shall submit a declaration by **July 29, 2016** stating the officials to whom the materials were sent and the date on which the materials were sent. For the purpose of providing such Notices and Materials, the Appropriate State and Federal Officials under CAFA, 28 U.S.C. § 1715(a) & (b), are the Attorney General of the United States and the Attorneys General of the states in which the identified Class Members reside. In light of the terms of the Settlement Agreement, which does not disclose or identify the amount or portion of the losses attributable to Class Members who reside in particular states, it is not feasible to include in the Notices to the Appropriate State and Federal Officials the information described in CAFA, 28 U.S.C. § 1715(b)(7) (A) & (B).

8.     Within 10 business days of the date of this Order, Defendants and the Plan Administrator of the American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan ("the Plan") are hereby authorized to provide and shall provide to the Settlement Administrator and Class Counsel the following contact information for each known Class Member: (1) a street mailing address; (2) telephone number(s); (3) company e-mail address(es), including email accounts provided by American Airlines; (4) Plan account number(s); (5) Social Security number; and (6) an indication of whether the Class Member is currently on Long-Term Military Leave and, if so, any additional contact information of the types set forth above for the Class Member applicable during the period of Long-Term Military Leave.

9.     The Settlement Administrator shall send the Notice, in a form substantially similar to the one submitted by the Parties, by U.S. Mail and e-mail to the members of the Class identified by Defendants by **September 5, 2016**.

10.     The Settlement Administrator shall submit a declaration to the Court confirming its compliance with the Notice procedures of this Order and the Settlement Agreement by **October 5, 2016**.

11.     Class Counsel shall file any motion for an award of attorneys' fees or reimbursement of expenses or costs and any motion for a service award for the Class Representative by **October 20, 2016**.

12.     All objections or comments to the Settlement Agreement must be postmarked no later than **November 4, 2016**, and addressed to the following address: United States District Court for the District of Massachusetts, Attn: Judge Indira Talwani / Comment on American Settlement, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210-3002.

13.     All objections or comments must state the name of the Class Member objecting or commenting, the person's address and telephone number, the name and number of the case, *Allman v. American Airlines, Inc. Pilot Retirement Program Variable Income Plan, et al.,* No. 14-cv-10138-IT (D. Mass.), and a brief explanation of the person's reason for objecting or commenting, and must be signed by the person.  To the extent that any objections or comments are transmitted to Settlement Administrator, the Parties, or the Parties' counsel, but are not filed with the Court, those persons are hereby directed to file such objections with the Court.

14.     All requests to be excluded from the Class must be postmarked no later than **November 4, 2016**, and addressed to the following address: United States District Court for the District of Massachusetts, Attn: Judge Indira Talwani / Exclusion From American Settlement, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210-3002.  Each exclusion must state the person's name, address and telephone number, a statement in the person's handwriting stating that he or she wants to be excluded from *Allman v. American Airlines, Inc. Pilot Retirement*

*Program Variable Income Plan, et al.,* No. 14-cv-10138-IT (D. Mass.), and be signed by the person.

15.    All challenges by Class Members to Defendants' data must be postmarked no later than **November 4, 2016**, and must be mailed directly to the Settlement Administrator.

16.    The Settlement Administrator shall complete all adjudications to challenges to Defendants' data by **December 19, 2016**.

17.    The Settlement Administrator shall file a Declaration with the Court confirming its compliance with the adjudication procedures of the Settlement Agreement by **December 26, 2016**.

18.    Plaintiff shall file his motion for final approval of the Settlement Agreement by **January 9, 2017**.

19.    The Court shall hold a fairness hearing at **2:30 pm** on **January 27, 2017**, at the United States District Court for the District of Massachusetts, located at 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210, in Courtroom 9.

       IT IS SO ORDERED.

August 5, 2016                                  /s/ Indira Talwani
                                               United States District Judge

**Exhibit "D"**

**Settlement Agreement**

WEIL:\95836334\8\14013.0139

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Docket No. 14-cv-10138 |
| AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50. | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    DEFINITIONS ................................................................................................. 1

III.   RECITALS ...................................................................................................... 8

IV.   THE CLASS .................................................................................................. 11

V.    NOTICE ........................................................................................................ 13

VI.   SETTLEMENT CONSIDERATION FROM AMERICAN ............................. 16

VII.  THE SETTLEMENT FUND ......................................................................... 19

VIII. DISTRIBUTIONS FROM THE SETTLEMENT FUND ............................... 20

IX.   SETTLEMENT ADMINISTRATION .......................................................... 28

X.    ATTORNEYS' FEES, EXPENSES, COSTS, AND SERVICE AWARD ...................... 29

XI.   PROCEDURES GOVERNING APPROVAL OF THIS SETTLEMENT
       AGREEMENT ............................................................................................... 30

XII.  COURT SUPERVISION OF THE SETTLEMENT AGREEMENT &
       DISMISSAL OF THE ACTION .................................................................... 32

XIII. RELEASE OF CLAIMS ................................................................................ 33

XIV. TERMINATION OF THE SETTLEMENT ................................................... 35

XV.  CLASS ACTION FAIRNESS ACT NOTICE ............................................... 39

XVI. MISCELLANEOUS PROVISIONS .............................................................. 40

## I.    INTRODUCTION[1]

This litigation, *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, et al.*, No. 14-cv-10138 (D. Mass.) was brought by James Michael Allman on behalf of himself and others similarly situated, asserting claims for relief under USERRA, 38 U.S.C. § 4301 *et seq.* and ERISA, 29 U.S.C. § 1001 *et seq.* for alleged violations in connection with calculation of employer contributions for American pilots' periods of qualified military service allegedly without taking into account the pilot's own average rate of compensation during the 12 months prior to the qualified military service.

In the interest of resolving this dispute between the Parties without the significant expense, delay, and inconvenience of further litigation of the collective and individual issues raised in the Case, and in reliance upon the representations, mutual promises, covenants, and obligations set out in this Settlement Agreement, and for good and valuable consideration also set out in this Settlement Agreement, the Parties, through their undersigned counsel of record, hereby stipulate and agree as follows.

## II.   DEFINITIONS

The following terms, as they are used in this Settlement Agreement, shall have the meanings defined below:

**A.**    "AAG" means American Airlines Group.

**B.**    "Agreed Damage Methodology" is the April 22, 2015, document titled "Methodology for Estimating Potential Losses/Benefits/Damages," attached hereto as Exhibit A.

**C.**    "Agreement" is this Settlement Agreement.

---

[1] Capitalized terms have the meanings set forth in the Definitions section below.

**D.** "Agreement in Principle" is the Agreement in Principle that the Parties executed on December 8, 2015.

**E.** "Allowed American General Unsecured Claim" will have the meanings ascribed in the Debtors' Fourth Amended Chapter 11 Plan (hereinafter "Chapter 11 Plan") in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.),

**F.** "American" means American Airlines, Inc.

**G.** "Case" or "Litigation" is the action titled *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, et al.*, No. 14-cv-10138 (D. Mass.).

**H.** "Cash Amount" means the amount of each Class Member's Settlement Fund allocation corresponding to each year covered by the Settlement Agreement that cannot be contributed to the Class Member's Plan Account for each such year without jeopardizing the tax-qualified status of the Variable Income Plan under applicable IRS limits.

**I.** "Cash Settlement Amount" means the amount that will be paid and deposited into the Escrow Account as set forth in Section VI.B.

**J.** "Chapter 11 Plan" means the Debtors' Fourth Joint Amended Chapter 11 Plan in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.).

**K.** "Claim" means a claim by a Class Member that he or she was subject to Defendants' policy for making pension contributions under USERRA for a specific period of Long Term Military Leave that ended on or after January 1, 1997.

**L.** "Class" means the Class defined in Section IV.A. or a substantially similar definition approved by the Court.

**M.** "Class Counsel" means Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave. NW, Suite 500, Washington, DC 20005, Crotty & Son Law Firm, PLLC, 905 W. Riverside

Ave., Suite 409, Spokane, WA 99201, Washington Lawyers' Committee for Civil Rights and Urban Affairs, 11 Dupont Circle NW, Suite 400, Washington, DC 20036, Block & Leviton LLP, 155 Federal Street, Suite 1303, Boston, MA 02110, and the Law Office of Thomas G. Jarrard LLC, 1020 N. Washington Street, Spokane, WA 99201.

**N.** "Class Member" means any American pilot who satisfies the definition of the Class set forth below or satisfies a substantially similar definition of a class approved by the Court.

**O.** "Class Representative" means Plaintiff James Michael Allman.

**P.** "Court," unless otherwise specified or clear from the context, means the United States District Court for the District of Massachusetts.

