## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) | **Docket No. 14-cv-10138 IT** |
| **AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50.** | ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## JUDGMENT

Pursuant to Rule 54(a) and (b) of the Federal Rules of Civil Procedure, Judgment is hereby

entered:

1. The Plaintiff Class certified by the Court consists of:

(a) All current and former American Airlines pilots who are or were participants in the American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan ("the Variable Income Plan" or "the Plan") and

(1) who, after becoming an American Airlines employee, completed a period of qualified military service that lasted 30 days or more and ended on or after January 1, 1997; and

(2) who, with respect to any such period of qualified military service, did not receive a pension contribution into the Variable Income Plan based on the pilot's own average rate of compensation during the 12 months prior to the commencement of the pilot's period of qualified military service (or, if shorter, the period of employment immediately preceding such period of qualified military service); and

(3) whose average rate of compensation during the 12 months prior to any period of qualified military service (or, if shorter, the period of employment immediately preceding such period of military leave) exceeded the monthly rate of compensation that was actually used to determine the pension contribution for the pilot's period of qualified military service, as determined under either of the methodologies used in the parties' negotiations.

(b) The beneficiaries of all such participants.

Excluded from the Class are the following persons: (a) all former or current American Airlines pilots who previously reached settlements or obtained judgments resolving or releasing any claims arising during the class period from January 1, 1997 forward under USERRA and/or ERISA related to allegedly inadequate pension contributions into the Variable Income Plan for periods of military leave; (b) any persons who served as a fiduciary of the Variable Income Plan and their beneficiaries under the Variable Income Plan, and any members of the immediate family and any heirs, successors or assigns of any such persons; and (c) David Donald Lessick.

2.  Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, ECF

No. 99, is GRANTED, and the Settlement Agreement attached hereto is hereby

APPROVED;

3.  Class Counsel's Unopposed Motion for a Service Award for the Class Representative is

GRANTED, and the request for a service award of $15,000 for the Class Representative

is APPROVED;

4.  Class Counsel's Unopposed Motion for an Award of Attorneys' Fees and Reimbursement

of Expenses is GRANTED as set forth herein. The Court awards Class Counsel Expenses

in the total amount of $66,227.25 ($63,741 to Cohen Milstein & Toll PLLC, $800 to

Block & Leviton, $100 to Law Office of Thomas Jarrard PLLC, and $1586.25 to Outten

& Golden LLP) and attorneys' fees in the amount of 25% of the value of the common

fund that Class Counsel have obtained for the class—25% of the aggregate of (A)

$500,000 of cash (less amounts paid for the Service Award and Class Counsel Expenses),

plus (B) the market value of the 136,861.08 shares of American Airlines Group, Inc.

stock at the time those shares have been placed into the Settlement Fund and sold, minus

(C) any taxes or capital gains that are paid or will be paid with respect to the receipt

and/or sale of the 136,861.08 shares of American Airlines Group, Inc. stock; and

5.  Without affecting the finality of this Judgment and Final Order in any way, continuing

jurisdiction is hereby retained over the parties and the Class Members for all matters

directly relating to the terms of the Settlement Agreement, including without limitation,

disputes related to interpreting, implementing, and enforcing the Settlement embodied in

the Settlement Agreement and this Order and Final Judgment.

February 15, 2017

/s/ Indira Talwani
Indira Talwani
U.S. District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES MICHAEL ALLMAN on behalf of himself and all others similarly situated, )<br><br>Plaintiff, )<br>v. )<br><br>AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM VARIABLE INCOME PLAN, STATE STREET BANK & TRUST COMPANY, LAURA A. EINSPANIER, CAROLYN E. WRIGHT, BRIAN J. MCMENAMY, PETER WARLICK, BEVERLY K. GOULET, MARK BURDETTE, AND JOHN & JANE DOES 1-50. )<br><br>Defendants. ) | Docket No. 14-cv-10138 |

## SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     DEFINITIONS ..................................................................................................... 1

III.    RECITALS ........................................................................................................... 8

IV.     THE CLASS ....................................................................................................... 11

V.      NOTICE ............................................................................................................. 13

VI.     SETTLEMENT CONSIDERATION FROM AMERICAN ............................. 16

VII.    THE SETTLEMENT FUND ............................................................................. 19

VIII.   DISTRIBUTIONS FROM THE SETTLEMENT FUND ................................. 20

IX.     SETTLEMENT ADMINISTRATION .............................................................. 28

X.      ATTORNEYS' FEES, EXPENSES, COSTS, AND SERVICE AWARD ....... 29

XI.     PROCEDURES GOVERNING APPROVAL OF THIS SETTLEMENT
        AGREEMENT .................................................................................................... 30

XII.    COURT SUPERVISION OF THE SETTLEMENT AGREEMENT &
        DISMISSAL OF THE ACTION ....................................................................... 32

XIII.   RELEASE OF CLAIMS .................................................................................... 33

XIV.    TERMINATION OF THE SETTLEMENT ...................................................... 35

XV.     CLASS ACTION FAIRNESS ACT NOTICE .................................................. 39

XVI.    MISCELLANEOUS PROVISIONS .................................................................. 40

## I.      INTRODUCTION[1]

This litigation, *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, et al.*, No. 14-cv-10138 (D. Mass.) was brought by James Michael Allman on behalf of himself and others similarly situated, asserting claims for relief under USERRA, 38 U.S.C. § 4301 *et seq*. and ERISA, 29 U.S.C. § 1001 *et seq*. for alleged violations in connection with calculation of employer contributions for American pilots' periods of qualified military service allegedly without taking into account the pilot's own average rate of compensation during the 12 months prior to the qualified military service.

In the interest of resolving this dispute between the Parties without the significant expense, delay, and inconvenience of further litigation of the collective and individual issues raised in the Case, and in reliance upon the representations, mutual promises, covenants, and obligations set out in this Settlement Agreement, and for good and valuable consideration also set out in this Settlement Agreement, the Parties, through their undersigned counsel of record, hereby stipulate and agree as follows.

## II.     DEFINITIONS

The following terms, as they are used in this Settlement Agreement, shall have the meanings defined below:

A.      "AAG" means American Airlines Group.

B.      "Agreed Damage Methodology" is the April 22, 2015, document titled "Methodology for Estimating Potential Losses/Benefits/Damages," attached hereto as Exhibit A.

C.      "Agreement" is this Settlement Agreement.

---

[1] Capitalized terms have the meanings set forth in the Definitions section below.

**D.**     "Agreement in Principle" is the Agreement in Principle that the Parties executed on December 8, 2015.

**E.**     "Allowed American General Unsecured Claim" will have the meanings ascribed in the Debtors' Fourth Amended Chapter 11 Plan (hereinafter "Chapter 11 Plan") in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.),

**F.**     "American" means American Airlines, Inc.

**G.**     "Case" or "Litigation" is the action titled *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, et al.*, No. 14-cv-10138 (D. Mass.).

**H.**     "Cash Amount" means the amount of each Class Member's Settlement Fund allocation corresponding to each year covered by the Settlement Agreement that cannot be contributed to the Class Member's Plan Account for each such year without jeopardizing the tax-qualified status of the Variable Income Plan under applicable IRS limits.

**I.**     "Cash Settlement Amount" means the amount that will be paid and deposited into the Escrow Account as set forth in Section VI.B.

**J.**     "Chapter 11 Plan" means the Debtors' Fourth Joint Amended Chapter 11 Plan in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.).

**K.**     "Claim" means a claim by a Class Member that he or she was subject to Defendants' policy for making pension contributions under USERRA for a specific period of Long Term Military Leave that ended on or after January 1, 1997.

**L.**     "Class" means the Class defined in Section IV.A. or a substantially similar definition approved by the Court.

**M.**     "Class Counsel" means Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave. NW, Suite 500, Washington, DC 20005, Crotty & Son Law Firm, PLLC, 905 W. Riverside

Ave., Suite 409, Spokane, WA 99201, Washington Lawyers' Committee for Civil Rights and Urban Affairs, 11 Dupont Circle NW, Suite 400, Washington, DC 20036, Block & Leviton LLP, 155 Federal Street, Suite 1303, Boston, MA 02110, and the Law Office of Thomas G. Jarrard LLC, 1020 N. Washington Street, Spokane, WA 99201.

     **N.**     "Class Member" means any American pilot who satisfies the definition of the Class set forth below or satisfies a substantially similar definition of a class approved by the Court.

     **O.**     "Class Representative" means Plaintiff James Michael Allman.

     **P.**     "Court," unless otherwise specified or clear from the context, means the United States District Court for the District of Massachusetts.