**Q.** "Defendants" means American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, State Street Bank & Trust Company, Laura A. Einspanier, Carolyn E. Wright, Brian J. McMenamy, Peter Warlick, Beverly K. Goulet, and Mark Burdette.

**R.** "Disputed Claims Reserve" has the meaning ascribed to it in the Debtors' Fourth Joint Amended Chapter 11 Plan in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.), and refers to the Disputed Claims Reserve from which the Share Settlement Amount will be paid and transferred into the Escrow Account.

**S.** "Effective Date of the Settlement Agreement" or "Effective Date" means the date upon which, if the Agreement is not voided as set forth herein, an order providing Final Approval of this Agreement under Federal Rule of Civil Procedure 23(e) becomes non-appealable, or, in the event of any appeals, the date of final resolution of all appeals and all amounts have been paid into the Settlement Fund. When this Agreement refers to the date on which the Agreement became "Effective," such date is the Effective Date.

3

**T.** "ERISA" means the Employee Retirement Income and Security Act of 1974, as amended.

**U.** "Escrow Account(s)" means the account(s) established pursuant to an escrow deposit agreement among the Parties and an Escrow Agent into which the Cash Settlement Amount and the Share Settlement are deposited.

**V.** "Escrow Agent" means the person or entity designated by Lead Class Counsel to hold the Settlement Fund until distribution to the Class.

**W.** "Fiduciary Defendants" means Defendants other than the Variable Income Plan.

**X.** "Final Approval Date" means the date upon which the Court enters an order granting Final Approval of the Settlement Agreement.

**Y.** "Final Approval of the Settlement Agreement" or "Final Approval" means the Court's decision that the resolution of this Case, as reflected in the Settlement Agreement, is fair, adequate, and reasonable pursuant to the provisions of Federal Rule of Civil Procedure 23(e).

**Z.** "Lead Class Counsel" means R. Joseph Barton of Cohen, Milstein, Sellers & Toll, PLLC.

**AA.** "Long Term Military Leave" means a period of military leave of at least continuous thirty (30) calendar days taken by an American pilot.

**BB.** "Net Settlement Fund" means the Settlement Fund minus any amounts deducted for attorneys' fees, expenses and costs, taxes, and any Service Award approved by the Court.

**CC.** "Notice Mailing Date" means the date the Notice Packets are mailed to the Class Members.

**DD.** "Notice Packet" means the packet of materials that consists of the Notice of Proposed Class Action Settlement and Fairness Hearing and the Proposed Plan of Allocation,

and a Personalized Worksheet for each Claim and any materials ordered or approved by the Court.

     **EE.**    "Parties" means the Plaintiff in this Case and Defendants American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, State Street Bank & Trust Company, Laura A. Einspanier, Carolyn E. Wright, Brian J. McMenamy, Peter Warlick, Beverly K. Goulet, and Mark Burdette.

     **FF.**    "Personalized Worksheet" means a statement that describes the personnel data that was used in the potential damage calculation for each separate Claim, including: (1) the hourly wage rate in effect immediately before a period of Long-Term Military Leave, (2) the hourly wage rate in effect immediately after a period of Long-Term Military Leave, (3) the number of hours for which the pilot received compensation in a relevant month before a period of Long-Term Military Leave (including paid short-term military leave), (4) the number of hours of unpaid short-term military leave in a month before a period of Long-Term Military Leave, and (5) the Variable Income Plan contribution made on behalf of the pilot for each month in which he or she took Long-Term Military Leave.

     **GG.**    "Plan Account" means a Class Member's individual account in the Variable Income Plan established for his or her participation in the Variable Income Plan.

     **HH.**    "Plan Amount" means the amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement that can be contributed to the Class Member's Plan Account in compliance with applicable IRS limits for each such year without jeopardizing the tax-qualified status of the Variable Income Plan.

     **II.**    "Plan Administrator" means the Plan Administrator of the Variable Income Plan.

**JJ.**     "Potential Estimated Damages" means the difference between what Plaintiff contends that American should have contributed to the Class Members' Plan accounts under USERRA 38 U.S.C. § 4318 and what American actually contributed to the Plan accounts following each period of Long Term Military Leave.

**KK.**     "Proposed Plan of Allocation" means the plan to be submitted by Class Counsel to the Court as the recommended method of determining each Class Member's allocation of the Net Settlement Fund, distributing such allocations to the Class Members, and distributing funds, if any, remaining after all monies have been distributed to the Class, attached hereto as Exhibit B.

**LL.**     "Qualified Settlement Fund" means any portion of the Settlement Fund that qualifies as a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1.

**MM.**     "Released Defendant-Parties" means (a) each Defendant, (b) each Defendant's past, present, and future parent corporation(s), (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (d) with respect to (a) through (c) above, all of their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, administrators, service providers, subcontractors, officers, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, other persons serving in fiduciary functions, insurers, co-insurers, reinsurers, shareholders, accountants, auditors, advisors, consultants, trustees, associates, and all persons acting under, by, through, or in concert with any of them.

**NN.**     "Released Claims"  means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of

action: (1) that were asserted in the Class Action, or that arise out of the conduct alleged in the Complaint against Defendants concerning the Variable Income Plan for any period of qualified military leave and ended on or after January 1, 1997; (2) that relate to the policy or formula by which contributions to the accounts of such Class Members in the Variable Income Plan for any period of qualified military leave and ended on or after January 1, 1997 were computed or to the amounts of such contributions; (3) that would be barred by the doctrine of res judicata based on the entry of the Final Order; or (4) relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Variable Income Plan or any member of the Class that is consistent with the Court-approved Plan of Allocation.

**OO.** "Service Award" means a monetary award to the Class Representative for his services rendered and/or expenses incurred in pursuing the Case and negotiating the Settlement on behalf of the Proposed Settlement Class.

**PP.** "Settlement Fund" means the sum of (a) the Cash Settlement Fund as described in Section VI.B.1 of this Agreement, plus any earnings or interest on the Cash Settlement Amount while in escrow, and (b) the Share Settlement Amount as described in Section VI.B.2 of this Agreement, plus any earnings or interest on the cash value on the Share Settlement Amount upon liquidation and while in escrow.

**QQ.** "Settlement Administrator" means the firm, appointed by the Court that will perform the administrative functions required by this Settlement Agreement, and distribution of the Net Settlement Fund to the Plan Administrator for distribution to the Class Members.

**RR.** "Settlement Agreement" means this Settlement Agreement.

**SS.** "Share Settlement Amount" means the shares of AAG stock distributable pursuant to the terms of the Chapter 11 Plan, on account of an Allowed American General

7

Unsecured Claim in the amount of $4.45 million from the Disputed Claims Reserve that will be paid and deposited into the Escrow Account as set forth in Section VI.A.

**TT.** "Temporary Confidentiality Stipulation" means the confidentiality stipulation entered into by the Parties' Counsel on October 1, 2014.

**UU.** "Defendants' Counsel" means Shannon M. Barrett of O'Melveny & Myers LLP, 1624 Eye Street, N.W., Washington, DC 20006, and Alexandra D. Thaler of Bello Welsh LLP, 125 Summer Street, Suite 1200, Boston, MA 02110.

**VV.** "USERRA" means the federal Uniformed Services Employment and Reemployment Rights Act of 1994, as amended.

**WW.** "Variable Income Plan" means the American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan.

## III.   RECITALS

**A.** On January 17, 2014, Plaintiff filed the Complaint in this Litigation alleging that the Variable Income Plan violated USERRA by applying a policy of making pension contributions to American pilots who took qualified military leave based on earnings associated with the monthly minimum flight hours guaranteed under the American pilots' collective bargaining agreement or on the average earnings of three other American pilots who were actively employed during the pilot's period of qualified military service. The Complaint alleged that, because the American pilots' compensation could and can vary significantly and therefore was not, nor had been, "reasonably certain" during their periods of qualified military service, USERRA required pension contributions for such periods to be based on each pilot's own average rate of compensation during the 12 months prior to the qualified military service. The Complaint also alleged that certain fiduciaries responsible for the administration of the Variable

Income Plan and the management of its assets violated ERISA-imposed fiduciary duties by failing to collect the proper amount of contributions required under USERRA and the terms of the Variable Income Plan.

     **B.**     In this Litigation, the Complaint sought, among other things, a declaration that the policy adopted and implemented with respect to the formula by which the pension contributions related to Class Members' qualified military service were calculated violated USERRA; an order requiring the Variable Income Plan to recalculate pension benefits consistent with USERRA; a declaration that Class Members were and are entitled to receive contributions to their Plan Accounts in amounts that are based on their average rate of compensation and/or flight hours during the 12-month period prior to a period of military leave if such average rate exceeded the rate of compensation used by the Variable Income Plan; and an order requiring the Fiduciary Defendants to restore to the Variable Income Plan the losses suffered as a result of the alleged breaches of fiduciary duty under ERISA, to disgorge any profits, and to have a surcharge imposed against the breaching fiduciaries. Plaintiff filed the Case as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and alleged that the Case is maintainable as a class action under Rule 23(a) and Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3).