     **Q.**     "Defendants" means American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, State Street Bank & Trust Company, Laura A. Einspanier, Carolyn E. Wright, Brian J. McMenamy, Peter Warlick, Beverly K. Goulet, and Mark Burdette.

     **R.**     "Disputed Claims Reserve" has the meaning ascribed to it in the Debtors' Fourth Joint Amended Chapter 11 Plan in *In re AMR Corporation, et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.), and refers to the Disputed Claims Reserve from which the Share Settlement Amount will be paid and transferred into the Escrow Account.

     **S.**     "Effective Date of the Settlement Agreement" or "Effective Date" means the date upon which, if the Agreement is not voided as set forth herein, an order providing Final Approval of this Agreement under Federal Rule of Civil Procedure 23(e) becomes non-appealable, or, in the event of any appeals, the date of final resolution of all appeals and all amounts have been paid into the Settlement Fund.  When this Agreement refers to the date on which the Agreement became "Effective," such date is the Effective Date.

3

**T.**     "ERISA" means the Employee Retirement Income and Security Act of 1974, as amended.

**U.**     "Escrow Account(s)" means the account(s) established pursuant to an escrow deposit agreement among the Parties and an Escrow Agent into which the Cash Settlement Amount and the Share Settlement are deposited.

**V.**     "Escrow Agent" means the person or entity designated by Lead Class Counsel to hold the Settlement Fund until distribution to the Class.

**W.**     "Fiduciary Defendants" means Defendants other than the Variable Income Plan.

**X.**     "Final Approval Date" means the date upon which the Court enters an order granting Final Approval of the Settlement Agreement.

**Y.**     "Final Approval of the Settlement Agreement" or "Final Approval" means the Court's decision that the resolution of this Case, as reflected in the Settlement Agreement, is fair, adequate, and reasonable pursuant to the provisions of Federal Rule of Civil Procedure 23(e).

**Z.**     "Lead Class Counsel" means R. Joseph Barton of Cohen, Milstein, Sellers & Toll, PLLC.

**AA.**     "Long Term Military Leave" means a period of military leave of at least continuous thirty (30) calendar days taken by an American pilot.

**BB.**     "Net Settlement Fund" means the Settlement Fund minus any amounts deducted for attorneys' fees, expenses and costs, taxes, and any Service Award approved by the Court.

**CC.**     "Notice Mailing Date" means the date the Notice Packets are mailed to the Class Members.

**DD.**     "Notice Packet" means the packet of materials that consists of the Notice of Proposed Class Action Settlement and Fairness Hearing and the Proposed Plan of Allocation,

and a Personalized Worksheet for each Claim and any materials ordered or approved by the Court.

**EE.**    "Parties" means the Plaintiff in this Case and Defendants American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan, State Street Bank & Trust Company, Laura A. Einspanier, Carolyn E. Wright, Brian J. McMenamy, Peter Warlick, Beverly K. Goulet, and Mark Burdette.

**FF.**    "Personalized Worksheet" means a statement that describes the personnel data that was used in the potential damage calculation for each separate Claim, including: (1) the hourly wage rate in effect immediately before a period of Long-Term Military Leave, (2) the hourly wage rate in effect immediately after a period of Long-Term Military Leave, (3) the number of hours for which the pilot received compensation in a relevant month before a period of Long-Term Military Leave (including paid short-term military leave), (4) the number of hours of unpaid short-term military leave in a month before a period of Long-Term Military Leave, and (5) the Variable Income Plan contribution made on behalf of the pilot for each month in which he or she took Long-Term Military Leave.

**GG.**    "Plan Account" means a Class Member's individual account in the Variable Income Plan established for his or her participation in the Variable Income Plan.

**HH.**    "Plan Amount" means the amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement that can be contributed to the Class Member's Plan Account in compliance with applicable IRS limits for each such year without jeopardizing the tax-qualified status of the Variable Income Plan.

**II.**    "Plan Administrator" means the Plan Administrator of the Variable Income Plan.

**JJ.**   "Potential Estimated Damages" means the difference between what Plaintiff contends that American should have contributed to the Class Members' Plan accounts under USERRA 38 U.S.C. § 4318 and what American actually contributed to the Plan accounts following each period of Long Term Military Leave.

**KK.**   "Proposed Plan of Allocation" means the plan to be submitted by Class Counsel to the Court as the recommended method of determining each Class Member's allocation of the Net Settlement Fund, distributing such allocations to the Class Members, and distributing funds, if any, remaining after all monies have been distributed to the Class, attached hereto as Exhibit B.

**LL.**   "Qualified Settlement Fund" means any portion of the Settlement Fund that qualifies as a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1.

**MM.**   "Released Defendant-Parties" means (a) each Defendant, (b) each Defendant's past, present, and future parent corporation(s), (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (d) with respect to (a) through (c) above, all of their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, administrators, service providers, subcontractors, officers, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, other persons serving in fiduciary functions, insurers, co-insurers, reinsurers, shareholders, accountants, auditors, advisors, consultants, trustees, associates, and all persons acting under, by, through, or in concert with any of them.

**NN.**   "Released Claims"  means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of

action: (1) that were asserted in the Class Action, or that arise out of the conduct alleged in the Complaint against Defendants concerning the Variable Income Plan for any period of qualified military leave and ended on or after January 1, 1997; (2) that relate to the policy or formula by which contributions to the accounts of such Class Members in the Variable Income Plan for any period of qualified military leave and ended on or after January 1, 1997 were computed or to the amounts of such contributions; (3) that would be barred by the doctrine of res judicata based on the entry of the Final Order; or (4) relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Variable Income Plan or any member of the Class that is consistent with the Court-approved Plan of Allocation.

OO.    "Service Award" means a monetary award to the Class Representative for his services rendered and/or expenses incurred in pursuing the Case and negotiating the Settlement on behalf of the Proposed Settlement Class.

PP.    "Settlement Fund" means the sum of (a) the Cash Settlement Fund as described in Section VI.B.1 of this Agreement, plus any earnings or interest on the Cash Settlement Amount while in escrow, and (b) the Share Settlement Amount as described in Section VI.B.2 of this Agreement, plus any earnings or interest on the cash value on the Share Settlement Amount upon liquidation and while in escrow.

QQ.    "Settlement Administrator" means the firm, appointed by the Court that will perform the administrative functions required by this Settlement Agreement, and distribution of the Net Settlement Fund to the Plan Administrator for distribution to the Class Members.

RR.    "Settlement Agreement" means this Settlement Agreement.

SS.    "Share Settlement Amount" means the shares of AAG stock distributable pursuant to the terms of the Chapter 11 Plan, on account of an Allowed American General

Unsecured Claim in the amount of $4.45 million from the Disputed Claims Reserve that will be paid and deposited into the Escrow Account as set forth in Section VI.A.

**TT.** "Temporary Confidentiality Stipulation" means the confidentiality stipulation entered into by the Parties' Counsel on October 1, 2014.

**UU.** "Defendants' Counsel" means Shannon M. Barrett of O'Melveny & Myers LLP, 1624 Eye Street, N.W., Washington, DC 20006, and Alexandra D. Thaler of Bello Welsh LLP, 125 Summer Street, Suite 1200, Boston, MA 02110.

**VV.** "USERRA" means the federal Uniformed Services Employment and Reemployment Rights Act of 1994, as amended.

**WW.** "Variable Income Plan" means the American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan.

## III.    RECITALS

**A.**    On January 17, 2014, Plaintiff filed the Complaint in this Litigation alleging that the Variable Income Plan violated USERRA by applying a policy of making pension contributions to American pilots who took qualified military leave based on earnings associated with the monthly minimum flight hours guaranteed under the American pilots' collective bargaining agreement or on the average earnings of three other American pilots who were actively employed during the pilot's period of qualified military service. The Complaint alleged that, because the American pilots' compensation could and can vary significantly and therefore was not, nor had been, "reasonably certain" during their periods of qualified military service, USERRA required pension contributions for such periods to be based on each pilot's own average rate of compensation during the 12 months prior to the qualified military service. The Complaint also alleged that certain fiduciaries responsible for the administration of the Variable

Income Plan and the management of its assets violated ERISA-imposed fiduciary duties by failing to collect the proper amount of contributions required under USERRA and the terms of the Variable Income Plan.