     **C.**     After the filing the Complaint, Class Counsel and Defendants' Counsel agreed to explore potential resolution of the Case. From April 17, 2014 until September 29, 2015, the Case was stayed by Orders of the Court in order for the Parties to explore the possibility of settlement. From April 7, 2014 through August 20, 2015, the Parties engaged in informal discovery on both liability and potential alleged damages for the purpose of exploring settlement, and negotiated and developed methodologies for calculating the potential alleged damages of

Class Members.  After obtaining data, documents, and other information from Defendants relevant to each individual Class Member's potential damage calculation, Class Counsel engaged a pension actuary to calculate the potential alleged damages of Class Members pursuant to the above-referenced methodologies.  After those calculations were completed, the Parties met in person, in Washington, DC, from August 27, to August 28, 2015, commenced negotiations, agreed to settle the Case on October 1, 2015, and memorialized the same pursuant to the December 8, 2015, Settlement Agreement in Principle.  The Parties thereafter further negotiated the more detailed terms set forth in this Settlement Agreement.

      **D.**     The Parties intend this Settlement Agreement to be a final and complete resolution of all Claims asserted in this Action.  The Settlement compromises Claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties agree that the terms of the Settlement were negotiated in good faith at arm's length by the Parties, and were reached voluntarily after consultation with competent legal counsel.

      **E.**     The Parties believe that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Proposed Settlement Class as a whole; that this Settlement Agreement provides substantial benefits to the Proposed Settlement Class and the Class Members; and that settlement of the Case on the terms set forth in this Settlement Agreement is in the best interests of the Proposed Settlement Class and the Class Members.

      **F.**     Defendants filed an answer on September 28, 2015, denying liability.  Defendants deny all liability to Plaintiffs, deny all of the claims made in the Class Action, deny all allegations of wrongdoing made in the Complaint, and deny that Plaintiffs or the Plan suffered any losses.  This Settlement Agreement, and the discussions between the Parties preceding it,

shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' part of any fault or liability whatsoever.

**G.** The purpose of this Settlement Agreement is to make a full, complete, and final resolution of all the Claims of Class Members.

NOW, THEREFORE, in reliance on the mutual promises, covenants, releases, and obligations as set out in this Settlement Agreement, and for good and valuable consideration, the Parties hereby stipulate and agree to resolve all claims that were or could have been at issue in this matter.

## IV. THE CLASS

**A.** The Parties agree that the following class should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

(a) All current and former American pilots who are, or were, participants in the Variable Income Plan and

(1) who, after becoming an American Airlines, Inc. employee, completed a period of qualified military service that lasted 30 days or more and ended on or after January 1, 1997; and,

(2) who, with respect to any such period of qualified military service, did not receive a pension contribution into the Variable Income Plan based on the pilot's own average rate of compensation during the 12 months prior to the commencement of the pilot's period of qualified military service (or if shorter, the period of employment immediately preceding such period of qualified military service); and,

11

(3)      whose average rate of compensation during the 12 months prior to any period of qualified military service (or, if shorter, the period of employment immediately preceding such period of military leave) exceeded the monthly rate of compensation that was actually used to determine the pension contribution for the pilot's period of qualified military service, as determined under either of the methodologies used in the parties' negotiations.

(b)      The beneficiaries of all such participants.

Excluded from the Settlement Class are the following persons: (a) all former or current pilots who previously reached settlements with or judgments against American resolving or releasing any claims arising during the class period under USERRA and/or ERISA related to inadequate pension contributions for periods of military leave; and (b) any person who served as a fiduciary of the Variable Income Plan and their beneficiaries under the Variable Income Plan and any member of the immediate family and any heirs, successors or assigns of any such person.

**B.**      At the time that Plaintiff moves for preliminary approval of the Settlement, Plaintiff will also separately seek, and Defendants will not oppose, certification of the Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**C.**      On the Effective Date of the Settlement Agreement, all members of the Class will be bound by the Settlement Agreement's terms; except that if the Court provides Class Members with an opportunity to opt out under Rule 23(b)(3) of the Federal Rules of Civil Procedure, then those Class Members who effectively and timely exercise a right to opt out of the Class and the Settlement as set forth below in Section VIII will not be bound by the Settlement Agreement.

**D.** In the event that the Court does not certify a class having a definition that is substantially similar to the Class definition set forth in this Settlement Agreement, each Party shall have the right to void this Settlement so long as notice of the exercise of such right is provided to the Court and the opposing Party within fourteen (14) days after the date on which the Court enters the order establishing the non-conforming Class definition. In the event that the Court chooses to certify the Class under Rule 23(b)(1) or (b)(2), rather than Rule 23(b)(3), that will not provide either Party with the right to withdraw from this Settlement.

**E.** Class Counsel will cooperate and use their best reasonable efforts to obtain the fullest possible participation of all Class Members in the Settlement. Defendants will take no action that would discourage participation of Class Members in the Settlement.

## V. NOTICE

**A.** If the Court certifies the Class and preliminarily approves the Settlement, Class Members who have been identified by Defendants will be provided with a copy of the Notice of Proposed Class Action Settlement and Fairness Hearing and Proposed Plan of Allocation in the form agreed upon by the Parties subject to modification and approval by the Court. The Notice will contain a brief description of the Claims advanced by the Class Representative, a summary of the terms of the proposed Settlement, and a notice of a fairness hearing to be held pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**B.** Subject to modification and approval by the Court, Notice shall be provided to each individual Class Member as follows: (1) electronic notice all known Class Members for whom electronic address information is available; and (2) direct notice by First Class Mail to all known Class Members for whom an electronic address is not provided.

13

**C.**     Defendants and American Airlines will cooperate with Class Counsel to facilitate providing Notice and other court approved settlement-related communications by electronic means, including by transmitting Notice via American Airlines' electronic communication systems.  With respect to any notice transmitted by Defendants or American, the electronic communication will be entitled "Notice of USERRA Settlement for Pilots Completed 30 Days or More of Military Leave On or After January 1, 1997," and will attach a copy of (or if an attachment is not feasible, contain a link to) the Notice and in the text of the electronic communication will contain the following statement and only the following statement: "Attached is important information about a settlement that may affect your rights and pursuant to which you may be entitled to additional payments if you are a Class Member.  Please read the attached court-ordered notice.  You should contact Class Counsel in the Settlement Notice or the Settlement Administrator with questions."   American will cause this electronic communication to be sent no later than the date on which Notice is mailed by the Settlement Administrator and will provide a copy of the electronic communication to Class Counsel on the same day that it is transmitted.

**D.**     Publication Notice will be provided by a web site established by the Settlement Administrator that will contain information and documents about the Settlement and will be maintained from at least the date on which notice is mailed until 90 days after the date on which distributions are made to the Plan and (2) a link to the Notice on a website maintained by American Airlines where information or access to its pension plans is provided.

**E.**     Class Counsel may retain a Settlement Administrator to provide notice to the Class Members and perform other services to administer the Settlement.  The cost of notice to

the Settlement Class and the costs of a Settlement Administrator will be paid out of the
Settlement Fund.

F.      Within ten (10) business days of the Court's Order Granting Preliminary
Approval, Defendants and American, in conjunction with the Plan Administrator, shall provide
the Settlement Administrator and Class Counsel with the following contact information for each
known Class Member, to the extent such information is reasonably available in American's files:
(1) a street mailing address; (2) telephone number(s); (3) Company e-mail address(es), including
email accounts provided by American; (4) Social Security number; (5) an indication whether the
Class Member is currently on Long Term Military Leave and, if so, any additional contact
information of the types set forth above for the Class Member applicable during the period of
Long Term Military Leave.

G.      Any Class Member confidential information, including but not limited to Plan
Account numbers, Social Security numbers, and Plan Account information, shall be treated as
confidential and Class Counsel shall take reasonable measures to ensure that the Settlement
Administrator and any consultants or contractors retained by the Settlement Administrator or
Class Counsel treat such information as confidential.  Within one (1) year of final distribution of
the settlement proceeds to the Class, Class Counsel shall return or destroy and shall take
reasonable efforts to ensure that the Settlement Administrator has destroyed all such confidential
information  as well as any information or materials provided to Class Counsel under the
"Temporary Confidentiality Stipulation" and upon request shall notify Defendants in writing that
such information and materials were returned or destroyed.   If necessary for the orderly
administration of the Settlement, this time deadline can be extended by Agreement by
Defendants or by Order of the Court.