      **B.**      In this Litigation, the Complaint sought, among other things, a declaration that the policy adopted and implemented with respect to the formula by which the pension contributions related to Class Members' qualified military service were calculated violated USERRA; an order requiring the Variable Income Plan to recalculate pension benefits consistent with USERRA; a declaration that Class Members were and are entitled to receive contributions to their Plan Accounts in amounts that are based on their average rate of compensation and/or flight hours during the 12-month period prior to a period of military leave if such average rate exceeded the rate of compensation used by the Variable Income Plan; and an order requiring the Fiduciary Defendants to restore to the Variable Income Plan the losses suffered as a result of the alleged breaches of fiduciary duty under ERISA, to disgorge any profits, and to have a surcharge imposed against the breaching fiduciaries.  Plaintiff filed the Case as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and alleged that the Case is maintainable as a class action under Rule 23(a) and Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3).

      **C.**      After the filing the Complaint, Class Counsel and Defendants' Counsel agreed to explore potential resolution of the Case.  From April 17, 2014 until September 29, 2015, the Case was stayed by Orders of the Court in order for the Parties to explore the possibility of settlement.  From April 7, 2014 through August 20, 2015, the Parties engaged in informal discovery on both liability and potential alleged damages for the purpose of exploring settlement, and negotiated and developed methodologies for calculating the potential alleged damages of

Class Members.  After obtaining data, documents, and other information from Defendants relevant to each individual Class Member's potential damage calculation, Class Counsel engaged a pension actuary to calculate the potential alleged damages of Class Members pursuant to the above-referenced methodologies.  After those calculations were completed, the Parties met in person, in Washington, DC, from August 27, to August 28, 2015, commenced negotiations, agreed to settle the Case on October 1, 2015, and memorialized the same pursuant to the December 8, 2015, Settlement Agreement in Principle.  The Parties thereafter further negotiated the more detailed terms set forth in this Settlement Agreement.

  **D.**  The Parties intend this Settlement Agreement to be a final and complete resolution of all Claims asserted in this Action.  The Settlement compromises Claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties agree that the terms of the Settlement were negotiated in good faith at arm's length by the Parties, and were reached voluntarily after consultation with competent legal counsel.

  **E.**  The Parties believe that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Proposed Settlement Class as a whole; that this Settlement Agreement provides substantial benefits to the Proposed Settlement Class and the Class Members; and that settlement of the Case on the terms set forth in this Settlement Agreement is in the best interests of the Proposed Settlement Class and the Class Members.

  **F.**  Defendants filed an answer on September 28, 2015, denying liability.  Defendants deny all liability to Plaintiffs, deny all of the claims made in the Class Action, deny all allegations of wrongdoing made in the Complaint, and deny that Plaintiffs or the Plan suffered any losses.  This Settlement Agreement, and the discussions between the Parties preceding it,

shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' part of any fault or liability whatsoever.

    **G.**    The purpose of this Settlement Agreement is to make a full, complete, and final resolution of all the Claims of Class Members.

    NOW, THEREFORE, in reliance on the mutual promises, covenants, releases, and obligations as set out in this Settlement Agreement, and for good and valuable consideration, the Parties hereby stipulate and agree to resolve all claims that were or could have been at issue in this matter.

## IV.    THE CLASS

    **A.**    The Parties agree that the following class should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

    (a)    All current and former American pilots who are, or were, participants in the Variable Income Plan and

        (1)    who, after becoming an American Airlines, Inc. employee, completed a period of qualified military service that lasted 30 days or more and ended on or after January 1, 1997; and,

        (2)    who, with respect to any such period of qualified military service, did not receive a pension contribution into the Variable Income Plan based on the pilot's own average rate of compensation during the 12 months prior to the commencement of the pilot's period of qualified military service (or if shorter, the period of employment immediately preceding such period of qualified military service); and,

11

(3)     whose average rate of compensation during the 12 months prior to any period of qualified military service (or, if shorter, the period of employment immediately preceding such period of military leave) exceeded the monthly rate of compensation that was actually used to determine the pension contribution for the pilot's period of qualified military service, as determined under either of the methodologies used in the parties' negotiations.

(b)     The beneficiaries of all such participants.

Excluded from the Settlement Class are the following persons: (a) all former or current pilots who previously reached settlements with or judgments against American resolving or releasing any claims arising during the class period under USERRA and/or ERISA related to inadequate pension contributions for periods of military leave; and (b) any person who served as a fiduciary of the Variable Income Plan and their beneficiaries under the Variable Income Plan and any member of the immediate family and any heirs, successors or assigns of any such person.

**B.**     At the time that Plaintiff moves for preliminary approval of the Settlement, Plaintiff will also separately seek, and Defendants will not oppose, certification of the Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

**C.**     On the Effective Date of the Settlement Agreement, all members of the Class will be bound by the Settlement Agreement's terms; except that if the Court provides Class Members with an opportunity to opt out under Rule 23(b)(3) of the Federal Rules of Civil Procedure, then those Class Members who effectively and timely exercise a right to opt out of the Class and the Settlement as set forth below in Section VIII will not be bound by the Settlement Agreement.

**D.**    In the event that the Court does not certify a class having a definition that is substantially similar to the Class definition set forth in this Settlement Agreement, each Party shall have the right to void this Settlement so long as notice of the exercise of such right is provided to the Court and the opposing Party within fourteen (14) days after the date on which the Court enters the order establishing the non-conforming Class definition.  In the event that the Court chooses to certify the Class under Rule 23(b)(1) or (b)(2), rather than Rule 23(b)(3), that will not provide either Party with the right to withdraw from this Settlement.

**E.**    Class Counsel will cooperate and use their best reasonable efforts to obtain the fullest possible participation of all Class Members in the Settlement.  Defendants will take no action that would discourage participation of Class Members in the Settlement.

## V.    NOTICE

**A.**    If the Court certifies the Class and preliminarily approves the Settlement, Class Members who have been identified by Defendants will be provided with a copy of the Notice of Proposed Class Action Settlement and Fairness Hearing and Proposed Plan of Allocation in the form agreed upon by the Parties subject to modification and approval by the Court.  The Notice will contain a brief description of the Claims advanced by the Class Representative, a summary of the terms of the proposed Settlement, and a notice of a fairness hearing to be held pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

**B.**    Subject to modification and approval by the Court, Notice shall be provided to each individual Class Member as follows:  (1) electronic notice all known Class Members for whom electronic address information is available; and (2) direct notice by First Class Mail to all known Class Members for whom an electronic address is not provided.

13

**C.**     Defendants and American Airlines will cooperate with Class Counsel to facilitate providing Notice and other court approved settlement-related communications by electronic means, including by transmitting Notice via American Airlines' electronic communication systems.  With respect to any notice transmitted by Defendants or American, the electronic communication will be entitled "Notice of USERRA Settlement for Pilots Completed 30 Days or More of Military Leave On or After January 1, 1997," and will attach a copy of (or if an attachment is not feasible, contain a link to) the Notice and in the text of the electronic communication will contain the following statement and only the following statement: "Attached is important information about a settlement that may affect your rights and pursuant to which you may be entitled to additional payments if you are a Class Member.  Please read the attached court-ordered notice.  You should contact Class Counsel in the Settlement Notice or the Settlement Administrator with questions."   American will cause this electronic communication to be sent no later than the date on which Notice is mailed by the Settlement Administrator and will provide a copy of the electronic communication to Class Counsel on the same day that it is transmitted.

**D.**     Publication Notice will be provided by a web site established by the Settlement Administrator that will contain information and documents about the Settlement and will be maintained from at least the date on which notice is mailed until 90 days after the date on which distributions are made to the Plan and (2) a link to the Notice on a website maintained by American Airlines where information or access to its pension plans is provided.

**E.**     Class Counsel may retain a Settlement Administrator to provide notice to the Class Members and perform other services to administer the Settlement.  The cost of notice to

the Settlement Class and the costs of a Settlement Administrator will be paid out of the
Settlement Fund.

     **F.**    Within ten (10) business days of the Court's Order Granting Preliminary
Approval, Defendants and American, in conjunction with the Plan Administrator, shall provide
the Settlement Administrator and Class Counsel with the following contact information for each
known Class Member, to the extent such information is reasonably available in American's files:
(1) a street mailing address; (2) telephone number(s); (3) Company e-mail address(es), including
email accounts provided by American; (4) Social Security number; (5) an indication whether the
Class Member is currently on Long Term Military Leave and, if so, any additional contact
information of the types set forth above for the Class Member applicable during the period of
Long Term Military Leave.