## VI.    SETTLEMENT CONSIDERATION

**A.      The Settlement Fund.**  As settlement of the Settlement Class' claims, the following amounts will be deposited on behalf of the Class into a Settlement Fund consisting of (a) the Cash Settlement Amount, defined in Section VI.B., plus any earnings or interest on the Cash Settlement Amount while in escrow, and (b) the Share Settlement Amount, as defined in Section VI.C, including any appreciation thereon plus any earnings or interest on the cash value of the Share Settlement Amount upon liquidation and while in escrow.

**B.      Cash Settlement Amount.**  By or on behalf of Defendants, Five Hundred Thousand dollars ($500,000.00) (hereinafter "Cash Settlement Amount") will be paid and deposited into an Escrow Account that will be used to make supplemental contributions to Class Members' Plan Accounts for allegedly unpaid contributions and lost earnings, to award attorneys' fees and pay expenses and costs (including as provided in Section VIII), and to award a Service Award to the Class Representative, as described in this Settlement Agreement.  At least half of the Cash Settlement Amount will be deposited into the Escrow Account no later than thirty (30) days after the Settlement Agreement is fully executed and the remainder of the Cash Settlement Amount no later than fifteen (15) days after the Court grants preliminary approval of the Agreement.

**C.      The Share Settlement Amount.**  Shares of American Airlines Group, Inc. (hereinafter "AAG") stock on account of an Allowed American General Unsecured Claim in the amount of $4.45 million from the Disputed Claims Reserve fund that was established as part of the American Airlines, Inc. Chapter 11 bankruptcy proceeding will be paid and deposited by or on behalf of Defendants into the Escrow Account as follows:

(1)      No later than thirty (30) days after preliminary approval is granted, Defendants will prepare and file, or cause to be prepared and filed, in the Bankruptcy

Court for the Southern District of New York a Motion that is acceptable to Class Counsel to obtain approval of the Settlement Agreement and approval of distribution to the Settlement Fund  of AAG shares on account of an Allowed American General Unsecured Claim in the amount of $4.45 million.   Following the Bankruptcy Court's granting of the above-referenced Motion, Defendants will cause the Disputed Claims Reserve fund to pay and deposit the Share Settlement Amount to the Share Settlement Fund on the next applicable Interim Distribution Date, as that term is used in the Chapter 11 Plan, and that Distribution Date will be at least 15 days after Final Approval has become non-appealable or all appeals of Final Approval have been exhausted.  In the event that the Bankruptcy Court does not approve the Motion or the payment consistent with the terms of the Settlement Agreement, Lead Class Counsel will have the unilateral right to withdraw from this Settlement as set forth in Section XIV of the Agreement.

(2)    It is understood and contemplated by the Parties and a material condition of the Agreement that, for every $1,000 of the $4.45 million Allowed American General Unsecured Claim, 30.7553 shares of AAG stock will be distributed to the Settlement Fund and will result in the gross distribution of 136,861.08 shares of AAG stock to the Settlement Fund, subject to tax liabilities, including any applicable capital gains taxes incurred by the Disputed Claims Reserve.

(3)    It is understood that the distribution mechanics of the Share Settlement Amount must be governed by the Chapter 11 Plan.

(4)    It is understood by the Parties and a material condition of this Settlement that the Share Settlement Amount will be delivered to the Settlement Fund registered and freely tradeable on a national exchange such that the shares of AAG stock from the Share

17

Settlement Amount may, at Lead Class Counsel's option, be immediately liquidated to cash or cash equivalents the same day that the Share Settlement Amount is received. Neither Defendants nor any fiduciaries of the Variable Income Plan will have any responsibility for decisions concerning liquidation of the Share Settlement Amount.

(5)     It is understood by the Parties and a material condition of this Settlement that at the time that the Share Settlement Amount is paid and deposited into the Settlement Fund, it will have a fair market value based on the publicly traded value of the shares of AAG stock in the Share Settlement Amount. Because distributions on Allowed American General Unsecured Claims are made in AAG stock, the Parties acknowledge that the ultimate dollar value of this Settlement will depend on the trading price of AAG stock.

(6)     It is understood by the Parties that under the terms of the Chapter 11 Plan, all distributions from the Disputed Claims Reserve must be made net of expenses, including any taxes imposed or payable by the Disputed Claims Reserve. As a result, the distribution of the Share Settlement Amount from the Disputed Claims Reserve to the Settlement Fund will be made net of any such expenses, including potential tax liabilities of the Disputed Claims Reserve for capital gains on the AAG shares.

(7)     It is understood by the Parties that the Settlement Fund may have additional tax liability, including liability for capital gains on the AAG shares after such shares are transferred to the Settlement Fund. Class Counsel will have the right to retain a tax advisor to advise as to proper tax implications of the receipt and sale of the Share Settlement Amount and they are not relying on Defendants for such tax advice. Any such

tax liability and the expenses for any tax advisors (subject to the limitations set forth

Section VIII.A) will be borne by the Settlement Fund.

## VII.    THE SETTLEMENT FUND

**A.    Payment of Cash Settlement Amount and Share Settlement Amount into
Escrow Account**.  Pursuant to the Agreement in Principle and an escrow deposit agreement

among the Parties and an Escrow Agent, the Cash Settlement Amount and the Share Settlement

Amount shall be deposited into an Escrow Account or, if upon the election of Lead Class

Counsel, separate Escrow Accounts.

**B.    Before Effective Date**:  Before the Effective Date, the Settlement Fund shall be

held in an interest-bearing Escrow Account for which the Escrow Agent will act only on the

Lead Class Counsel or the Court.

**C.    After Effective Date**:  After the Effective Date and until all Settlement Funds are

distributed, the Settlement Fund will be held in an Escrow Account for which the Escrow Agent

will act only on the instruction and direction of Lead Class Counsel or the Court.

**D.    Qualified Settlement Fund:**  To the extent possible and at the earliest date

possible, the Settlement Fund or any portion of it that qualifies as a Qualified Settlement Fund

pursuant to Treas. Reg. § 1.468B-1 will be treated as a Qualified Settlement Fund for federal

income tax purposes pursuant to Treas. Reg. § 1.468B-1.  At all times, the Settlement Fund will

be administered by Class Counsel under the authority of the Court.  At all times, any earnings or

interest on the Settlement Fund, including any gain on the AAG stock, regardless of whether

they are earned or accrued before or after the Settlement Fund becomes a Qualified Settlement

Fund from the date or dates of receipt, will become part of the Settlement Fund.

**E.    Nature of Settlement Fund:**  The Settlement Fund is being created to facilitate

settlement of this litigation and until any amounts are transferred into the Variable Income Plan,

it is intended that the amounts in the Settlement Fund will not be part of any plan described in

ERISA §§ 3(1) or 3(2) and until any amounts from the Settlement Fund are transferred into the

Variable Income Plan the Settlement Fund shall not constitute a plan asset within the meaning of

29 C.F.R. Section 2510.3-101(h)(2).

## VIII.   DISTRIBUTIONS FROM THE SETTLEMENT FUND

**A.      Before Final Approval:**  Prior to Final Approval of the Settlement, Plaintiff's

Counsel will be authorized to withdraw money from the Escrow Account and pay any and all

costs or expenses related to providing Notice to Class Members and compensating Plaintiff's tax

advisors as referenced in Section VI.B.2(f) of this Agreement or Plaintiff's bankruptcy advisors,

in amount not to exceed $100,000.  Plaintiff will be authorized prior to Final Approval of the

Settlement to pay from the Escrow Account required actual or estimated taxes on any income

earned on the funds in the Escrow Account and all related costs and expenses (including

accountant's fees).  Any dispute regarding the reasonableness of such expenses shall be

adjudicated by the Court, but in no event will either Party cause the Settlement Fund to fail to

make a tax payment in a timely manner.

**B.      Attorneys' Fees & Expenses:** Pursuant to the deadline set by the Court and prior

to the deadline(s) by which Class Members must opt-out of the Settlement, Class Counsel will

file any motion requesting the payment of attorneys' fees, expenses/costs, and/or a Service

Award from the Settlement Fund.

## C.      Expenses for Preservation of Settlement Value

1.      At any time after Final Approval has become non-appealable or all appeals have

been exhausted, and the Bankruptcy Court has approved the Settlement Agreement as described

under Section VI.C(1), Lead Class Counsel may, at their discretion, instruct the Settlement

Administrator to pay cash amounts out of the Settlement Fund for the acquisition of put options

or other transactions, for the purpose of protecting the Class Members from the effects of any

decline in the value of shares of AAG stock for the time period before the Share Settlement

Amount is deposited in the Settlement Fund.