     **G.**    Any Class Member confidential information, including but not limited to Plan
Account numbers, Social Security numbers, and Plan Account information, shall be treated as
confidential and Class Counsel shall take reasonable measures to ensure that the Settlement
Administrator and any consultants or contractors retained by the Settlement Administrator or
Class Counsel treat such information as confidential.  Within one (1) year of final distribution of
the settlement proceeds to the Class, Class Counsel shall return or destroy and shall take
reasonable efforts to ensure that the Settlement Administrator has destroyed all such confidential
information  as well as any information or materials provided to Class Counsel under the
"Temporary Confidentiality Stipulation" and upon request shall notify Defendants in writing that
such information and materials were returned or destroyed.   If necessary for the orderly
administration of the Settlement, this time deadline can be extended by Agreement by
Defendants or by Order of the Court.

## VI.     SETTLEMENT CONSIDERATION

**A.     The Settlement Fund.**  As settlement of the Settlement Class' claims, the following amounts will be deposited on behalf of the Class into a Settlement Fund consisting of (a) the Cash Settlement Amount, defined in Section VI.B., plus any earnings or interest on the Cash Settlement Amount while in escrow, and (b) the Share Settlement Amount, as defined in Section VI.C, including any appreciation thereon plus any earnings or interest on the cash value of the Share Settlement Amount upon liquidation and while in escrow.

**B.     Cash Settlement Amount.**  By or on behalf of Defendants, Five Hundred Thousand dollars ($500,000.00) (hereinafter "Cash Settlement Amount") will be paid and deposited into an Escrow Account that will be used to make supplemental contributions to Class Members' Plan Accounts for allegedly unpaid contributions and lost earnings, to award attorneys' fees and pay expenses and costs (including as provided in Section VIII), and to award a Service Award to the Class Representative, as described in this Settlement Agreement.  At least half of the Cash Settlement Amount will be deposited into the Escrow Account no later than thirty (30) days after the Settlement Agreement is fully executed and the remainder of the Cash Settlement Amount no later than fifteen (15) days after the Court grants preliminary approval of the Agreement.

**C.     The Share Settlement Amount.**  Shares of American Airlines Group, Inc. (hereinafter "AAG") stock on account of an Allowed American General Unsecured Claim in the amount of $4.45 million from the Disputed Claims Reserve fund that was established as part of the American Airlines, Inc. Chapter 11 bankruptcy proceeding will be paid and deposited by or on behalf of Defendants into the Escrow Account as follows:

(1)     No later than thirty (30) days after preliminary approval is granted, Defendants will prepare and file, or cause to be prepared and filed, in the Bankruptcy

Court for the Southern District of New York a Motion that is acceptable to Class Counsel to obtain approval of the Settlement Agreement and approval of distribution to the Settlement Fund  of AAG shares on account of an Allowed American General Unsecured Claim in the amount of $4.45 million.   Following the Bankruptcy Court's granting of the above-referenced Motion, Defendants will cause the Disputed Claims Reserve fund to pay and deposit the Share Settlement Amount to the Share Settlement Fund on the next applicable Interim Distribution Date, as that term is used in the Chapter 11 Plan, and that Distribution Date will be at least 15 days after Final Approval has become non-appealable or all appeals of Final Approval have been exhausted.  In the event that the Bankruptcy Court does not approve the Motion or the payment consistent with the terms of the Settlement Agreement, Lead Class Counsel will have the unilateral right to withdraw from this Settlement as set forth in Section XIV of the Agreement.

(2)     It is understood and contemplated by the Parties and a material condition of the Agreement that, for every $1,000 of the $4.45 million Allowed American General Unsecured Claim, 30.7553 shares of AAG stock will be distributed to the Settlement Fund and will result in the gross distribution of 136,861.08 shares of AAG stock to the Settlement Fund, subject to tax liabilities, including any applicable capital gains taxes incurred by the Disputed Claims Reserve.

(3)     It is understood that the distribution mechanics of the Share Settlement Amount must be governed by the Chapter 11 Plan.

(4)     It is understood by the Parties and a material condition of this Settlement that the Share Settlement Amount will be delivered to the Settlement Fund registered and freely tradeable on a national exchange such that the shares of AAG stock from the Share

Settlement Amount may, at Lead Class Counsel's option, be immediately liquidated to cash or cash equivalents the same day that the Share Settlement Amount is received. Neither Defendants nor any fiduciaries of the Variable Income Plan will have any responsibility for decisions concerning liquidation of the Share Settlement Amount.

(5)     It is understood by the Parties and a material condition of this Settlement that at the time that the Share Settlement Amount is paid and deposited into the Settlement Fund, it will have a fair market value based on the publicly traded value of the shares of AAG stock in the Share Settlement Amount.  Because distributions on Allowed American General Unsecured Claims are made in AAG stock, the Parties acknowledge that the ultimate dollar value of this Settlement will depend on the trading price of AAG stock.

(6)     It is understood by the Parties that under the terms of the Chapter 11 Plan, all distributions from the Disputed Claims Reserve must be made net of expenses, including any taxes imposed or payable by the Disputed Claims Reserve.  As a result, the distribution of the Share Settlement Amount from the Disputed Claims Reserve to the Settlement Fund will be made net of any such expenses, including potential tax liabilities of the Disputed Claims Reserve for capital gains on the AAG shares.

(7)     It is understood by the Parties that the Settlement Fund may have additional tax liability, including liability for capital gains on the AAG shares after such shares are transferred to the Settlement Fund.  Class Counsel will have the right to retain a tax advisor to advise as to proper tax implications of the receipt and sale of the Share Settlement Amount and they are not relying on Defendants for such tax advice.  Any such

tax liability and the expenses for any tax advisors (subject to the limitations set forth

Section VIII.A) will be borne by the Settlement Fund.

## VII.   THE SETTLEMENT FUND

**A.      Payment of Cash Settlement Amount and Share Settlement Amount into**

**Escrow Account**.  Pursuant to the Agreement in Principle and an escrow deposit agreement

among the Parties and an Escrow Agent, the Cash Settlement Amount and the Share Settlement

Amount shall be deposited into an Escrow Account or, if upon the election of Lead Class

Counsel, separate Escrow Accounts.

**B.      Before Effective Date**:  Before the Effective Date, the Settlement Fund shall be

held in an interest-bearing Escrow Account for which the Escrow Agent will act only on the

Lead Class Counsel or the Court.

**C.      After Effective Date**:  After the Effective Date and until all Settlement Funds are

distributed, the Settlement Fund will be held in an Escrow Account for which the Escrow Agent

will act only on the instruction and direction of Lead Class Counsel or the Court.

**D.      Qualified Settlement Fund**:  To the extent possible and at the earliest date

possible, the Settlement Fund or any portion of it that qualifies as a Qualified Settlement Fund

pursuant to Treas. Reg. § 1.468B-1 will be treated as a Qualified Settlement Fund for federal

income tax purposes pursuant to Treas. Reg. § 1.468B-1.  At all times, the Settlement Fund will

be administered by Class Counsel under the authority of the Court.  At all times, any earnings or

interest on the Settlement Fund, including any gain on the AAG stock, regardless of whether

they are earned or accrued before or after the Settlement Fund becomes a Qualified Settlement

Fund from the date or dates of receipt, will become part of the Settlement Fund.

**E.      Nature of Settlement Fund**:  The Settlement Fund is being created to facilitate

settlement of this litigation and until any amounts are transferred into the Variable Income Plan,

it is intended that the amounts in the Settlement Fund will not be part of any plan described in

ERISA §§ 3(1) or 3(2) and until any amounts from the Settlement Fund are transferred into the

Variable Income Plan the Settlement Fund shall not constitute a plan asset within the meaning of

29 C.F.R. Section 2510.3-101(h)(2).

## VIII.   DISTRIBUTIONS FROM THE SETTLEMENT FUND

**A.      Before Final Approval:**  Prior to Final Approval of the Settlement, Plaintiff's

Counsel will be authorized to withdraw money from the Escrow Account and pay any and all

costs or expenses related to providing Notice to Class Members and compensating Plaintiff's tax

advisors as referenced in Section VI.B.2(f) of this Agreement or Plaintiff's bankruptcy advisors,

in amount not to exceed $100,000.  Plaintiff will be authorized prior to Final Approval of the

Settlement to pay from the Escrow Account required actual or estimated taxes on any income

earned on the funds in the Escrow Account and all related costs and expenses (including

accountant's fees).  Any dispute regarding the reasonableness of such expenses shall be

adjudicated by the Court, but in no event will either Party cause the Settlement Fund to fail to

make a tax payment in a timely manner.

**B.      Attorneys' Fees & Expenses:** Pursuant to the deadline set by the Court and prior

to the deadline(s) by which Class Members must opt-out of the Settlement, Class Counsel will

file any motion requesting the payment of attorneys' fees, expenses/costs, and/or a Service

Award from the Settlement Fund.