2.      Prior to (1) the time that Final Approval has become non-appealable and all

appeals of Final Approval have been exhausted, and after (2) the date on which the Cash

Settlement Amount is fully deposited into the Settlement Fund and the approval of the

Settlement Agreement by the Bankruptcy Court as described under Section VI.C(1), Lead Class

Counsel may, subject to the Defendants' consent and any terms and conditions agreed to by the

Parties, pay cash amounts out of the Settlement Fund for the acquisition of put options or other

transactions for the purpose of protecting the Class Members from the effects of any decline in

the value of shares of AAG stock for the time period before the Share Settlement Amount is

deposited in the Settlement Fund.

### D.      Distribution and Allocation of the Settlement Fund to Class Members

1.      The Settlement Fund will be distributed to Class Members after the

payment of any award of attorneys' fees, reimbursement or payment of any

expenses/costs (including any expenses incurred pursuant to Section VIII.C), and any

Service Award to the Class Representative from the Settlement Fund.

2.      Class Counsel will submit a Proposed Plan of Allocation to the Court for

the distribution of the Settlement Fund, which will be based on the Agreed Damage

Methodology, but may vary from the Agreed Damage Methodology based on Class

Counsel's assessment of the risk of certain claims. The Proposed Plan of Allocation may

be based on either of or some combination of the methodologies used by the parties for

21

the purpose of settlement negotiations, and may propose a discount on the claims of certain class members, or a different amount of interest on the claims based on the potential untimeliness of the claims.

3.      The Proposed Plan of Allocation will be based on the data provided by Defendants to Class Counsel unless, pursuant to the following procedure, a Class Member provides the Settlement Administrator with data relating to that Class Member's Claim that the Settlement Administrator determines to be more current, reliable or accurate data than that provided by Defendants.

a.      Before the fairness hearing and the Final Approval Date, each Class Member will have an opportunity, by a deadline to be established by the Court, to challenge the data in his or her Personalized Worksheet.

b.      Before the Final Approval Date, and by a deadline to be established by the Court, any person who claims to meet the definition of a Class Member but who has not been identified by Defendants as a Class Member will be entitled to demonstrate membership in the Settlement Class. To the extent that such person demonstrates with verifiable records membership in the Settlement Class to the satisfaction of the Settlement Administrator, that person will be included in the Settlement Class and Defendants will provide available relevant data necessary to perform calculations regarding that person's potential alleged damages under the Agreed Damage Methodology.

c.      If a Class Member, with verifiable records, makes a timely challenge concerning the data provided by Defendants relevant to his or her Claim, the Settlement Administrator will evaluate that data and other information

22

submitted and determine whether the Class Member's potential alleged damages should be higher pursuant to the formula relied on by the Proposed Plan of Allocation than those calculated based on the data provided by Defendants, applying the Agreed Damage Methodology.

   d.  To the extent that a Class Member makes a timely challenge concerning the data provided by Defendants relevant to his or her Claim and his or her verifiable records demonstrate that his or her potential alleged damages should be higher pursuant to the formula relied on by the Proposed Plan of Allocation than those calculated based on the data provided by Defendants, applying the Agreed Damage Methodology, then the amount allocated to each Class Member will be adjusted as a percentage of the overall Net Settlement Fund.

   e.  To the extent that the aggregate amount of increased potential alleged damages as determined and verified by the Settlement Administrator pursuant to the foregoing procedures and the Process for Challenging Defendants' Personnel Data to which the Parties have agreed (attached as Exhibit C), whether resulting from increased potential damages or additional Class Members' Claims – is more than $500,000 calculated under the Agreed Damage Methodology for Claims of Class Members who have not opted out of the Settlement Class, Class Counsel will have the unilateral right to withdraw from the Settlement and resume the Litigation pursuant to Section XIV.G below.

   4.  The Proposed Plan of Allocation is subject to modification by the Court. In the event that the Proposed Plan of Allocation is rejected or modified by the Court or

on appeal, such modification will not constitute a material modification of the Settlement, will not void the Settlement Agreement, and will not provide a basis for either party to withdraw from the Settlement Agreement.

5. Defendants shall not be responsible for the Proposed Plan of Allocation, and Defendants will have no input into the Proposed Plan of Allocation except to the extent that the Proposed Plan of Allocation seeks to impose any burden or duty on Defendants not specified in the Settlement Agreement and to ensure that any allocations through the Variable Income Plan can be feasibly administered.

**E.** **Payment of Taxes Post-Judgment:** Following the Effective Date, Class Counsel, with approval by the Court, shall to the extent necessary establish a reserve (the "Tax Reserve") within the Settlement Fund to pay any taxes that are or will be owed (but not yet due) and for expenses related to payment of taxes and filing returns.

**F.** **Distribution By the Plan Administrator:**

1. The Settlement Administrator will inform counsel for the Parties and the Plan Administrator in writing of the monetary allocation from the Net Settlement Fund (that is, the Settlement Fund minus any amounts deducted for attorneys' fees, expenses and costs, taxes, payments specified in Section 8.C, and any Service Award approved by the Court) to which each Class Member is entitled for each year covered by the Settlement Agreement, as determined by the Settlement Administrator under the Plan of Allocation approved by the Court.

2. By no later than thirty (30) days after receiving the information in Paragraph 1 of this subsection (or within another period set by the Court), the Plan Administrator will inform the Settlement Administrator in writing for each Class Member

24

(a) what amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement, can be contributed to the Class Member's Plan Account in compliance with applicable IRS limits for each such year without jeopardizing the tax-qualified status of the Variable Income Plan (the "Plan Amount"), and (b) what amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement, cannot be contributed to the Class Member's Plan Account for each such year without jeopardizing the tax-qualified status of the Variable Income Plan under applicable IRS limits (the "Cash Amount"). In the event the Plan Administrator determines that addition time is necessary to ensure that the allocation of Settlement Fund allocations to Class Member Plan Accounts will not jeopardize the tax-qualified status of the Variable Income Plan, the Plan Administrator or Defendants shall promptly notify Class Counsel of the reasons for that determination, and the Parties shall meet and confer as to whether an extension of the deadline in this paragraph is warranted. The time deadline in this paragraph can be extended by agreement or by Order of the Court.

3.      Except for Settlement Fund monies that cannot be paid to a Class Member's Plan Account because of applicable IRS limits, the Settlement Administrator will transmit to the Plan Administrator, in the form of a cash payment, the Plan Amounts within the period set by the Court, which shall not in any event be earlier than the Effective Date. The provision, however, shall not give the Plan Administrator or Plan a right to enforce the transmission of any Settlement Fund monies.

4.      Once the Plan Amounts have been transmitted out of the Net Settlement Fund from the Settlement Administrator to the Plan Administrator, the Plan

Administrator, consistent with the instructions of the Settlement Administrator and/or Class Counsel, will distribute them to each Class Member's Plan Account in the amounts previously identified.

5.      The Settlement Administrator will distribute the respective Cash Amounts, if any, to the Class Members at or about the same time that the Plan Amounts are transmitted from the Settlement Administrator to the Plan Administrator.

6.      The Variable Income Plan is not intended to have a property interest in the Settlement Fund or any assets in the Settlement Fund prior to payment of the Net Settlement Fund for Class Members' Plan Amounts into the Variable Income Plan.  The Variable Income Plan is not intended to be a third party beneficiary to the payment obligations in this Settlement Agreement.   The Variable Income Plan will not assess any fees or expenses on any amounts paid into the Plan as a result of this Settlement.

7.      Defendants and the Plan Administrator shall have the right to seek clarification from the Settlement Administrator and/or Class Counsel of any instructions from the Settlement Administrator and/or Class Counsel concerning distribution of the Net Settlement Fund to Class Members' Plan Accounts in the Variable Income Plan pursuant to the Plan of Allocation approved by the Court.  The Parties will request that the Court find that the Plan Administrator shall not be liable for acting in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or the written instructions of the Settlement Administrator and/or Lead Class Counsel concerning distribution of the Net Settlement Fund so long as those instructions are not contrary to the express written provisions of the Settlement Agreement, the Plan of Allocation or any Order by the Court.