**C.      Expenses for Preservation of Settlement Value**

1.      At any time after Final Approval has become non-appealable or all appeals have

been exhausted, and the Bankruptcy Court has approved the Settlement Agreement as described

under Section VI.C(1), Lead Class Counsel may, at their discretion, instruct the Settlement

Administrator to pay cash amounts out of the Settlement Fund for the acquisition of put options or other transactions, for the purpose of protecting the Class Members from the effects of any decline in the value of shares of AAG stock for the time period before the Share Settlement Amount is deposited in the Settlement Fund.

2.      Prior to (1) the time that Final Approval has become non-appealable and all appeals of Final Approval have been exhausted, and after (2) the date on which the Cash Settlement Amount is fully deposited into the Settlement Fund and the approval of the Settlement Agreement by the Bankruptcy Court as described under Section VI.C(1), Lead Class Counsel may, subject to the Defendants' consent and any terms and conditions agreed to by the Parties, pay cash amounts out of the Settlement Fund for the acquisition of put options or other transactions for the purpose of protecting the Class Members from the effects of any decline in the value of shares of AAG stock for the time period before the Share Settlement Amount is deposited in the Settlement Fund.

### D.      Distribution and Allocation of the Settlement Fund to Class Members

1.      The Settlement Fund will be distributed to Class Members after the payment of any award of attorneys' fees, reimbursement or payment of any expenses/costs (including any expenses incurred pursuant to Section VIII.C), and any Service Award to the Class Representative from the Settlement Fund.

2.      Class Counsel will submit a Proposed Plan of Allocation to the Court for the distribution of the Settlement Fund, which will be based on the Agreed Damage Methodology, but may vary from the Agreed Damage Methodology based on Class Counsel's assessment of the risk of certain claims. The Proposed Plan of Allocation may be based on either of or some combination of the methodologies used by the parties for

21

the purpose of settlement negotiations, and may propose a discount on the claims of certain class members, or a different amount of interest on the claims based on the potential untimeliness of the claims.

3.      The Proposed Plan of Allocation will be based on the data provided by Defendants to Class Counsel unless, pursuant to the following procedure, a Class Member provides the Settlement Administrator with data relating to that Class Member's Claim that the Settlement Administrator determines to be more current, reliable or accurate data than that provided by Defendants.

a.      Before the fairness hearing and the Final Approval Date, each Class Member will have an opportunity, by a deadline to be established by the Court, to challenge the data in his or her Personalized Worksheet.

b.      Before the Final Approval Date, and by a deadline to be established by the Court, any person who claims to meet the definition of a Class Member but who has not been identified by Defendants as a Class Member will be entitled to demonstrate membership in the Settlement Class.  To the extent that such person demonstrates with verifiable records membership in the Settlement Class to the satisfaction of the Settlement Administrator, that person will be included in the Settlement Class and Defendants will provide available relevant data necessary to perform calculations regarding that person's potential alleged damages under the Agreed Damage Methodology.

c.      If a Class Member, with verifiable records, makes a timely challenge concerning the data provided by Defendants relevant to his or her Claim, the Settlement Administrator will evaluate that data and other information

22

submitted and determine whether the Class Member's potential alleged damages should be higher pursuant to the formula relied on by the Proposed Plan of Allocation than those calculated based on the data provided by Defendants, applying the Agreed Damage Methodology.

d.     To the extent that a Class Member makes a timely challenge concerning the data provided by Defendants relevant to his or her Claim and his or her verifiable records demonstrate that his or her potential alleged damages should be higher pursuant to the formula relied on by the Proposed Plan of Allocation than those calculated based on the data provided by Defendants, applying the Agreed Damage Methodology, then the amount allocated to each Class Member will be adjusted as a percentage of the overall Net Settlement Fund.

e.     To the extent that the aggregate amount of increased potential alleged damages as determined and verified by the Settlement Administrator pursuant to the foregoing procedures and the Process for Challenging Defendants' Personnel Data to which the Parties have agreed (attached as Exhibit C), whether resulting from increased potential damages or additional Class Members' Claims – is more than $500,000 calculated under the Agreed Damage Methodology for Claims of Class Members who have not opted out of the Settlement Class, Class Counsel will have the unilateral right to withdraw from the Settlement and resume the Litigation pursuant to Section XIV.G below.

4.     The Proposed Plan of Allocation is subject to modification by the Court. In the event that the Proposed Plan of Allocation is rejected or modified by the Court or

on appeal, such modification will not constitute a material modification of the Settlement, will not void the Settlement Agreement, and will not provide a basis for either party to withdraw from the Settlement Agreement.

5.      Defendants shall not be responsible for the Proposed Plan of Allocation, and Defendants will have no input into the Proposed Plan of Allocation except to the extent that the Proposed Plan of Allocation seeks to impose any burden or duty on Defendants not specified in the Settlement Agreement and to ensure that any allocations through the Variable Income Plan can be feasibly administered.

**E.      Payment of Taxes Post-Judgment:**  Following the Effective Date, Class Counsel, with approval by the Court, shall to the extent necessary establish a reserve (the "Tax Reserve") within the Settlement Fund to pay any taxes that are or will be owed (but not yet due) and for expenses related to payment of taxes and filing returns.

**F.      Distribution By the Plan Administrator:**

1.      The Settlement Administrator will inform counsel for the Parties and the Plan Administrator in writing of the monetary allocation from the Net Settlement Fund (that is, the Settlement Fund minus any amounts deducted for attorneys' fees, expenses and costs, taxes, payments specified in Section 8.C, and any Service Award approved by the Court) to which each Class Member is entitled for each year covered by the Settlement Agreement, as determined by the Settlement Administrator under the Plan of Allocation approved by the Court.

2.      By no later than thirty (30) days after receiving the information in Paragraph 1 of this subsection (or within another period set by the Court), the Plan Administrator will inform the Settlement Administrator in writing for each Class Member

24

(a) what amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement, can be contributed to the Class Member's Plan Account in compliance with applicable IRS limits for each such year without jeopardizing the tax-qualified status of the Variable Income Plan (the "Plan Amount"), and (b) what amount of each Class Member's Settlement Fund allocation, corresponding to each year covered by the Settlement Agreement, cannot be contributed to the Class Member's Plan Account for each such year without jeopardizing the tax-qualified status of the Variable Income Plan under applicable IRS limits (the "Cash Amount").  In the event the Plan Administrator determines that addition time is necessary to ensure that the allocation of Settlement Fund allocations to Class Member Plan Accounts will not jeopardize the tax-qualified status of the Variable Income Plan, the Plan Administrator or Defendants shall promptly notify Class Counsel of the reasons for that determination, and the Parties shall meet and confer as to whether an extension of the deadline in this paragraph is warranted.  The time deadline in this paragraph can be extended by agreement or by Order of the Court.

3.      Except for Settlement Fund monies that cannot be paid to a Class Member's Plan Account because of applicable IRS limits, the Settlement Administrator will transmit to the Plan Administrator, in the form of a cash payment, the Plan Amounts within the period set by the Court, which shall not in any event be earlier than the Effective Date.  The provision, however, shall not give the Plan Administrator or Plan a right to enforce the transmission of any Settlement Fund monies.

4.      Once the Plan Amounts have been transmitted out of the Net Settlement Fund from the Settlement Administrator to the Plan Administrator, the Plan

Administrator, consistent with the instructions of the Settlement Administrator and/or Class Counsel, will distribute them to each Class Member's Plan Account in the amounts previously identified.

5.      The Settlement Administrator will distribute the respective Cash Amounts, if any, to the Class Members at or about the same time that the Plan Amounts are transmitted from the Settlement Administrator to the Plan Administrator.

6.      The Variable Income Plan is not intended to have a property interest in the Settlement Fund or any assets in the Settlement Fund prior to payment of the Net Settlement Fund for Class Members' Plan Amounts into the Variable Income Plan.  The Variable Income Plan is not intended to be a third party beneficiary to the payment obligations in this Settlement Agreement.   The Variable Income Plan will not assess any fees or expenses on any amounts paid into the Plan as a result of this Settlement.

7.      Defendants and the Plan Administrator shall have the right to seek clarification from the Settlement Administrator and/or Class Counsel of any instructions from the Settlement Administrator and/or Class Counsel concerning distribution of the Net Settlement Fund to Class Members' Plan Accounts in the Variable Income Plan pursuant to the Plan of Allocation approved by the Court.  The Parties will request that the Court find that the Plan Administrator shall not be liable for acting in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or the written instructions of the Settlement Administrator and/or Lead Class Counsel concerning distribution of the Net Settlement Fund so long as those instructions are not contrary to the express written provisions of the Settlement Agreement, the Plan of Allocation or any Order by the Court.