**G.      Maximizing Distributions To the Variable Income Plan:** All distributions,

distributed pursuant to this Settlement Agreement are intended to be corrective contributions for

specific years covered by this Settlement Agreement.  To the maximum extent that such

contributions on behalf of the members of the Settlement Class can be made in compliance with

the applicable IRS limits for each such year without jeopardizing the tax-qualified status of the

Variable Income Plan, Defendants, American Airlines and the Plan Administrator for the

Variable Income Plan will use reasonable efforts to obtain and maximize the tax-favored

treatment of the distributions made pursuant to this Settlement Agreement, and, as reasonably

necessary, use any adjustments such as the correction procedures available under applicable IRS

rules so that the Plan Amounts contributed on behalf of each Class Member reflect corrective

contributions for the corresponding year(s) in which they allegedly should have been allocated to

the Class Member's Plan Account, provided, however, that such adjustments shall not obligate

the Plan Administrator to make any additional or increased contributions to the Variable Income

Plan.  Pursuant to the terms of the confidentiality agreement executed by Class Counsel and

Defendants, Defendants will provide copies to Class Counsel of any correspondence to and from

the IRS regarding the implementation of such corrective procedures related to the Settlement.

**H.      Costs and Expenses Related to Administration & Distribution:** The costs and

expenses incurred in the Settlement Administrator's administration and implementation of the

Settlement will be paid out of the Settlement Fund.  Defendants and/or American Airlines will

bear (or will cause the Variable Income Plan to bear) any costs or expenses incurred in the Plan

Administrator's implementation of the Settlement and administration of the distribution as set

forth in and consistent with this Section of the Agreement.  Defendants and/or American Airlines

will bear any costs or expenses related to any associated correction procedures under applicable

IRS rules the that are necessary to preserve the tax-favored treatment of the distributions made pursuant to this Settlement Agreement to the Variable Income Plan.

## IX.   SETTLEMENT ADMINISTRATION

**A.**   **Settlement Administrator:**  The Settlement Administrator will be selected by Class Counsel and approved by the Court.  Any proposed Settlement Administrator will have experience providing notice to Class Members in employment or employee benefit class action settlements, supervising and administering large and complex settlement funds, and adjudicating employment or employee benefit claims.  Defendants will have no input on the selection of the Settlement Administrator.

**B.**   **Roles of the Settlement Administrator:**  The Settlement Administrator will undertake the following to administer this Settlement Fund consistent with the terms of this Settlement, the Plan of Allocation as approved by the Court, and such other procedures or provisions as established or approved by the Court:

1.     Print and mail the Class Notice Packet to the Class Members in a manner consistent with that directed by the Court and undertake a single trace and re-mailing for all undeliverable Notice Packets;

2.     Provide Counsel for the Parties with copies of all written objections to Settlement Agreement, all challenges to Defendants' data (including all information submitted in support of each challenge), and/or any request for exclusions from the Class;

3.     Maintain and staff a toll-free phone number and a web site until the Court no longer exercises jurisdiction over this Case.

4.     Establish and manage a Qualified Settlement Fund.

5.      Track the status of mailing and re-mailing of Notice Packets, the status of Plan Amounts disbursed to the Plan Administrator, the status of Cash Amounts disbursed to Class Members, and the date of receipt of written objections or challenges filed by any Class Members.

6.      Review and adjudicate any challenge to Defendants' data.

7.      Make determinations as to whether persons who were not identified as Class Members are in fact members of the Class, consistent with the procedures established or approved by the Court.

8.      Provide monthly reporting to the Parties regarding the items above until the Effective Date, and thereafter provide quarterly reporting to the Parties until the Settlement Fund is entirely distributed.

**C.      Determinations by the Settlement Administrator.**  The determination by the Settlement Administrator as to the amount of any Class Member's allocation or whether persons are in fact Class Members will be made sufficiently before the Final Approval Hearing so that any Class Member (or any person claiming to be a Class Member) has sufficient time to object or raise any challenge to such determination with the Court prior to the Final Approval Hearing.

**X.      ATTORNEYS' FEES, EXPENSES, COSTS, AND SERVICE AWARD**

**A.**      Class Counsel will be entitled to seek an award of attorneys' fees and reimbursement of expenses and costs from the Settlement Fund subject to the approval of and in an amount determined by the Court.  Any award of attorneys' fees or reimbursement of expenses to Class Counsel will be paid out of the Settlement Fund in an amount determined by the Court.

**B.**      In recognition of the service that the Class Representative has performed on behalf of the Class and/or for reimbursement of his time and expenses, Class Counsel will be

entitled to seek a Service Award to be paid out of the Settlement Fund for the Class

Representative, Plaintiff James Michael Allman, subject to the approval of and in an amount to

be approved by the Court.

      **C.**      Defendants will not take any position with respect to Plaintiff's request for an

award of attorneys' fees, reimbursement of expenses or costs, and the Service Award.

      **D.**      On the Effective Date of the Settlement Agreement, Class Counsel will be entitled

to a disbursement from the Settlement Fund equal to the amount of attorneys' fees,

expenses/costs and the Service Award as awarded by the Court, and will be entitled to distribute

any Service Award to the Class Representative consistent with the Court's order granting Final

Approval.  In the event that there is an appeal of the Final Approval of the Settlement Agreement

solely on the issue of the amount of attorneys' fees and costs, within thirty (30) days of the notice

of appeal, Class Counsel will be entitled to a disbursement from the Settlement Fund of such

amount of the attorneys' fees and/or such amount of expenses/costs as to which there is no

objection.

**XI.**     **PROCEDURES GOVERNING APPROVAL OF THIS SETTLEMENT
         AGREEMENT**

      **A.**      Within fifteen (15) days of the date on which this Settlement Agreement is fully

executed by or on behalf of all Parties, Plaintiff shall submit this Settlement Agreement and its

Exhibits to the Court along with motions for preliminary approval of the Settlement, and a

motion seeking certification of the Class, and appointment of Plaintiff's counsel as Class

Counsel, and with a plan for providing Notice to the Class Members and a recommendation of a

Settlement Administrator to perform its duties set forth in this Settlement Agreement.  The

Motion shall be accompanied by proposed Orders in a form to be agreed by the Parties that will

specifically request, among other things, that the Court:

1.      Approve the Notice of Proposed Class Action Settlement and Fairness Hearing and Proposed Plan of Allocation.

2.      Grant preliminary approval to the Settlement Agreement and its Exhibits;

3.      Establish a date by which the Court will approve the Notice to be provided to Class Members and the manner by which Notice is to be provided pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure.

4.      Establish the date by which the Notice will be mailed to Class Members and the date and procedure by which Class Members must opt-out.

5.      Appoint a Settlement Administrator to perform the duties set forth in this Settlement Agreement.

6.      Approve a plan for allowing individuals to challenge Defendants' data and for having the Settlement Administrator adjudicate any challenges to Defendants' data prior to the date of the Fairness Hearing, and establish the date by which Class Members must submit any challenges to Defendants' data and the date by which the Settlement Administrator must complete its adjudication of any challenges to Defendants' data. Attached as Exhibit D is a proposed Process for Challenging Defendants' Personnel Data to which the Parties have agreed.

7.      Set a date and procedure by which objections from Class Members must be filed.

8.      Set a date for the fairness hearing at which time the Court will determine whether the Settlement Agreement should be approved under Federal Rule of Civil Procedure 23(e).

**B.**     Defendants will not oppose Plaintiff's motions for preliminary approval of the

Settlement Agreement, certification of the Class, approval of the Notice, and appointment of

Plaintiff's counsel as Class Counsel, subject to Defendants' ability to review these motions to

ensure that they correctly describe the terms of the Settlement Agreement and correctly describe

Defendants' positions.

**C.**     No later than thirty (30) days before the Fairness Hearing, the Settlement

Administrator shall file with the Court a declaration confirming compliance with the Notice

procedures approved by the Court.

**D.**     No later than twenty (20) days before the Fairness Hearing, the Settlement

Administrator shall file with the Court a declaration confirming compliance with the procedures

approved by the Court for adjudicating any challenges to Defendants' data.

**E.**     At the Fairness Hearing, the Parties will jointly request that the District Court

finally approve this Settlement Agreement pursuant to Rule 23(e) of the Federal Rules of Civil

Procedure.  The Parties agree to take all actions necessary to obtain approval of this Settlement

Agreement consistent with their ethical duties and obligations to their clients and, as to Class

Counsel, the Settlement Class.

**F.**     The Parties may request any reasonable extensions of time from the Court that

might be necessary to carry out any of the provisions of this Settlement Agreement.

**XII.  COURT SUPERVISION OF THE SETTLEMENT AGREEMENT & DISMISSAL
        OF THE ACTION**

**A.**     If the Court preliminarily approves the Settlement, the Parties will jointly agree to

seek an order and final judgment dismissing the case with prejudice consistent with Rules

41(a)(2) and 23(e) of the Federal Rules of Civil Procedure, subject to the terms of the Settlement

Agreement and subject to the Court's continuing jurisdiction as set forth in this Section XIII.