G.     **Maximizing Distributions To the Variable Income Plan:**  All distributions, distributed pursuant to this Settlement Agreement are intended to be corrective contributions for specific years covered by this Settlement Agreement.  To the maximum extent that such contributions on behalf of the members of the Settlement Class can be made in compliance with the applicable IRS limits for each such year without jeopardizing the tax-qualified status of the Variable Income Plan, Defendants, American Airlines and the Plan Administrator for the Variable Income Plan will use reasonable efforts to obtain and maximize the tax-favored treatment of the distributions made pursuant to this Settlement Agreement, and, as reasonably necessary, use any adjustments such as the correction procedures available under applicable IRS rules so that the Plan Amounts contributed on behalf of each Class Member reflect corrective contributions for the corresponding year(s) in which they allegedly should have been allocated to the Class Member's Plan Account, provided, however, that such adjustments shall not obligate the Plan Administrator to make any additional or increased contributions to the Variable Income Plan.  Pursuant to the terms of the confidentiality agreement executed by Class Counsel and Defendants, Defendants will provide copies to Class Counsel of any correspondence to and from the IRS regarding the implementation of such corrective procedures related to the Settlement.

H.     **Costs and Expenses Related to Administration & Distribution:**  The costs and expenses incurred in the Settlement Administrator's administration and implementation of the Settlement will be paid out of the Settlement Fund.  Defendants and/or American Airlines will bear (or will cause the Variable Income Plan to bear) any costs or expenses incurred in the Plan Administrator's implementation of the Settlement and administration of the distribution as set forth in and consistent with this Section of the Agreement.  Defendants and/or American Airlines will bear any costs or expenses related to any associated correction procedures under applicable

IRS rules the that are necessary to preserve the tax-favored treatment of the distributions made pursuant to this Settlement Agreement to the Variable Income Plan.

## IX.   SETTLEMENT ADMINISTRATION

**A.     Settlement Administrator:**  The Settlement Administrator will be selected by Class Counsel and approved by the Court.  Any proposed Settlement Administrator will have experience providing notice to Class Members in employment or employee benefit class action settlements, supervising and administering large and complex settlement funds, and adjudicating employment or employee benefit claims.  Defendants will have no input on the selection of the Settlement Administrator.

**B.     Roles of the Settlement Administrator:**  The Settlement Administrator will undertake the following to administer this Settlement Fund consistent with the terms of this Settlement, the Plan of Allocation as approved by the Court, and such other procedures or provisions as established or approved by the Court:

1.     Print and mail the Class Notice Packet to the Class Members in a manner consistent with that directed by the Court and undertake a single trace and re-mailing for all undeliverable Notice Packets;

2.     Provide Counsel for the Parties with copies of all written objections to Settlement Agreement, all challenges to Defendants' data (including all information submitted in support of each challenge), and/or any request for exclusions from the Class;

3.     Maintain and staff a toll-free phone number and a web site until the Court no longer exercises jurisdiction over this Case.

4.     Establish and manage a Qualified Settlement Fund.

28

5.      Track the status of mailing and re-mailing of Notice Packets, the status of

Plan Amounts disbursed to the Plan Administrator, the status of Cash Amounts disbursed

to Class Members, and the date of receipt of written objections or challenges filed by any

Class Members.

6.      Review and adjudicate any challenge to Defendants' data.

7.      Make determinations as to whether persons who were not identified as

Class Members are in fact members of the Class, consistent with the procedures

established or approved by the Court.

8.      Provide monthly reporting to the Parties regarding the items above until

the Effective Date, and thereafter provide quarterly reporting to the Parties until the

Settlement Fund is entirely distributed.

**C.      Determinations by the Settlement Administrator.**  The determination by the

Settlement Administrator as to the amount of any Class Member's allocation or whether persons

are in fact Class Members will be made sufficiently before the Final Approval Hearing so that

any Class Member (or any person claiming to be a Class Member) has sufficient time to object

or raise any challenge to such determination with the Court prior to the Final Approval Hearing.

**X.      ATTORNEYS' FEES, EXPENSES, COSTS, AND SERVICE AWARD**

**A.**      Class Counsel will be entitled to seek an award of attorneys' fees and

reimbursement of expenses and costs from the Settlement Fund subject to the approval of and in

an amount determined by the Court.  Any award of attorneys' fees or reimbursement of expenses

to Class Counsel will be paid out of the Settlement Fund in an amount determined by the Court.

**B.**      In recognition of the service that the Class Representative has performed on

behalf of the Class and/or for reimbursement of his time and expenses, Class Counsel will be

entitled to seek a Service Award to be paid out of the Settlement Fund for the Class

Representative, Plaintiff James Michael Allman, subject to the approval of and in an amount to

be approved by the Court.

C.      Defendants will not take any position with respect to Plaintiff's request for an

award of attorneys' fees, reimbursement of expenses or costs, and the Service Award.

D.      On the Effective Date of the Settlement Agreement, Class Counsel will be entitled

to a disbursement from the Settlement Fund equal to the amount of attorneys' fees,

expenses/costs and the Service Award as awarded by the Court, and will be entitled to distribute

any Service Award to the Class Representative consistent with the Court's order granting Final

Approval.  In the event that there is an appeal of the Final Approval of the Settlement Agreement

solely on the issue of the amount of attorneys' fees and costs, within thirty (30) days of the notice

of appeal, Class Counsel will be entitled to a disbursement from the Settlement Fund of such

amount of the attorneys' fees and/or such amount of expenses/costs as to which there is no

objection.

## XI.     PROCEDURES GOVERNING APPROVAL OF THIS SETTLEMENT AGREEMENT

A.      Within fifteen (15) days of the date on which this Settlement Agreement is fully

executed by or on behalf of all Parties, Plaintiff shall submit this Settlement Agreement and its

Exhibits to the Court along with motions for preliminary approval of the Settlement, and a

motion seeking certification of the Class, and appointment of Plaintiff's counsel as Class

Counsel, and with a plan for providing Notice to the Class Members and a recommendation of a

Settlement Administrator to perform its duties set forth in this Settlement Agreement.  The

Motion shall be accompanied by proposed Orders in a form to be agreed by the Parties that will

specifically request, among other things, that the Court:

1.      Approve the Notice of Proposed Class Action Settlement and Fairness Hearing and Proposed Plan of Allocation.

2.      Grant preliminary approval to the Settlement Agreement and its Exhibits;

3.      Establish a date by which the Court will approve the Notice to be provided to Class Members and the manner by which Notice is to be provided pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure.

4.      Establish the date by which the Notice will be mailed to Class Members and the date and procedure by which Class Members must opt-out.

5.      Appoint a Settlement Administrator to perform the duties set forth in this Settlement Agreement.

6.      Approve a plan for allowing individuals to challenge Defendants' data and for having the Settlement Administrator adjudicate any challenges to Defendants' data prior to the date of the Fairness Hearing, and establish the date by which Class Members must submit any challenges to Defendants' data and the date by which the Settlement Administrator must complete its adjudication of any challenges to Defendants' data. Attached as Exhibit D is a proposed Process for Challenging Defendants' Personnel Data to which the Parties have agreed.

7.      Set a date and procedure by which objections from Class Members must be filed.

8.      Set a date for the fairness hearing at which time the Court will determine whether the Settlement Agreement should be approved under Federal Rule of Civil Procedure 23(e).

**B.**     Defendants will not oppose Plaintiff's motions for preliminary approval of the Settlement Agreement, certification of the Class, approval of the Notice, and appointment of Plaintiff's counsel as Class Counsel, subject to Defendants' ability to review these motions to ensure that they correctly describe the terms of the Settlement Agreement and correctly describe Defendants' positions.

**C.**     No later than thirty (30) days before the Fairness Hearing, the Settlement Administrator shall file with the Court a declaration confirming compliance with the Notice procedures approved by the Court.

**D.**     No later than twenty (20) days before the Fairness Hearing, the Settlement Administrator shall file with the Court a declaration confirming compliance with the procedures approved by the Court for adjudicating any challenges to Defendants' data.

**E.**     At the Fairness Hearing, the Parties will jointly request that the District Court finally approve this Settlement Agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  The Parties agree to take all actions necessary to obtain approval of this Settlement Agreement consistent with their ethical duties and obligations to their clients and, as to Class Counsel, the Settlement Class.