32

**B.** The Parties agree to submit to the jurisdiction of the Court and shall be bound by the terms of this Settlement Agreement, including, without limitation, disputes related to interpreting, implementing and enforcing the Settlement embodied in this Settlement Agreement, and will request that the Court retain jurisdiction to hear any such disputes. If Plaintiff or a member of the Class prevails in securing relief in the event of a violation or breach of the Settlement Agreement by Defendants, the Court may award Class Counsel attorneys' fees and costs against Defendants. If Defendants prevails in securing relief in the event of a violation or breach of the Settlement Agreement by Class Counsel or the Class Representative (but not any other Class Members), the Court may award Defendants their attorneys' fees and costs, which may only be paid from the Settlement Fund.

**C.** The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Settlement Agreement. The provisions of this Settlement Agreement may not be waived except by a writing signed by the affected Party, or counsel for that Party, or orally on the record in court proceedings.

## XIII. RELEASE OF CLAIMS

**A.** Upon the Effective Date of this Settlement Agreement and conditioned upon the approval and payment of the Share Settlement described in Section VI, Plaintiff and all other Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants and all Released Defendant-Parties from the Released Claims, whether or not such Class Members have filed an objection to the Settlement or to any application by Class

Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

B. As of the Effective Date, the Class Members, expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), asserting any of the Released Claims against the Released Defendant-Parties. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement.

C. Class Counsel or the Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants and the Released Defendant-Parties, or the decision to release, relinquish, waive, and discharge the Released Claims against the Released Defendant-Parties, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member shall expressly, upon the entry of the Final Approval, be deemed to have, and by operation of the Final Approval, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims against the Released Defendant-Parties. The Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

D. Upon the Effective Date of this Settlement Agreement, Defendants and the Released Defendant-Parties will have fully, finally, and forever released, relinquished and

discharged Plaintiffs, each member of the Class, and Class Counsel from each and every claim that could have been asserted in this Litigation related to the filing of this Litigation including any claims for attorneys' fees, costs, expenses or sanctions, that relate to the filing, commencement, prosecution or settlement of this Action whether such Claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise or any claim as to whether Plaintiff or any member of the Class should have received the benefits provided under this Settlement or whether Plaintiff or any member of the Class have received the proper amount of benefits under the Variable Income Plan as the result of this Settlement.

E.      In the event that the Court certifies the Class under Rule 23(b)(3) or otherwise permits Class Members to opt-out of the Class, the Releases in this Settlement Agreement shall not apply to any Class Member who successfully opts out of the Settlement Agreement pursuant to the deadlines and procedures established by the Court.

## XIV.   TERMINATION OF THE SETTLEMENT

A.      In the event that Final Approval is not entered by the Court or the Settlement is materially modified by the Court, either Lead Class Counsel or Defendants may void this settlement.

B.      In the event that Defendants' data and/or Defendants' calculations based thereon, as referenced in Section VI.C of the Settlement Agreement, are materially inaccurate, Lead Class Counsel will have the unilateral right to withdraw from the Settlement so long as that right to withdraw is exercised no later than twenty-one (21) days after preliminary approval of the Settlement is granted.

**C.**     Promptly after Defendants become aware of the Distribution Date, but at least fifteen (15) days prior to the Distribution Date of the AAG stock, Defendants will provide notice to Lead Class Counsel of the intended Distribution Date. In the event that the publicly traded price of AAG stock is below $34 per share at the close of trading on any day from 14 days before the day that is the deadline for Plaintiff's filing of the motion for final approval of the Settlement and ending five (5) business days prior to the proposed Distribution Date, Lead Class Counsel will have the unilateral right to withdraw from the Settlement Agreement by notifying Defendants of their intent to withdraw by five (5) business days prior to the applicable Distribution Date and resume the Litigation as follows:

1.     In the event that the publicly traded price of AAG stock is below $34 per share as of the close of trading on any day between 14 days before the deadline for Plaintiff's filing of the motion for final approval of the Settlement and the entry of Final Judgment, Lead Class Counsel will have the unilateral right to withdraw from the Settlement Agreement by notifying Defendants of their intent to withdraw.

2.     In the event that the publicly traded price of AAG stock is below $34 per share as of the close of trading on a day that is between the entry of Final Judgment and the fifth business day prior to the Distribution Date on which the Stock Settlement Amount is scheduled to be deposited into the Escrow Account of the Settlement Fund, and unless such right has been forfeited pursuant to Section XIV.C.3, Lead Class Counsel will have the right to withdraw from the Settlement by (a) notifying Defendants of their intent to withdraw and (b) filing a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to void the Judgment. The Parties agree that the condition for

withdrawal provided in this Section will constitute grounds for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

3.    Any right by Lead Class Counsel, Class Counsel and the Class Members to terminate the Settlement pursuant to Section XIV.C of this Agreement will cease upon the occurrence of all of the following:  (a) the District Court granting Final Approval, (b) Final Approval becoming non-appealable or, if an appeal is filed, all appeals of Final Approval being exhausted, and (c) the earlier of the fifth business day prior to the Distribution Date on which the Stock Settlement Amount is scheduled to be deposited into the Escrow Account of the Settlement Fund or the date on which Lead Counsel has exercised its right to pay amounts pursuant to Section VIII.C.1 of the Settlement Fund.

D.    In the event that successful Class Member challenges to Defendants' data have increased the aggregate total of damages as determined and verified by the Settlement Administrator – whether resulting from additional Class Members or increased damages – by more than $500,000 compared to the aggregate of allocations as calculated using Defendants' data, Class Counsel will have the unilateral right to withdraw from the Settlement Agreement and resume the Litigation so long as that right to withdraw is exercised before the Court enters Final Approval of the Settlement.

E.    In the event that the Court certifies the Proposed Settlement Class in a manner that permits Class Members to opt-out of the Class, Defendants will have the unilateral right to withdraw from the Settlement and resume the Litigation if more than fifty (50) Class Members are permitted to opt out, so long as that right to withdraw is exercised before the Court enters Final Approval of the Settlement.

F.      If the Share Settlement Amount is not disbursed from the Disputed Claims

Reserve within 180 days after Final Approval becomes non-appealable or, if an appeal is filed,

within 180 days after all appeals of Final Approval have been exhausted, Class Counsel will

have the unilateral right to withdraw from the Settlement and resume the Litigation by (a)

notifying Defendants of their intent to withdraw at least five (5) business days before the

otherwise applicable Interim Distribution Date and (b) filing a motion pursuant to Rule 60(b) of

the Federal Rules of Civil Procedure to void the Judgment.  The Parties agree that the condition

for withdrawal provided in this Section will constitute grounds for relief pursuant to Rule 60(b)

of the Federal Rules of Civil Procedure.

G.      In the event that the District Court refuses to grant Final Approval, in the event

that Final Approval is reversed on appeal, or in the event that Class Counsel exercise a right to

withdraw from the Settlement Agreement within the times specified in this Agreement prior to

the Final Approval Date, (1) any amounts paid into the Settlement Fund (less any expenses

incurred with this Settlement such as costs of Notice or any amount paid or owing for taxes or

that is necessary to prepare any tax returns, paid to any advisor referenced in Section VI.B.2(f) of

the Agreement, owed to the Escrow Agent, or owed to the Settlement Administrator) shall be

returned, (2) Defendants will not be released from the claims asserted in the Litigation, and (3)

the Parties will return to their respective positions in the Litigation before the Parties reached the

Agreement in Principle, except that the Parties' stipulation to certification of the Class or a class

identical to the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil

Procedure, and the Court's order certifying the Class, will remain in place.

H.      In the event that Lead Class Counsel exercises a right to withdraw from the

Settlement Agreement after the Final Judgment is entered and the Court grants the motion to

void the Judgment, (1) any amounts paid into the Cash Settlement Fund (less any expenses incurred with this Settlement such as costs of Notice or any amount paid or owing for taxes or that is necessary to prepare any tax returns, paid to any advisor referenced in Section VI.B.2(f) of the Agreement, owed to the Escrow Agent, or owed to the Settlement Administrator or payments made pursuant to Section VIII.C) shall be returned, (2) Defendants will not be released from any of the claims asserted in the Litigation, and (3) the Parties will return to their respective positions in the Litigation before the Parties reached the Agreement in Principle, except that the Parties' stipulation to certification of the Class or a class identical to the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and the Court's order certifying the Class, will remain in place.

I.      If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Parties shall revert to their status as though the Parties never executed the Settlement Agreement.  All monies or other assets deposited into the Settlement Fund and any interest earned on monies or assets deposited in the Settlement Fund, less any amounts expended pursuant to Paragraph VIII.A, shall be returned to Defendants within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void and Defendants provide direction as to where to transfer such monies.