**F.**     The Parties may request any reasonable extensions of time from the Court that might be necessary to carry out any of the provisions of this Settlement Agreement.

## XII.   COURT SUPERVISION OF THE SETTLEMENT AGREEMENT & DISMISSAL OF THE ACTION

**A.**     If the Court preliminarily approves the Settlement, the Parties will jointly agree to seek an order and final judgment dismissing the case with prejudice consistent with Rules 41(a)(2) and 23(e) of the Federal Rules of Civil Procedure, subject to the terms of the Settlement Agreement and subject to the Court's continuing jurisdiction as set forth in this Section XIII.

32

**B.**     The Parties agree to submit to the jurisdiction of the Court and shall be bound by the terms of this Settlement Agreement, including, without limitation, disputes related to interpreting, implementing and enforcing the Settlement embodied in this Settlement Agreement, and will request that the Court retain jurisdiction to hear any such disputes.  If Plaintiff or a member of the Class prevails in securing relief in the event of a violation or breach of the Settlement Agreement by Defendants, the Court may award Class Counsel attorneys' fees and costs against Defendants.  If Defendants prevails in securing relief in the event of a violation or breach of the Settlement Agreement by Class Counsel or the Class Representative (but not any other Class Members), the Court may award Defendants their attorneys' fees and costs, which may only be paid from the Settlement Fund.

**C.**     The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Settlement Agreement.  The provisions of this Settlement Agreement may not be waived except by a writing signed by the affected Party, or counsel for that Party, or orally on the record in court proceedings.

## XIII.   RELEASE OF CLAIMS

**A.**     Upon the Effective Date of this Settlement Agreement and conditioned upon the approval and payment of the Share Settlement described in Section VI, Plaintiff and all other Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants and all Released Defendant-Parties from the Released Claims, whether or not such Class Members have filed an objection to the Settlement or to any application by Class

Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

**B.**      As of the Effective Date, the Class Members, expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), asserting any of the Released Claims against the Released Defendant-Parties. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement.

**C.**      Class Counsel or the Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants and the Released Defendant-Parties, or the decision to release, relinquish, waive, and discharge the Released Claims against the Released Defendant-Parties, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member shall expressly, upon the entry of the Final Approval, be deemed to have, and by operation of the Final Approval, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims against the Released Defendant-Parties. The Class Members and the Plan acknowledge and shall be deemed by operation of the Final Approval to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

**D.**      Upon the Effective Date of this Settlement Agreement,  Defendants and the Released Defendant-Parties will have fully, finally, and forever released, relinquished and

discharged Plaintiffs, each member of the Class, and Class Counsel from each and every claim

that could have been asserted in this Litigation related to the filing of this Litigation including

any claims for attorneys' fees, costs, expenses or sanctions, that relate to the filing,

commencement, prosecution or settlement of this Action whether such Claim arises under

ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or

otherwise or any claim as to whether Plaintiff or any member of the Class should have received

the benefits provided under this Settlement or whether Plaintiff or any member of the Class have

received the proper amount of benefits under the Variable Income Plan as the result of this

Settlement.

E.      In the event that the Court certifies the Class under Rule 23(b)(3) or otherwise

permits Class Members to opt-out of the Class, the Releases in this Settlement Agreement shall

not apply to any Class Member who successfully opts out of the Settlement Agreement pursuant

to the deadlines and procedures established by the Court.

## XIV.   TERMINATION OF THE SETTLEMENT

A.      In the event that Final Approval is not entered by the Court or the Settlement is

materially modified by the Court, either Lead Class Counsel or Defendants may void this

settlement.

B.      In the event that Defendants' data and/or Defendants' calculations based thereon,

as referenced in Section VI.C of the Settlement Agreement, are materially inaccurate, Lead Class

Counsel will have the unilateral right to withdraw from the Settlement so long as that right to

withdraw is exercised no later than twenty-one (21) days after preliminary approval of the

Settlement is granted.

**C.**     Promptly after Defendants become aware of the Distribution Date, but at least fifteen (15)  days prior to the Distribution Date of the AAG stock, Defendants will provide notice to Lead Class Counsel of the intended Distribution Date.  In the event that the publicly traded price of AAG stock is below $34 per share at the close of trading on any day from 14 days before the day that is the deadline for Plaintiff's filing of the motion for final approval of the Settlement and ending five (5) business days prior to the proposed Distribution Date, Lead Class Counsel will have the unilateral right to withdraw from the Settlement Agreement by notifying Defendants of their intent to withdraw by five (5) business days prior to the applicable Distribution Date and resume the Litigation as follows:

1.     In the event that the publicly traded price of AAG stock is below $34 per share as of the close of trading on any day between 14 days before the deadline for Plaintiff's filing of the motion for final approval of the Settlement and the entry of Final Judgment, Lead Class Counsel will have the unilateral right to withdraw from the Settlement Agreement by notifying Defendants of their intent to withdraw.

2.     In the event that the publicly traded price of AAG stock is below $34 per share as of the close of trading on a day that is between the entry of Final Judgment and the fifth business day prior to the Distribution Date on which the Stock Settlement Amount is scheduled to be deposited into the Escrow Account of the Settlement Fund, and unless such right has been forfeited pursuant to Section XIV.C.3, Lead Class Counsel will have the right to withdraw from the Settlement by (a) notifying Defendants of their intent to withdraw and (b) filing a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to void the Judgment.  The Parties agree that the condition for

withdrawal provided in this Section will constitute grounds for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

        3.      Any right by Lead Class Counsel, Class Counsel and the Class Members to terminate the Settlement pursuant to Section XIV.C of this Agreement will cease upon the occurrence of all of the following:  (a) the District Court granting Final Approval, (b) Final Approval becoming non-appealable or, if an appeal is filed, all appeals of Final Approval being exhausted, and (c) the earlier of the fifth business day prior to the Distribution Date on which the Stock Settlement Amount is scheduled to be deposited into the Escrow Account of the Settlement Fund or the date on which Lead Counsel has exercised its right to pay amounts pursuant to Section VIII.C.1 of the Settlement Fund.

        D.      In the event that successful Class Member challenges to Defendants' data have increased the aggregate total of damages as determined and verified by the Settlement Administrator – whether resulting from additional Class Members or increased damages – by more than $500,000 compared to the aggregate of allocations as calculated using Defendants' data, Class Counsel will have the unilateral right to withdraw from the Settlement Agreement and resume the Litigation so long as that right to withdraw is exercised before the Court enters Final Approval of the Settlement.

        E.      In the event that the Court certifies the Proposed Settlement Class in a manner that permits Class Members to opt-out of the Class, Defendants will have the unilateral right to withdraw from the Settlement and resume the Litigation if more than fifty (50) Class Members are permitted to opt out, so long as that right to withdraw is exercised before the Court enters Final Approval of the Settlement.

F.      If the Share Settlement Amount is not disbursed from the Disputed Claims

Reserve within 180 days after Final Approval becomes non-appealable or, if an appeal is filed,

within 180 days after all appeals of Final Approval have been exhausted, Class Counsel will

have the unilateral right to withdraw from the Settlement and resume the Litigation by (a)

notifying Defendants of their intent to withdraw at least five (5) business days before the

otherwise applicable Interim Distribution Date and (b) filing a motion pursuant to Rule 60(b) of

the Federal Rules of Civil Procedure to void the Judgment.  The Parties agree that the condition

for withdrawal provided in this Section will constitute grounds for relief pursuant to Rule 60(b)

of the Federal Rules of Civil Procedure.

G.      In the event that the District Court refuses to grant Final Approval, in the event

that Final Approval is reversed on appeal, or in the event that Class Counsel exercise a right to

withdraw from the Settlement Agreement within the times specified in this Agreement prior to

the Final Approval Date, (1) any amounts paid into the Settlement Fund (less any expenses

incurred with this Settlement such as costs of Notice or any amount paid or owing for taxes or

that is necessary to prepare any tax returns, paid to any advisor referenced in Section VI.B.2(f) of

the Agreement, owed to the Escrow Agent, or owed to the Settlement Administrator) shall be

returned, (2) Defendants will not be released from the claims asserted in the Litigation, and (3)

the Parties will return to their respective positions in the Litigation before the Parties reached the

Agreement in Principle, except that the Parties' stipulation to certification of the Class or a class

identical to the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil

Procedure, and the Court's order certifying the Class, will remain in place.