## XV.    CLASS ACTION FAIRNESS ACT NOTICE

A.      Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) days of the filing of the Preliminary Approval Motion, Defendants, at their own expense, shall prepare and provide notices and materials required by CAFA set forth in 28 U.S.C. § 1715(b)(1)-(8) to the Attorney General of the United States and the Attorneys General of all states in which any

members of the Settlement Class reside or any other Appropriate Federal official or Appropriate State Official identified by the Court ("the Appropriate State and Federal Officials").

B. At the time that the Preliminary Approval Motion is filed, Defendants will identify to the best of its knowledge and ability, the states in which any Class Members reside. In the Proposed Preliminary Approval Order, the Parties will request that the Court determine (i) that the Attorney General of the United States and the Attorneys General of the states in which Defendants have identified as being the residence of the members of the Settlement Class are the Appropriate State and Federal Officials pursuant to CAFA, 28 U.S.C. § 1715(a) & (b), and (ii) that in light of the terms of the Settlement, it is not feasible to include in the Notices to the Appropriate State and Federal Officials the information described in CAFA, 28 U.S.C. § 1715(b)(7) (A) & (B).

C. Defendants will provide Class Counsel with a copy of the proposed notice and materials that Defendants intend to send to the appropriate State and Federal Officials as soon as practicable, but no later than 1 business day, before such materials are sent.

D. To assure compliance with CAFA, 28 U.S.C. § 1715(d), the Preliminary Approval Motion will request that the Court set the Final Approval Hearing for a date no earlier than ninety (90) days after the date that Defendants are required to provide notice under 28 U.S.C. § 1715(b).

## XVI. MISCELLANEOUS PROVISIONS

A. This Settlement Agreement is deemed to have been drafted by all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to this Settlement Agreement, it shall not be construed more strictly against one Party than another.

**B.** The headings in this Settlement Agreement are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Settlement Agreement in any way.

**C.** All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Massachusetts without regard to its rules of conflicts of law and in accordance with the laws of the United States.

**D.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs and legal representatives of the Parties, provided, however, that no assignment by any Party shall operate to relieve such party of its obligations hereunder.

**E.** This Settlement Agreement may be executed in one or more original, photocopied, or facsimile counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

**F.** No opinion or advice concerning the tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Case to Defendants, the Class, or the Class Representative, nor is any representation or warranty in this regard made by or to anyone by virtue of this Settlement Agreement. The tax obligations of Defendants, the Class, the Class Representative, and Class Counsel and the determination thereof are the sole responsibility of each of them, and it is understood that the tax consequences may vary depending on the particular circumstances of each member of the Settlement Class.

**G.** All of the Exhibits attached hereto and identified herein are hereby incorporated by reference as though fully set forth herein.

41

**H.**     This Settlement Agreement may be amended or modified only by written instrument signed by, or on behalf of, all Parties or their successors in interest.

**I.**     This Settlement Agreement constitutes the entire agreement among the Parties, and no representations, warranties or inducements have been made by or to any Party concerning this Settlement Agreement or the Agreement in Principle, other than the representations, warranties, and covenants contained and memorialized in such documents.  In the event of any conflicts between this Settlement Agreement, the Agreement in Principle, or any other document, the Parties agree that this Settlement Agreement shall control.

**J.**     Defendants shall bear their own attorneys' fees, costs, and expenses in this Case. Except as provided in this Settlement Agreement, the Class and the Class Representative shall bear their own attorneys' fees, costs, and expenses in this Case.

**K.**     Each signatory to this Settlement Agreement represents that he, she or it is authorized to enter into this Settlement Agreement on behalf of the respective Parties he, she or it represents.

**L.**     References in this Settlement Agreement to time and mailing shall be construed in the following manner.  All time periods in this Settlement Agreement that are stated in terms of days are calendar days. Unless otherwise specified in this Settlement Agreement, a document shall be deemed timely if it is received, postmarked, or bears a similar reliable verification of delivery before the expiration of the applicable period, or in the absence of a legible postmark, if it is received by mail within three days of the expiration of the applicable period.  The first day counted shall be the day after the event from which the time period begins to run and the last day of the period shall be included, unless it falls on a Saturday, Sunday, or Federal holiday, in which case the period shall be extended to include the next business day.

**M.** Whenever this Settlement Agreement provides for notice to be given to the Parties, such notice shall be served on the Parties as follows (unless the Party provides written notice otherwise):

Notice to Plaintiff, Plaintiff's Counsel, or Class Counsel Shall Be Sent To:

R. Joseph Barton
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500 West Tower
Washington, DC 20005
Fax: (202) 408-4699
jbarton@cohenmilstein.com

Notice to Defendants Shall Be Sent To:

Shannon M. Barrett
O'Melveny & Myers LLP
1624 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
sbarrett@omm.com

**N.** Nothing in this Settlement Agreement, the Exhibits attached hereto, or the Agreement in Principle shall be deemed to or construed to constitute an admission or evidence as to any of the claims or allegations in the Complaint or any other matter, nor shall this Agreement, the Exhibits attached hereto, or the Agreement in Principle be used by any Party in this proceeding or any other proceeding or context as reflecting upon the validity or invalidity of any claim or as any evidence concerning the amount of or limit on potential alleged damages that may be recovered by the Settlement Class.

IT IS HEREBY AGREED by the undersigned on behalf of their respective clients:

JAMES MICHAEL ALLMAN

By his Attorneys,

_____
R. Joseph Barton (*pro hac vice*)
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Telephone:  (202) 408-4600
Fax:  (202) 408-4699
jbarton@cohenmilstein.com

Jason M. Leviton
BLOCK & LEVITON LLP
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
Telephone:  (617) 398-5600
Fax:  (617) 507-6020
jason@blockesq.com

Peter Romer-Friedman (*pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
Telephone:  (202) 319-1000
Fax:  (202) 319-1010
Peter_RomerFriedman@washlaw.org

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS G. JARRARD,
LLC
1020 N. Washington St.
Spokane, WA  99201
Telephone:  (425) 239-7290
Fax:  (509) 326-2932
Tjarrard@att.net

Matthew Z. Crotty
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave.
Ste. 409

AMERICAN AIRLINES, INC. PILOT
RETIREMENT BENEFIT PROGRAM
VARIABLE INCOME PLAN,
AMERICAN AIRLINES GROUP,
AMERICAN AIRLINES, INC.,
STATE STREET BANK & TRUST
COMPANY, LAURA A.
EINSPANIER, CAROLYN E.
WRIGHT, BRIAN J. MCMENAMY,
PETER WARLICK, BEVERLY K.
GOULET, and MARK BURDETTE,

By Their Attorneys,

_____
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1624 Eye Street, N.W.
Washington, DC 20006
Telephone:  (202) 383-5300
Fax:  (202) 383-5414
sbarret@omm.com

Alexandra D. Thaler, BBO#677785
BELLO WELSH LLP
125 Summer Street, Suite 1200
Boston, Massachusetts  02110
Telephone:  (617) 247-4100
Fax:  (617) 247-4125
adthaler@bellowelsh.com

Spokane, Washington 99201
Telephone:  (509) 850-7011
http://www.crottyandson.com

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                            :

In re                                     :             **Chapter 11 Case No.**
                                                           :

**AMR CORPORATION**, *et al.*,           :          **11-15463 (SHL)**
                                                           :

                    **Debtors.**       :          **(Jointly Administered)**
                                                           :

-----------------------------------------------------------------x

### ORDER PURSUANT TO
### FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT
### AGREEMENT RESOLVING CERTAIN PENDING ERISA/USERRA LITIGATION

                Upon the motion, dated September 6, 2016 (the "**Motion**"),[1] of AMR Corporation

and its related debtors, as debtors and reorganized debtors (collectively, the "**Debtors**"), pursuant

to Rule 9019(a) of the Federal Rules of Bankruptcy (the "**Bankruptcy Rules**") for entry of an

order approving the Settlement Agreement, all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and

upon the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019(a), the Settlement Agreement

is approved in its entirety; and it is further

ORDERED that, in accordance with, and pursuant to, the terms of the Settlement

Agreement, Plaintiffs shall hold an Allowed American Class 5- American Other General

Unsecured Claim in the amount set forth in the Settlement Agreement; and it is further

ORDERED that the claims agent is authorized to update the claims register in

accordance with this Order and the Settlement Agreement; and it is further

ORDERED that the Debtors are authorized to take any actions as are necessary or

appropriate to implement and effectuate the terms of this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
       November 15, 2016

*/s/ Sean H. Lane*
United States Bankruptcy Judge

2

WEIL:\95836334\8\14013.0139