H.      In the event that Lead Class Counsel exercises a right to withdraw from the

Settlement Agreement after the Final Judgment is entered and the Court grants the motion to

void the Judgment, (1) any amounts paid into the Cash Settlement Fund (less any expenses incurred with this Settlement such as costs of Notice or any amount paid or owing for taxes or that is necessary to prepare any tax returns, paid to any advisor referenced in Section VI.B.2(f) of the Agreement, owed to the Escrow Agent, or owed to the Settlement Administrator or payments made pursuant to Section VIII.C) shall be returned, (2) Defendants will not be released from any of the claims asserted in the Litigation, and (3) the Parties will return to their respective positions in the Litigation before the Parties reached the Agreement in Principle, except that the Parties' stipulation to certification of the Class or a class identical to the Settlement Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and the Court's order certifying the Class, will remain in place.

I.      If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Parties shall revert to their status as though the Parties never executed the Settlement Agreement.  All monies or other assets deposited into the Settlement Fund and any interest earned on monies or assets deposited in the Settlement Fund, less any amounts expended pursuant to Paragraph VIII.A, shall be returned to Defendants within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void and Defendants provide direction as to where to transfer such monies.

## XV.    CLASS ACTION FAIRNESS ACT NOTICE

A.      Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) days of the filing of the Preliminary Approval Motion, Defendants, at their own expense, shall prepare and provide notices and materials required by CAFA set forth in 28 U.S.C. § 1715(b)(1)-(8) to the Attorney General of the United States and the Attorneys General of all states in which any

members of the Settlement Class reside or any other Appropriate Federal official or Appropriate

State Official identified by the Court ("the Appropriate State and Federal Officials").

     **B.**     At the time that the Preliminary Approval Motion is filed, Defendants will

identify to the best of its knowledge and ability, the states in which any Class Members reside.

In the Proposed Preliminary Approval Order, the Parties will request that the Court determine (i)

that the Attorney General of the United States and the Attorneys General of the states in which

Defendants have identified as being the residence of the members of the Settlement Class are the

Appropriate State and Federal Officials pursuant to CAFA, 28 U.S.C. § 1715(a) & (b), and (ii)

that in light of the terms of the Settlement, it is not feasible to include in the Notices to the

Appropriate State and Federal Officials the information described in CAFA, 28 U.S.C. §

1715(b)(7) (A) & (B).

     **C.**     Defendants will provide Class Counsel with a copy of the proposed notice and

materials that Defendants intend to send to the appropriate State and Federal Officials as soon as

practicable, but no later than 1 business day, before such materials are sent.

     **D.**     To assure compliance with CAFA, 28 U.S.C. § 1715(d), the Preliminary Approval

Motion will request that the Court set the Final Approval Hearing for a date no earlier than

ninety (90) days after the date that Defendants are required to provide notice under 28 U.S.C. §

1715(b).

## XVI.  MISCELLANEOUS PROVISIONS

     **A.**     This Settlement Agreement is deemed to have been drafted by all Parties, as a

result of arm's-length negotiations among the Parties.  Whereas all Parties have contributed

substantially and materially to this Settlement Agreement, it shall not be construed more strictly

against one Party than another.

**B.**     The headings in this Settlement Agreement are used for purposes of convenience and ease of reference only and are not meant to have any legal effect, nor are they intended to influence the construction of this Settlement Agreement in any way.

**C.**     All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Massachusetts without regard to its rules of conflicts of law and in accordance with the laws of the United States.

**D.**     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs and legal representatives of the Parties, provided, however, that no assignment by any Party shall operate to relieve such party of its obligations hereunder.

**E.**     This Settlement Agreement may be executed in one or more original, photocopied, or facsimile counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

**F.**     No opinion or advice concerning the tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Case to Defendants, the Class, or the Class Representative, nor is any representation or warranty in this regard made by or to anyone by virtue of this Settlement Agreement.  The tax obligations of Defendants, the Class, the Class Representative, and Class Counsel and the determination thereof are the sole responsibility of each of them, and it is understood that the tax consequences may vary depending on the particular circumstances of each member of the Settlement Class.

**G.**     All of the Exhibits attached hereto and identified herein are hereby incorporated by reference as though fully set forth herein.

**H.**     This Settlement Agreement may be amended or modified only by written instrument signed by, or on behalf of, all Parties or their successors in interest.

**I.**     This Settlement Agreement constitutes the entire agreement among the Parties, and no representations, warranties or inducements have been made by or to any Party concerning this Settlement Agreement or the Agreement in Principle, other than the representations, warranties, and covenants contained and memorialized in such documents.  In the event of any conflicts between this Settlement Agreement, the Agreement in Principle, or any other document, the Parties agree that this Settlement Agreement shall control.

**J.**     Defendants shall bear their own attorneys' fees, costs, and expenses in this Case. Except as provided in this Settlement Agreement, the Class and the Class Representative shall bear their own attorneys' fees, costs, and expenses in this Case.

**K.**     Each signatory to this Settlement Agreement represents that he, she or it is authorized to enter into this Settlement Agreement on behalf of the respective Parties he, she or it represents.

**L.**     References in this Settlement Agreement to time and mailing shall be construed in the following manner.  All time periods in this Settlement Agreement that are stated in terms of days are calendar days. Unless otherwise specified in this Settlement Agreement, a document shall be deemed timely if it is received, postmarked, or bears a similar reliable verification of delivery before the expiration of the applicable period, or in the absence of a legible postmark, if it is received by mail within three days of the expiration of the applicable period.  The first day counted shall be the day after the event from which the time period begins to run and the last day of the period shall be included, unless it falls on a Saturday, Sunday, or Federal holiday, in which case the period shall be extended to include the next business day.

**M.**     Whenever this Settlement Agreement provides for notice to be given to the

Parties, such notice shall be served on the Parties as follows (unless the Party provides written

notice otherwise):

Notice to Plaintiff, Plaintiff's Counsel, or Class Counsel Shall Be Sent To:

R. Joseph Barton
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW
Suite 500 West Tower
Washington, DC 20005
Fax: (202) 408-4699
jbarton@cohenmilstein.com

Notice to Defendants Shall Be Sent To:

Shannon M. Barrett
O'Melveny & Myers LLP
1624 Eye Street, N.W.
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414
sbarrett@omm.com

**N.**     Nothing in this Settlement Agreement, the Exhibits attached hereto, or the

Agreement in Principle shall be deemed to or construed to constitute an admission or evidence as

to any of the claims or allegations in the Complaint or any other matter, nor shall this

Agreement, the Exhibits attached hereto, or the Agreement in Principle be used by any Party in

this proceeding or any other proceeding or context as reflecting upon the validity or invalidity of

any claim or as any evidence concerning the amount of or limit on potential alleged damages that

may be recovered by the Settlement Class.

IT IS HEREBY AGREED by the undersigned on behalf of their respective clients:

JAMES MICHAEL ALLMAN

By his Attorneys,

_____
R. Joseph Barton (*pro hac vice*)
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Telephone:  (202) 408-4600
Fax:  (202) 408-4699
jbarton@cohenmilstein.com

Jason M. Leviton
BLOCK & LEVITON LLP
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
Telephone:  (617) 398-5600
Fax:  (617) 507-6020
jason@blockesq.com

Peter Romer-Friedman (*pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
Telephone:  (202) 319-1000
Fax:  (202) 319-1010
Peter_RomerFriedman@washlaw.org

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS G. JARRARD,
LLC
1020 N. Washington St.
Spokane, WA  99201
Telephone:  (425) 239-7290
Fax:  (509) 326-2932
Tjarrard@att.net

Matthew Z. Crotty
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave.
Ste. 409

AMERICAN AIRLINES, INC. PILOT
RETIREMENT BENEFIT PROGRAM
VARIABLE INCOME PLAN,
AMERICAN AIRLINES GROUP,
AMERICAN AIRLINES, INC.,
STATE STREET BANK & TRUST
COMPANY, LAURA A.
EINSPANIER, CAROLYN E.
WRIGHT, BRIAN J. MCMENAMY,
PETER WARLICK, BEVERLY K.
GOULET, and MARK BURDETTE,

By Their Attorneys,

_____
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1624 Eye Street, N.W.
Washington, DC 20006
Telephone:  (202) 383-5300
Fax:  (202) 383-5414
sbarret@omm.com

Alexandra D. Thaler, BBO#677785
BELLO WELSH LLP
125 Summer Street, Suite 1200
Boston, Massachusetts  02110
Telephone:  (617) 247-4100
Fax:  (617) 247-4125
adthaler@bellowelsh.com

Spokane, Washington 99201
Telephone:  (509) 850-7011
http://www.crottyandson.com